C. D. Michel – SBN 144258
cmichel@michellawyers.com
Joshua Robert Dale – SBN 209942
jdale@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
www.michellawyers.com

Attorneys for Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory
Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California,
Second Amendment Law Center, and California Rifle and Pistol Association,
Incorporated

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorneys for Plaintiff Citizens Committee for the Right to Keep and Bear Arms

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH BAY ROD & GUN CLUB, INC.; GARY BRENNAN, an individual; CORY HENRY, an individual; PATRICK LOVETTE, an individual; VIRGINIA DUNCAN, an individual; RANDY RICKS, an individual; CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS; GUN OWNERS OF CALIFORNIA; SECOND AMENDMENT LAW CENTER; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED,<br><br>Plaintiffs,<br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>Defendants. | CASE NO:  '22CV1461 JO WVG<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**42 U.S.C. §§ 1983 & 1988 and 28 U.S.C. § 1651** |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs South Bay Rod & Gun Club, Inc., Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Citizens Committee for the Right to Keep and Bear Arms, Gun Owners of California, Second Amendment Law Center, and California Rifle & Pistol Association, Incorporated, and through their respective counsel, bring this action against Defendants Attorney General Robert Bonta, in his official capacity, and make the following allegations.

## INTRODUCTION

1. After Texas passed Texas Senate Bill ("SB") 8, which created a private right of action against abortion providers, a challenge to the constitutionality of that law was rejected by the U.S. Supreme Court. *See Whole Woman's Health v. Jackson* 593 U.S. ___, 142 S. Ct. 522 (2021).

2. California Governor Gavin Newsom expressed his outrage over the Supreme Court's decision by promising to use the same legislative tactics behind SB 8 to attack the gun rights community.



2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

3.      Not long after, the U.S. Supreme Court's decision in *New York Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. at __, 142 S. Ct. 2111 (2022) ("*Bruen*") firmly cemented the right to keep and bear firearms for self-defense both inside and outside the home, while also ratifying a mode of analysis first set out in *District of Columbia v. Heller,* 554 U.S. 570 (2008), and *McDonald v. City of Chicago,* 561 U.S. 742 (2010). *Bruen at* 2126. California's Legislature responded by enacting a number of laws in response.  One of these post-*Bruen* laws was California Senate Bill 1327.

4.      At the time he signed California's SB 1327, Newsom stated "While the Supreme Court rolls back reasonable gun safety measures, California continues adding new ways to protect the lives of our kids. California will use every tool at its disposal to save lives, especially in the face of an increasingly extreme Supreme Court,"[1]

5.      And because SB 1327 is more about revenge against the *Bruen* decision and Texas's Senate Bill 8 (and with the Supreme Court's holding in *Dobbs v. Jackson Women's Health Org.,* 597 U.S.__, 142 S. Ct. 2228 (2021) adding fuel the fire) California's legislature and its governor are no longer interested in making sound public policy. They are more interested in expressing an all-too common legislative animus against gun rights wholly unrelated to keeping AR-15's, ghost guns, or .50 BMG rifles "off the streets." Despite *Bruen*'s holding recognizing that the Second Amendment was broader and encompassed more uses of firearms for self-defense than California's politicians were willing to permit, rather than recognize the constitutional mandate in *Bruen*, Newsom and California's legislators decided to punish gun rights supporters by including in SB 1327 a "poison pill"

---

[1]  Californians Will Be Able to Sue Those Responsible for Illegal Assault Weapons and Ghost Guns (July 22, 2022), <https://www.gov.ca.gov/2022/07/22/californians-will-be-able-to-sue-those-responsible-for-illegal-assault-weapons-and-ghost-guns/> (as of September 27, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

designed to punish anyone who would sue the state (or any local government) as a check against the excesses of *any* gun law that was unconstitutionally restrictive.

6.     Newsom wants to eradicate "gun culture" and punish those who lawfully exercise their First Amendment right to advocate for firearms and the Second Amendment or seek redress from government for unjust laws that unconstitutionally restrict the self defense right.  Thus, at the time Newsom signed SB 1327, he also signed another anti-gun law that effectively ended junior shooting sports by making promotion of such sports illegal under a broad and facially unconstitutional restriction on commercial and advocacy speech that promotes youth firearms participation.  In signing that bill, Newsom blithely chided those who would be opposed to an inexcusable attempt to unconstitutionally silence protected pro-firearms speech: "From members of the Supreme Court to right-wing Republicans all across the country, have you no common decency, respect, or even common understanding?"[2]

7.     Alas, the demagoguery of Governor Newsom and the California legislature is immunized from personal suits for damages, and litigation to correct their wanton assault on civil rights must be directed at striking down unconstitutional laws by seeking declaratory and injunctive relief against California Attorney General Rob Bonta and his subordinates in their official capacities. But California's Attorney General is not just the head of an executive branch agency charged with enforcing California's laws, the office is charged with supervising the state's lawyers and all county-level district attorneys. *See* CAL. CONST. Art. V, § 13. Indeed, Attorney General Rob Bonta's name appears at the top of every pleading filed by California in any litigation in which the state is a party, as required by Federal Rule of Civil Procedure 11(a). Furthermore, his signature (and those of his

---

[2] Ryan King, *Newsom signs laws restricting gun sales*, Washington Examiner (July 1, 2022), <https://www.washingtonexaminer.com/restoring-america/faith-freedom-self-reliance/newsom-signs-laws-banning-marketing-guns-children> (as of September 12, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

subordinates) also certifies, to this Court, the integrity of the claims and defenses made in those pleadings. *Id.,* Rule 11(b).

8.     As noted, Governor Newsom expressed his outrage at Texas's SB 8 that targeted abortion rights. But Attorney General Rob Bonta went several steps further. In his capacity as California's lawyer, AG Bonta joined in a brief filed before the U.S. Supreme Court, arguing that the Texas law's fee shifting provision (among other parts of that law) is unconstitutional. That brief argued against the "one-sided attorney's fees provisions that award attorney's fees and costs to any plaintiff who prevails, […] while statutorily barring providers from recovering their attorney's fees and costs even if they prevail." *See Br. of Mass. et al. as Amici Curiae in Supp. of Pet'rs* at 21, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021).

9.     Furthermore, Attorney General Rob Bonta issued a press release upon the filing of this amicus brief on October 27, 2021, in which he called Texas's SB 8, which includes the fee shifting provisions, "blatantly unconstitutional." *See* Attorney General Bonta: Texas Cannot Avoid Judicial Review of Its Unconstitutional Abortion Ban (October 27, 2021), <https://oag.ca.gov/news/press-releases/attorney-general-bonta-texas-cannot-avoid-judicial-review-its-unconstitutional> (as of September 26, 2022).

10.     Attorney General Rob Bonta is being named as a party in this action because of his constitutional duties. And now the Attorney General will have to defend a legislative scheme, based on those constitutional duties, that he has publicly—and in a prior court filing—condemned as unconstitutional. The fact that the U.S. Supreme Court refused to address the merits of the Texas law in *Whole Woman's Health v. Jackson,* 142 S. Ct. 522 (2021), is not a license to treat that disposition as an endorsement of the Texas scheme, any more than it should be an endorsement of California's SB 1327. Dispositions in the U.S. Supreme Court that do not reach the merits of the underlying controversy are not dispositive of that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

controversy. This is black letter law.  *See generally Singleton v. Commissioner,* 439 U.S. 940, 942 (1978), *and Maryland v. Baltimore Radio Show,* 338 U.S. 912, 917-18 (1950).

11.     An Attorney General refusing to defend a California law that in his judgment was unconstitutional is not without precedent. *See Perry v. Brown,* 671 F.3d 1051, 1071, n.9 (9th Cir. 2012) (California Attorney General refusing to defend Proposition 8 in federal court challenge), *vacated and remanded, Hollingsworth v. Perry,* 570 U.S. 693 (2013), *on remand, appeal dismissed, Perry v. Brown,* 725 F.3d 1140 (9th Cir. 2013).

12.     Attorney General Rob Bonta's clients have put him, as the lawyer for California and the nominal defender of California's policies, in the unenviable position of either following in the footsteps of his predecessor, the Honorable Edmund G. Brown, Jr., or finding a way to square the circle of complying with Federal Rule of Civil Procedure 11(b) in filing pleadings and advancing arguments to defend a law he has previously argued in court is unconstitutional and indefensible.

13.     Regardless of what course of action the Attorney General takes, it is clear that California's petulant defiance in the face of U.S. Supreme Court holdings on the Second Amendment is nothing new.  Many southern states reacted the same way to *Brown v. Board of Education,* 347 U.S. 482 (1954). There are other parallels, but it would appear that California's legislature and Governor Newsom are following in the footsteps of the Arkansas legislature and Governor Orval Faubus, that culminated in *Cooper v. Aaron,* 358 U.S. 1 (1958).

14.     SB 1327 is touted as a "bounty law," modeled on Texas SB 8, which created a private right of action by individuals against abortion providers and facilitators. California's SB 1327 swapped out "abortion" for "firearms," creating an incentive for well-funded anti-gun advocacy groups to file lawsuits against firearms manufacturers and distributors who sell otherwise legal firearms parts and

6

accessories because those parts and accessories may be used in manufacturing an "assault weapon." The Legislature justified this bounty law based on a public safety rationale.

15. But what demonstrates the animus against those who believe in and promote the Second Amendment and gun rights are the other provisions of SB 1327. Besides creating a bounty for private lawsuits against lawful gun businesses, SB 1327 enacted the same perverse and unconstitutional statute designed to quash Second Amendment advocacy that had been included in Texas's SB 8 to quash abortion advocacy: California Code of Civil Procedure section 1021.11. *Bruen* reminded California and other states seeking to trench upon fundamental rights that "The constitutional right to bear arms in public for self-defense is not " 'a second-class right, subject to an entirely different body of rules than the other *Bill of Rights* guarantees.' " *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)). But California, by enacting Section 1021.11—a fee shifting provision that Defendant Bonta himself believed was unconstitutional when applied to abortion challenges—insists that gun owners in this state be subject to second-class status and continue to sit in the back of the proverbial bus.

16. Unlike the adjudication by a citizen in a court of any other infringement of a civil right by California malefactors, Section 1021.11 singles out and punishes those who seek to protect their Second Amendment rights or push back against the plethora of gun legislation passed to unconstitutionally thwart *Bruen*. Having nothing to do with AR-15's, ghost guns, or .50 BMG rifles, and with no stated rationale other than to discourage lawsuits challenging the state's demonstrably one-sided gun laws, Section 1021.11 allows government entities that defend against good-faith challenges to unconstitutional gun laws to recover their attorney's fees and costs of suit from plaintiffs in almost all instances, including when the plaintiff prevails in striking down or circumscribing the law at issue. California has unapologetically tipped the scales of justice in its favor by making

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

litigating a constitutional challenge to a gun law a potentially bankrupting exercise for anyone who does not share Newsom's and legislators' antipathy towards the Second Amendment, self defense, and "gun culture."

17.    Like AG Bonta, the Legislature knew SB 1327 was unconstitutional when they enacted it. The legislative history of the bill includes all sorts of warnings that the bill exceeded constitutional bounds. For example, in discussing the attorney's fees provision that is the subject of this action, a California Senate Floor Analysis explained:

> However, concerns have arisen that there is a risk that utilizing the Texas model only legitimizes it further, which could have negative ramifications across the nation. Beyond just simply allowing for private rights of action, the bill also includes a series of procedural mechanisms that are particularly problematic, and arguably raise serious due process concerns. In her opinion in Whole Woman's Health, Justice Sotomayor outlines the Texas law's "numerous procedural and substantive anomalies," which she denounces as the "manipulation of state-court procedures and defenses." She ultimately concludes:
>
>> "As a whole, these provisions go beyond imposing liability on the exercise of a constitutional right. If enforced, they prevent providers from seeking effective pre-enforcement relief (in both state and federal court) while simultaneously depriving them of effective postenforcement adjudication, potentially violating procedural due process."
>
> While the goal of repurposing the Texas law may be sound, these problematic provisions may not justify those ends. They insulate government action from meaningful challenge by creating a strong, punitive deterrent for any that try and in the end, may violate due process guarantees.

S. BILL 1327, S. FLOOR ANALYSIS (Cal. June 28, 2022)

18.    Similarly, a California Assembly Judiciary Committee Analysis explained:

> It's a lose-lose scenario for plaintiffs who challenge the bill or a gun law; and a win-win scenario for the government. An attorney could properly represent a client in seeking to strike down an unconstitutional law, win on all but one count, and break no other statutory or professional duties, but then be held responsible (along with their client) for paying the defendant's attorney's fees. In fact, even if the defendant failed to seek attorney's fees in the underlying action or the court refused to award them and found this bill to unconstitutional, this bill would allow the defendant government entity to bring an action within three

8

years to hold the attorney responsible for those fees and costs.

This language appears to be unprecedented in California law and likely would not be endorsed by this Committee but for the fact that it is included in this bill and modeled on Texas law.

S. BILL 1327, A. JUD. COMM. ANALYSIS (Cal. June 10, 2022)

19.   Governor Newsom also implicitly confirmed he knew SB 1327 was unconstitutional, because in passing it he stated: "Texas and [Gov.] Greg Abbott and their Republican leadership, if they're going to use this framework to put women's lives at risk, we're going to use it to save people's lives here in the state of California."[3]

20.   And as if to reaffirm this was more of a political stunt focused on the Governor's presidential ambitions rather than a serious and constitutionally permissible effort to combat criminal gun violence, Governor Newsom ran advertisements in *Texas* newspapers touting SB 1327.[4]

21.   The Governor's political stunt should be struck down in its entirety, but this complaint focuses only on one distinct part of SB 1327: Code of Civil Procedure section 1021.11. The equivalent fee shifting portion of Texas's SB 8 did not become a major issue in the litigation over that law and that question was left open. In fact, the most recent development in *Whole Woman's Health v. Jackson* was the case being remanded to determine whether plaintiffs there had standing to challenge Texas's fee-shifting provision,[5] which is identical to Section 1021.11

---

[3] Dan Walters, *Newsom's new gun control bill just a stunt*, CAL MATTERS (July 27, 2022), <https://calmatters.org/commentary/2022/07/newsoms-new-gun-control-bill-just-a-stunt/> (as of September 12, 2022).

[4] Meredith Deliso, *California governor signs gun bill modeled after Texas abortion law*, ABC NEWS (July 22, 2022, 11:55 AM) <https://abcnews.go.com/Politics/california -governor-signs-gun-bill-modeled-texas-abortion/story?id=87253528> (as of September 12, 2022) ("Further driving home this point, Newsom ran full-page ads in several Texas newspapers Friday touting California's answer to the Texas bill.").

[5] "Having received the ruling of the Texas Supreme Court that named official defendants may not enforce the provisions of the Texas Heartbeat Act, S.B. 8, this court REMANDS the case with instructions to dismiss all challenges to the private

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  except in its focus on abortion laws instead of firearms laws. (*See* TEX. CIV. PRAC.

2  & REM. CODE § 30.022.)

3     22.   In a naked effort to discourage lawsuits attacking unconstitutional gun

4  laws, the Legislature included provisions in Section 1021.11 that include the power

5  to override a federal court's determination under 42 U.S.C. § 1988 as to whether a

6  plaintiff who challenged a law is a prevailing party for purposes of fees and costs

7  recovery.  Section 1021.11 purports to override Section 1988 precedent regarding

8  the legal standard and burden of proof for when a defending government entity can

9  be awarded attorney's fees.  Regardless of what a federal court may hold or enter as

10  a judgment in a particular gun law challenge, the defending government entity

11  always gets a second attempt to recover its attorney's fees and costs in a friendly

12  state court after the federal court proceeding. And Section 1021.11 circumscribes

13  the authority of federal court judgments by making federal court rulings as to the

14  enforceability of a given challenged gun law merely advisory as to state and local

15  governments, and not subject to *res judicata* or the Supremacy Clause of the U.S.

16  Constitution. This exact issue was litigated in *Cooper v. Aaron,* 358 U.S. 1 (1958),

17  more than 60 years ago. "No state legislator or executive or judicial officer can war

18  against the Constitution without violating his undertaking to support it. Chief

19  Justice Marshall spoke for a unanimous Court in saying that: 'If the legislatures of

20  the several states may, at will, annul the judgments of the courts of the United

21  States, and destroy the rights acquired under those judgments, the constitution itself

22  becomes a solemn mockery. . . .' *United States v. Peters*, 5 Cranch 115, 136."

23  *Cooper v. Aaron,* 358 U.S. *at* 18.

24     23.   To further act as a deterrent to lawsuits challenging unconstitutional

25  gun laws, Section 1021.11 not only tips the balance in favor of government entities

26

27  enforcement provisions of the statute and to consider whether plaintiffs have
   standing to challenge Tex. Civ. Prac. & Rem. Code Ann. Sec. 30.022." *Whole*

28  *Woman's Health v. Jackson*, 31 F.4th 1004, 1006 (5th Cir. 2022).

in awarding attorney's fees and costs to them in gun law challenges, but it also imposes the monetary liability for reimbursing the government for such fees and costs on the attorneys who represent plaintiffs in those cases. The attorneys who ably represent their clients challenging a questionable or even unconstitutional law are subject to the mandatory imposition of joint and several liability for reimbursing the government its attorney's fees and costs.  California's longstanding public policy only imposes fees and costs on an attorney as a sanction for litigation misconduct or unethical attorney behavior. And consistent with that public policy, California enacted Section 1021.11 to sanction and deter attorneys who would represent plaintiffs who want to fight for their Second Amendment rights.  In enacting Section 1021.11, California's Legislature treats any lawyer who supports a client litigating firearms rights as committing sanctionable misconduct, without regard to whether an objection to a particular law is well taken or a legal theory advanced in support of the client's case is sound and justifiable. It is, in fact, a legislative adjudication of fault, without regard to due process of law, against any lawyer or law firm seeking to vindicate constitutional rights, but only if those rights are derived from the disfavored Second Amendment.

24.    To further punish the "misconduct" of attorneys and parties who would litigate to protect or affirm constitutional rights, the Legislature made Section 1021.11 retrospective.  Thus, although the law does not take effect until 2023, the Legislature is so antithetical to gun rights and those who fight to protect them that it made the fee-shifting and attorney liability provisions of Section 1021.11 applicable to existing gun challenge lawsuits filed as early as 2021.

25.    All of these provisions favoring the government defendant, discarding federal court decisions, and punishing counsel who represent plaintiffs, go one way. Only the government benefits from Section 1021.11's fee shifting and liability provisions; plaintiffs can never benefit.  In no other area of constitutional jurisprudence does California treat those citizens litigating in favor of an

11

established constitutional right in such an unfair and biased manner.  To silence critics of gun laws and immunize the state from colorable lawsuits challenging California's ill-conceived gun laws, the Legislature completely ignored *Bruen*'s mandate that the Second Amendment should not be treated as a "second-class" right.

26.     Plaintiffs are organizations and attorneys who frequently challenge unfavorable, unfair, or unconstitutional gun laws in California and intend to continue to do so, but for Section 1021.11.  Plaintiffs are plaintiffs in other legal challenges that are now subject to Section 1021.11's provisions.[6]  In some of those cases, they may prevail on the merits, they may get an award of attorney's fees and costs by a federal court, but nonetheless will still be considered losers for purposes of Section 1021.11 and be forced to pay attorney's fees and costs to the state in a separate action even though Plaintiffs got the law at issue in those matters struck down or circumscribed.  This fee shifting disadvantage would inure under the law even if Plaintiffs abandoned those cases *right now* before the law took effect.

27.     Section 1021.11 is not only an affront to the Second Amendment, but it also insults the *raison d'être* for the Fourteenth Amendment itself. Aside from its function as a mechanism for incorporating the Bill of Rights against state usurpations following the Civil War, the ratification debates for the Fourteenth

---

[6]   Plaintiff California Rifle & Pistol Association, Incorporated, for example, is also a Plaintiff in the matter of *Duncan v. Bonta*. While the en banc decision in that matter has now been vacated by the Supreme Court and the matter is being remanded on Second Amendment grounds, the en banc panel also ruled against Plaintiffs on their takings and due process claims. *Duncan v. Bonta*, 19 F.4th 1087, 1096 (9th Cir. 2021) (*en banc*), *vacated, remanded, at Duncan v. Bonta*, ___ U.S.___, 142 S. Ct. 2895 (2022). If those losses remain, the State can seek its legal fees and costs despite Plaintiffs likely prevailing on their Second Amendment claim. Similarly, Plaintiffs California Rifle & Pistol Association, Incorporated and South Bay Rod and Gun Club, Inc. are also Plaintiffs in *B&L Productions, Inc. v. Newsom*. There, the District Court recently dismissed several of Plaintiffs' claims with prejudice, while granting leave to amend on others. *B&L Prods. v. Newsom*, No. 21-cv-01718-AJB-KSC, 2022 U.S. Dist. LEXIS 148596, at *3 (S.D. Cal. Aug. 18, 2022). The claims dismissed with prejudice, if not reversed on appeal, create dangerous exposure for Plaintiffs under Section 1021.11.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Amendment, rightly referred to as the second founding, specifically intended to create enforceable remedies against recalcitrant, rebellious, and as time would reveal, recidivist state actors hostile to the concept of equal rights for all.  The original public meaning of that enforcement mechanism was to become access to courts, and to competent legal counsel willing to risk their time and effort to enforce the Constitution and hold constitutional tort-feasors accountable. *See* 42 U.S.C §§ 1981-1988 (2022) (referred to as "The Enforcement Act of 1871" or the "Ku Klux Klan Act").

28.     SB 1327's amendments to California Code of Civil Procedure section 1021.11 also defy the Supremacy Clause, the doctrine of *res judicata*, and the federal Due Process and Equal Protection Rights of individuals who seek to petition courts for redress regarding Second Amendment rights.  The vague application of the statutes to litigation challenges to laws and regulations that "regulate or restrict firearms" is so vague as to further violate the due process rights of those who might challenge such laws and regulations.

29.     And because the law's effect and intent are to punish those citizens and their attorneys who have attacked unfair and unconstitutional gun laws prior to Section 1021.11's enactment, Section 1021.11 constitutes an impermissible Bill of Attainder.

30.     "[C]onstitutional rights [. . .] can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes." *Cooper,* 358 U.S. at 16-17.

31.     Plaintiffs seek relief from this Court declaring Section 1021.11 unconstitutional and enjoining the state from seeking attorney's fees in any litigation under it.

**PARTIES**

32.    Plaintiff Gary Brennan is a natural person and citizen of the United States. Plaintiff Brennan is not prohibited from owning or possessing firearms or ammunition under federal or California law. He is president of the San Diego County Wildlife Federation, a Bureau of Security and Investigative Services ("BSIS") certified Firearms Training Instructor, and volunteers his time as a Master Hunter Education Instructor and Master Bowhunting Education Instructor under the California Department of Fish and Wildlife's Hunter Education Program. Mr. Brennan is also a named plaintiff in another high-profile Second Amendment-related matter which originated in the Southern District and may soon be remanded back to it. *See Rhode v. Bonta*, No. 20-55437, 2022 U.S. App. LEXIS 17486 (9th Cir. June 24, 2022). As a result of Code of Civil Procedure section 1021.11, he fears being personally liable for paying opposing attorney's fees and costs of suit if he continues to be a plaintiff in gun law challenges that fail on even just one claim. He has no idea what to so in his current litigation in *Rhode*, i.e., because Section 1021.11 acts as a Bill of Attainder, even if he dismissed his lawsuit right now, under Section 1021.11, he would still be liable for the government's attorney's fees and costs of suit due to Section 1021.11 retrospective application to his pending matter. And the law has dissuaded him from participating in new challenges. But for his fear of being personally liable for the government's attorney's fees even on righteous gun law challenges where he essentially wins the case, he would continue to challenge California's overbearing gun laws, which he deeply believes are unconstitutional. Section 1021.11 would thus effectively end his right to petition the courts for redress of grievances.

33.    Plaintiff Cory Henry is a natural person and citizen of the United States. Plaintiff Henry is not prohibited from owning or possessing firearms or ammunition under federal or California law. He is a former active duty U.S. Army Officer now serving as a drilling reservist with the rank of Colonel. Like Mr.

14

Brennan and Ms. Rhode, Mr. Henry is a named Plaintiff in *Rhode v. Bonta*, No. 20-55437, 2022 U.S. App. LEXIS 17486 (9th Cir. June 24, 2022). As a result of Section 1021.11, he fears being personally liable for paying opposing attorney's fees and costs of suit if he continues to be a plaintiff in gun law challenges that fail on even just one claim. He has no idea what to so in his current litigation in *Rhode*, i.e., because Section 1021.11 acts as a Bill of Attainder, even if he dismissed his lawsuit right now, under Section 1021.11, he would still be liable for the government's attorney's fees and costs of suit due to Section 1021.11 retrospective application to his pending matter. And the law has dissuaded him from participating in new challenges. But for his fear of being personally liable for the government's attorney's fees even on righteous gun law challenges where he essentially wins the case, he would continue to challenge California's overbearing gun laws, which he deeply believes are unconstitutional. Section 1021.11 would thus effectively end his right to petition the courts for redress of grievances.

34.     Plaintiff Richard Randall Ricks is a natural person and citizen of the United States. Plaintiff Ricks is not prohibited from owning or possessing firearms or ammunition under federal or California law. He is a certified public accountant. Like Mr. Brennan, Ms. Rhode, and Mr. Henry, Mr. Ricks is a named Plaintiff in *Rhode v. Bonta*, No. 20-55437, 2022 U.S. App. LEXIS 17486 (9th Cir. June 24, 2022). As a result of Section 1021.11, he fears being personally liable for paying opposing attorney's fees and costs of suit if he continues to be a plaintiff in gun law challenges that fail on even just one claim. He has no idea what to so in his current litigation in *Rhode*, i.e., because Section 1021.11 acts as a Bill of Attainder, even if he dismissed his lawsuit right now, under Section 1021.11, he would still be liable for the government's attorney's fees and costs of suit due to Section 1021.11 retrospective application to his pending matter. And the law has dissuaded him from participating in new challenges. But for his fear of being personally liable for the government's attorney's fees even on righteous gun law challenges where he

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

essentially wins the case, he would continue to challenge California's overbearing gun laws, which he deeply believes are unconstitutional. Section 1021.11 would thus effectively end his right to petition the courts for redress of grievances.

35.    Plaintiff Patrick Lovette is a natural person and citizen of the United States. Plaintiff Lovette is not prohibited from owning or possessing firearms or ammunition under federal or California law. Mr. Lovette is also a named plaintiff in another high-profile Second Amendment-related matter which originated in the Southern District and may soon be remanded back to it. *See Duncan v. Bonta,* No. 19-55376, 2022 U.S. App. LEXIS 21320 (9th Cir. Aug. 2, 2022). As a result of Section 1021.11, he fears being personally liable for paying opposing attorney's fees and costs of suit if he continues to be a plaintiff in gun law challenges that fail on even just one claim. He has no idea what to so in his current litigation in *Duncan*, i.e., because Section 1021.11 acts as a Bill of Attainder, even if he dismissed his lawsuit right now, under Section 1021.11, he would still be liable for the government's attorney's fees and costs of suit due to Section 1021.11 retrospective application to his pending matter. And the law has dissuaded him from participating in new challenges. But for his fear of being personally liable for the government's attorney's fees even on righteous gun law challenges where he essentially wins the case, he would continue to challenge California's overbearing gun laws, which he deeply believes are unconstitutional. Section 1021.11 would thus effectively end his right to petition the courts for redress of grievances.

36.    Plaintiff Virginia Duncan is a natural person and citizen of the United States. Plaintiff Duncan is not prohibited from owning or possessing firearms or ammunition under federal or California law. Plaintiff Duncan is the lead Plaintiff in *Duncan v. Bonta,* No. 19-55376, 2022 U.S. App. LEXIS 21320 (9th Cir. Aug. 2, 2022), the same litigation Plaintiff Lovette is also a Plaintiff in. As a result of Section 1021.11, she fears being personally liable for paying opposing attorney's fees and costs of suit if she continues to be a plaintiff in gun law challenges that fail

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

on even just one claim. She has no idea what to so in her current litigation in *Duncan*, i.e., because Section 1021.11 acts as a Bill of Attainder, even if she dismissed her lawsuit right now, under Section 1021.11, she would still be liable for the government's attorney's fees and costs of suit due to Section 1021.11 retrospective application to her pending matter. And the law has dissuaded her from participating in new challenges. But for her fear of being personally liable for the government's attorney's fees even on righteous gun law challenges where she essentially wins the case, she would continue to challenge California's overbearing gun laws, which she deeply believes are unconstitutional. Section 1021.11 would thus effectively end her right to petition the courts for redress of grievances.

37.     Plaintiff South Bay Rod & Gun Club, Inc. ("SBRGC") is a private nonprofit corporation incorporated under the laws of California, with headquarters in San Diego County, California. It was formed in 1955 with a mission to operate a properly managed nonprofit shooting club that is efficiently designed, contracted, and safely operated with diligently maintained shooting ranges, support structures, and facilities so that all authorized members and guests may use the facility with pride, confidence, and satisfaction. SBRGC seeks to promote and encourage the safe handling and use of firearms. Through this lawsuit, SBRGC represents not only its own interests, but also the interests of its members and supporters of the right to keep and bear arms for lawful purposes.

38.     SBRGC regularly participates as a party in litigation challenging unlawful restrictions on the right to keep and bear arms. For example, it is currently a named Plaintiff in another gun-related case pending in the Southern District. *See B&L Prods. v. Newsom*, No. 21-cv-01718-AJB-KSC, 2022 U.S. Dist. LEXIS 148596 (S.D. Cal. Aug. 18, 2022). As a result of Code of Civil Procedure section 1021.11, its members fear that the organization would be liable for paying opposing attorney's fees and costs of suit if it continues to pursue gun law challenges as a plaintiff in lawsuits challenging California's often-unconstitutional gun laws, even

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

if the organization substantially prevailed on such suits and achieved the aims of the litigation.  Because Section 1021.11 acts as a Bill of Attainder, upon the law's enrollment, SBRGC became liable for all past attorney's fees and costs of its government opponents in the lawsuits it is or has participated in, notwithstanding it may ultimately prevail on that suit.

39.    Thus, even if SBRGC decided now, or had decided at the moment that Section 1021.11 was enrolled to abandon its current lawsuit, under Section 1021.11, it still is liable for all fees and costs of its opponents in those matters.  In fact, at this point, if SBRGC abandoned its lawsuit where it still is not yet liable for the government's attorney's fees and costs under Section 1021.11, the fact that SBRGC abandoned that litigation to avoid the possibility of liability for fees and costs would be enough under Section 1021.11 for SBRGC to then be liable for the government's fees and costs once the law took effect on January 1st.  Thus, SBRGC, and organizational plaintiffs like it who are currently challenging California's gun laws are in a no-win situation given Section 1021.11's retrospective nature.

40.    SBRGC's members desire to challenge unconstitutional or other infirm gun laws, of which California has adopted many, particularly following the *Bruen* decision.  Section 1021.11 inhibits SBRGC from challenging such laws on members' behalf.  Thus, to the extent that members desire to strike down unconstitutional laws through litigation conducted by their organization, Section 1021.11 has a chilling effect on such efforts.

41.    Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("CCRKBA") is a nonprofit organization incorporated in Washington and with its principal place of business in that state. CCRKBA was formed in 1972 and is dedicated to protecting firearms rights. CCRKBA educates grass root activists, the public, legislators and the media about the Second Amendment. Their programs are designed to help all Americans understand the importance of the Second

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Amendment and its role in keeping Americans free. CCRKBA has a nationwide membership and has members throughout California. CCRKBA has participated in Second Amendment-related litigation in the past and would continue to do so in the future, but for Section 1021.11. For example, CCKRBA is currently a Plaintiff in *Renna v. Bonta*, 535 F. Supp. 3d 931 (S.D. Cal. 2021), a pending case which challenges California's Handgun Roster.

42.     Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit organization incorporated under the laws of the state of California, with headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of the Second Amendment in California and has participated in Second Amendment-related litigation in the past and would continue to do so in the future, but for Section 1021.11. For example, GOC is a plaintiff in *Junior Sports Magazines, Inc. v. Rob Bonta* (Case No. 2:22-cv-05663-CAS), a recently filed case pending in the Central District of California which challenges California's new unconstitutional restrictions on firearm-related advertising.

43.     Plaintiff Second Amendment Law Center (2ALC) is a Second Amendment scholarship and legal resource center committed to the preservation of the Second Amendment. Its mission is to reinforce the Second Amendment's solemn command that our government never unduly restrict law-abiding individuals from responsibly owning and using firearms. 2ALC brings together lawyers, legal and historical scholars, political advisors, and technical experts that have been involved in numerous lawsuits on behalf of non-profit advocacy associations such as the National Rifle Association, the California Rifle & Pistol Association, Gun Owners of California, and many others. 2ALC is a young organization that was expecting to soon begin filing or joining Second Amendment-related lawsuits against California gun laws. Due to Section 1021.11, it cannot do so. As a new organization, it would immediately be bankrupted if it were found to be liable for the State's legal fees and expenses.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

44.     Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA") is a non-profit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4) with its headquarters in Fullerton, California. Founded in 1875, the CRPA seeks to defend the civil rights of all law-abiding individuals, including the fundamental right to bear firearms for lawful purposes, including the core purpose of self-defense.

45.     CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. As a result of Code of Civil Procedure section 1021.11, its directors fear that the organization would be liable for paying opposing attorney's fees and costs of suit if it continues to pursue gun law challenges as a plaintiff in lawsuits challenging California's often-unconstitutional gun laws, even if the organization substantially prevailed on such suits and achieved the aims of the litigation.

46.     CRPA is currently a plaintiff in several lawsuits pending in California and federal courts challenging California gun laws, including (but not limited to): *Kim Rhode v. Bonta*, No. 20-55437, 2022 U.S. App. LEXIS 17486 (9th Cir. June 24, 2022); *Duncan v. Bonta,* 19 F.4th 1087 (9th Cir. 2021) (*en banc*), *vacated, remanded, at Duncan v. Bonta,* __U.S.__, 142 S. Ct. 2895 (2022); *B&L Prods. v. Newsom*, No. 21-cv-01718-AJB-KSC, 2022 U.S. Dist. LEXIS 148596, at *3 (S.D. Cal. Aug. 18, 2022); *Rupp v. Bonta*, No. 19-56004, 2022 U.S. App. LEXIS 18769 (9th Cir. June 28, 2022).[7]  Because Section 1021.11 acts as a Bill of Attainder, upon the law's enrollment, CRPA became liable for all past attorney's fees and costs of its government opponents in the lawsuits it is or has participated in, notwithstanding it may ultimately prevail on that suit.

47.     For example, in the case of *Duncan v. Bonta*, CRPA alleged several legal theories as to why the law challenged there should be struck down.  Although

---

[7] A non-comprehensive listing of other active CRPA-backed cases can be found here: <https://crpa.org/programs/litigation-program/> (as of September 9, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the district court agreed with those theories, the appellate court sitting en banc reversed. *Duncan v. Bonta,* 19 F.4th 1087 (9th Cir. 2021) (*en banc*), *vacated, remanded, at Duncan v. Bonta,* __U.S.__, 142 S. Ct. 2895 (2022). While the en banc ruling has been vacated and remanded in light of *Bruen* which may give CRPA a legal victory on their Second Amendment claim, the takings clause and due process claims are unlikely to be decided differently on remand. Even if CRPA ultimately succeeds in getting the law stricken in *Duncan*, because Section 1021.11 is retrospective, and because CRPA had *some* of its theories defeated, it is deemed to have lost the case under Section 1021.11 and the government is entitled as the prevailing party to seek its attorney's fees and costs of suit from CRPA.

48.     Thus, even if CRPA decided now, or had decided at the moment that Section 1021.11 was enrolled, to abandon all of its current litigation challenging California's gun laws, under Section 1021.11, it still is liable for all fees and costs of its opponents in those matters.  In fact, at this point, if CRPA abandoned those matters where it still is not yet liable for the government's attorney's fees and costs under Section 1021.11, the fact that CRPA abandoned that litigation to avoid the possibility of liability for fees and costs would be enough under Section 1021.11 for CRPA to then be liable on January 1, 2023 for the government's fees and costs for the government's legal efforts prior to the case being abandoned.  Thus, CRPA, and organizational plaintiffs like it who are currently challenging California's gun laws are in a no-win situation given Section 1021.11's retrospective nature.

49.     CRPA's members are also harmed by CRPA's liability for past and future attorney's fees and costs of suit of opponents in gun law cases. Many CRPA members are attorneys who have challenged gun laws in California, or plan to do so in the future, and would be liable for fees under Section 1021.11 CRPA's members desire to challenge unconstitutional or other infirm gun laws, of which California has adopted many, particularly following the *Bruen* decision. Section 1021.11 inhibits CRPA from challenging such laws on members' behalf. Thus, to the extent

1   that members desire to strike down unconstitutional laws through litigation

2   conducted by their organization, Section 1021.11 has a chilling effect on such

3   efforts.

4   **Defendants**

5   50.    Defendant Robert Bonta is the Attorney General of California. He is

6   the chief law enforcement officer of California. Defendant Bonta is charged by

7   Article V, Section 13 of the California Constitution with the duty to see that the

8   laws of California are uniformly and adequately enforced. Defendant Bonta also

9   has direct supervision over every district attorney and sheriff in all matters

10  pertaining to the duties of their respective officers. Defendant Bonta's duties also

11  include informing the public, local prosecutors, and law enforcement regarding the

12  meaning of the laws of California, including enforcing the law on places where

13  concealed carry is forbidden as defined by SB 918. He is sued in his official

14  capacity.

15  51.    The true names or capacities—whether individual, corporate,

16  associate, or otherwise—of the Defendants named herein as Does 1 through 10, are

17  presently unknown to Plaintiffs, and are therefore sued by these fictitious names.

18  Plaintiffs pray for leave to amend this Complaint to show the true names or

19  capacities of these Defendants if and when they have been determined.

20  **JURISDICTION AND VENUE**

21  52.    The Court has original jurisdiction of this civil action under 28 U.S.C.

22  § 1331, because the action arises under the Constitution and laws of the United

23  States, thus raising federal questions. The Court also has jurisdiction under 28

24  U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 since this action seeks to redress the

25  deprivation, under color of the laws, statutes, ordinances, regulations, customs and

26  usages of the State of California and political subdivisions thereof, of rights,

27  privileges or immunities secured by the United States Constitution and by Acts of

28  Congress.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

53.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

54.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Plaintiff Brennan resides within this District.  Plaintiff SBRGC in incorporated in and maintains its primary place of business in this District.

## Contextual Facts

55.     In *Duncan*, Ninth Circuit Judge VanDyke observed in his dissent that Second Amendment challenges in this circuit (to use a sports analogy) have 0 wins and 50 losses. *Id., at* 1167, n.8.

56.     Some of these "losses" occurred prior to *Heller* and *McDonald*. No doubt some cases will be won and lost after *Bruen*.  This shifting jurisprudence on the Second Amendment is not anyone's fault. But this does invite (sadly for those litigants who braved the early waters of Second Amendment litigation) the rhetorical question: Can some of the plaintiffs who would now be liable under California Code of Civil Procedure section 1021.11, who already risked money and time, go back and recover prevailing party attorney fees for their "losses" that have been turned into victories after the Supreme Court's corrections to this circuit's mistakes identified in *Heller/McDonald* and now *Bruen?*

57.     California's gun laws germinated under a state constitution that contains no Second Amendment analog.  It took *Heller* and *McDonald* to force California into constitutional compliance with a right to keep and bear arms, already set forth in most other states' constitutions.[8]

---

[8] "If plaintiffs are implying that a right to bear arms is one of the rights recognized in the California Constitution's declaration of rights, they are simply wrong. No mention is made in it of a right to bear arms. *See In re Rameriz* (1924) 193 Cal. 633, 651 ("The constitution of this state contains no provision on the subject").

23

58.     Prior to *Heller, McDonald*, and now *Bruen*, California already had a maze of laws that trenched on Second Amendment rights. Indeed, California's gun laws had become so complex that even the anti-gun California legislature felt compelled to reorganize and renumber them.[9]

59.     This recodification grew out of a comprehensive 1100-page study and recommendation[10] by the California Law Revision Commission ("CLRC").  The project was launched after then Governor Schwarzenegger had stated in a veto message:

> Before a government exercises its power to take away one's liberty, it should be clear to every person what actions will cause them to forfeit their freedom. Instead of adding to the lengthy and complex area of firearm laws, a reorganization of the current laws should be undertaken to ensure that statutes that impose criminal penalties are easily understandable.[11]

60.     The need for simplification was described by then Assembly Member Kevin McCarthy as necessary because:

> Firearms owners, licensed dealers, and law enforcement need to be able to interpret these provisions in order to comply with the law and avoid criminal liability. Ambiguity and confusion do not promote the public policy goals that those laws were designed to accomplish.
>
> . . .
>
> Gun owners shouldn't have to consult an attorney specializing in firearms law just to find out what they need to do to avoid committing a crime. Law enforcement should have clear, bright line, easily

---

Moreover, "[i]t is long since settled in this state that regulation of firearms is a proper police function. *Galvan v. Superior Court* (1969) 70 Cal. 2d 851, 866; *and see Kasler v. Lockyer*, 23 Cal. 4th 472, 481 (2000).

[9] The Deadly Weapons Recodification Act of 2010.  S. BILL 1080, 2010 Cal. Stat. ch. 711 (West).

[10] *See* California Law Revision Commission - Nonsubstantive Reorganization of Deadly Weapons Statutes. June 2009 ed., <http://www.clrc.ca.gov/pub/Printed-Reports/Pub233.pdf> (as of September 12, 2022).

[11] The cited language is from the Governor's veto message on Senate Bill 1140 (Scott) (2004), which would have made changes to provisions regulating the storage of firearms.

24

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

understandable guidelines on how to enforce these laws. This resolution is offered in the hope that an independent, expert body of legal experts can offer up some helpful suggestions on ways that these laws can be clarified so that our citizens will be able to determine, with relative ease, what the law requires and prohibits in the area of firearms regulation.

S. FLOOR ANALYSIS OF A. CON. RES. 73 (Cal. Aug. 26, 2006), pp. 4-5.

61.     The fact is, by 2006 California's gun laws had morphed into a tangled briar patch of regulations that required consultation with attorneys just so that ordinary citizens could exercise what would be reaffirmed as a fundamental right in 2008 with the publication of *Heller*. Even after the reorganization was signed into law, but before it took effect in 2012, the CLRC published a "clean-up" study in 2011, and additional clean-up work was completed in 2012 and 2013.[12]

62.     The regulatory scheme was so complex that a 62-page single-spaced cross-reference table is needed just to translate old statutes numbers into the new statute numbers. This suggests a level of complexity that rivals tax codes and environmental regulations.[13]

63.     Furthermore, this monumental effort was achieved solely to re-number and "simplify" California's gun laws.  The project was specifically undertaken without the objective of making any substantive changes to California gun law. *See* n.10, *supra.*

64.     Did this simplification satiate the California legislature? No. In the ten years since the recodification/simplification took effect in 2012, the California legislature has not bothered to slowed down, even after the Supreme Court published *Heller* in 2008 and *McDonald* in 2010.  On its Legislative Information

---

[12] 2011 Cal. Stat. ch. 285, 2012 Cal. Stat. ch. 162, §§ 12-14, 203, 207; 2013 Cal. Stat. ch. 76, §§ 145.5, 145.7, 147.3, 147.5, 153.5; 2013 Cal. Stat. ch. 291, § 2.

[13] *See* Nonsubstantive Reorganization of Deadly Weapon Statutes: Disposition of Existing Law*, <http://www.clrc.ca.gov/pub/Misc-Report/M300-Tables/UpdatedDispoTable.pdf> (as of September 12, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

webpage, a keywork search for bills introduced that include the word "firearm" yields the following results:

| CA Legislative Session: | Firearm Bills Introduced: |
|---|---|
| 2011-2012 | 156 |
| 2013-2014 | 173 |
| 2015-2016 | 168 |
| 2017-2018 | 191 |
| 2019-2020 | 184 |
| 2021-2022 | 176 |

65.    That's more than one-thousand (1,000) gun control regulations taken up by the California legislature since the Supreme Court affirmed in *McDonald* that states' gun laws are subject to compliance with the Second Amendment. To be sure, not all these bills became law, though that research would probably produce surprising results. The point is this: California has become a one-party state, and that party has decided to defy the U.S. Supreme Court's holdings on the Second Amendment.

66.    Now comes the State of California hoping to achieve though sheer brute force of confusing, contradictory, and in many instances unconstitutional legislation, to continue to "lacerate the Second Amendment, deepen[] the wound, and [bring about its] Death by a Thousand Cuts." *Teixeira v. Cty. of Alameda,* 873 F.3d 670, 694 (9th Cir. 2017) (*en banc*) (Tallman, J., dissenting).

**FACTS APPLICABLE TO ALL CLAIMS**

67.    California Code of Civil Procedure section 1021.11 was enacted as part of SB 1327, the "bounty" law that California cynically enacted to copy Texas's SB 8 law on abortion. California essentially copied SB 8 word-for-word but substituted in the word "firearms" everywhere that "abortion" was mentioned.

68.    Section 1021.11 commands that "notwithstanding any other law" (thus including even federal laws), "any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political

26

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party."

69.     Under the plain language of Section 1021.11, if anyone seeks to challenge a state or local law in California related to firearms, they and their attorneys must be willing to bear the cost of the government's attorney's fees if they are not the prevailing party. And to be the "prevailing party" as defined under Section 1021.11, they must prevail on all claims. Under section 1021.11(b), if the government defendant prevails on *even a single cause of action*, the challenging parties and attorneys are not the prevailing party and must pay the government's attorney's fees and costs.

70.     Under Section 1021.11, fees don't even need to be obtained in the immediate matter. Under subdivision (c), the government has three years to bring a separate civil action to recover fees and costs. What's more, if Plaintiffs and their attorneys are sued in such a civil action, under subdivision (d)(2) fees and costs not being granted to defendants in the original matter are *not a defense* to the subsequent civil matter, in violation of basic principles of *res judicata*, collateral estoppel, and federal Supremacy. Defendants could have this Court deny with finality a request for attorney's fees, yet nonetheless sue Plaintiffs and their attorneys in a state civil action up to three years later to try and retrieve them in that forum, as though this Court's ruling and judgment on the fees issue was a nullity or merely advisory.

71.     Additionally, in an outrageous act of contempt for the rule of law and our federal system, Section 1021.11(d)(3) declares that the "court in the underlying action [holding] that any provision of [Section 1021.11] is invalid, unconstitutional, or preempted by federal law" is not enough to bar the subsequent civil action for

attorney's fees and costs. California is telling this Court that as far as the State is concerned, the Court's rulings on fee and cost awards aren't worth the paper they are printed on and will be ignored. This Court should not tolerate such defiance.

72.     Section 1021.11 is an existential threat for the associational Plaintiffs. SBRGC, CRPA, GOC and CCRKBA serve as Plaintiffs in Second Amendment-related lawsuits on behalf of their thousands of members. Critically, they also pay for the expenses of such litigation. If Section 1021.11 is allowed to impact the parties' liability for attorney's fees and costs in those matters, their ability to petition courts to resolve their grievances would be chilled, if not entirely eliminated. The risk of losing on even a single claim and then having to pay the State's attorney's fees and costs would be too great. They also may struggle to find attorneys willing to challenge gun laws, given attorneys are also liable for these expenses under Section 1021.11.

73.     Section 1021.11 takes effect January 1, 2023, but is retrospective, applying to any lawsuit that that was pending at any point in the three years prior to enactment of the law.  That means that matters being currently litigated, and that were filed well before SB 1327 was first proposed, are currently being affected by the law.

74.     Unsurprisingly, Section 1021.11 is unconstitutional for a number of reasons. It violates the First Amendment by chilling Plaintiffs' right to petition the government for resolution of their grievances. Future plaintiffs may not bring lawsuits out of fear they will need to pay the entirety of the State's expenses if they don't prevail on every claim they bring. The associational Plaintiffs in this matter may have to reconsider this very lawsuit if Section 1021.11 is upheld after it takes effect.

75.     Because Section 1021.11 is retrospective and is designed to punish those who previously filed lawsuits challenging California's gun laws and deter them from filing future lawsuits, Section 1021.11 constitutes an unlawful Bill of

Attainder.

76.    Section 1021.11 additionally violates Plaintiffs' Fourteenth Amendment Due Process right by interfering in the attorney-client relationship as well as the right to counsel of one's choosing. Because Section 1021.11 imposes a monetary liability titled heavily in the State's favor on not just plaintiffs but on their attorneys as well, the choice of counsel willing to take on Second Amendment cases in California will be severely curtailed, and existing counsel may decide not to proceed further. This is unacceptable, as litigants freely choosing their counsel is a very basic right.[14]

77.    Section 1021.11 also insults Equal Protection by singling out plaintiffs bringing Second Amendment claims without a compelling reason for doing so. The State may not treat one constitutional right as disfavored compared to the rest.  And in this case, it has not even a rational basis for doing so, insomuch as it is tilting the playing field in favor of the government, an entity that is better able to bear the burden of litigating civil rights matters than the plaintiffs whose rights are being vindicated.

78.    Most egregiously, however, Section 1021.11 violates the Constitution's Supremacy Clause. U.S. CONST. Art. VI, Cl. 2. Congress has decided that the purview of deciding attorney fee awards in federal civil rights cases are the federal courts that decide those matter. *See* 42 U.S.C. § 1988 (2022). Several courts have recognized that in Congress doing so, Section 1988 takes supremacy over any state laws purporting to alter the outcome of a fee award granted or denied under Section 1988. "We agree with the Fifth Circuit that a state cannot frustrate the

---

[14] "While right to counsel in the criminal and civil context are not identical, a civil litigant does have a constitutional right, deriving from due process, to retain hired counsel in a civil case." *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 257 (1st Cir. 1986); "Given the constitutional dimension of the right to select counsel . . . the presumption must be in favor of the party's choice of counsel and may not be overridden absent compelling reasons." *Lehtonen*, No. 2:04-cv-00625-KJD-GWF, 2007 U.S. Dist. LEXIS 118124, at *19 (D. Nev. Dec. 18, 2007).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award." *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982); *see also Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233 (4th Cir. 2001).

79.     Even California state courts have long since addressed this question. "It follows from [the legislative history of Section 1988] and from the Supremacy Clause that the [attorneys] fee provision is part of the § 1983 remedy whether the action is brought in federal or state court." *Green v. Obledo*, 161 Cal. App. 3d 678, 682-83 (1984). *See also Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 764 (2002)).  Section 1021.11 ignores both state and federal precedent in bypassing the supremacy of Section 1988 in determining civil rights fee awards.

80.     Finally, because of the grave constitutional violations inherent in Section 1021.11, writ relief against Section 1021.11 is appropriate under the All Writs Act. Under that Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.§ 1651(a) (2022).  It is appropriate that this Court issue a writ directing and preventing Defendants from commencing or entertaining any action, or entering any order or judgment, that would undermine any order, ruling, determination, or judgment made by this Court or any other federal court under Section 1988.  As further relief, this Court should issue declaratory relief to Plaintiffs and issue a permanent injunction barring all Defendants from enforcing Section 1021.11.[15]

---

[15] The Anti-Injunction Act is not a limitation on this Court in this circumstances. Writs are appropriately issues when "expressly authorized by Act of Congress, or where necessary in aid of [the court's] jurisdiction, or to protect or effectuate [the court's] judgments." *Ocean Thermal Energy Corp. v. Coe*, No. LACV19-05299-VAP-JPR, 2020 U.S. Dist. LEXIS 242115, at *10 (C.D. Cal. Nov. 16, 2020), citing 28 U.S.C. § 2283 (2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INJUNCTIVE RELIEF ALLEGATIONS**

81.     Injunctive relief is necessary to prevent the State from enforcing California Code of Civil Procedure section 1021.11's attorney's fee and cost shifting statute.

82.     If not enjoined, Section 1021.11 will chill Plaintiffs' ability to proceed on preexisting and future Second Amendment lawsuits, because of the risks of the government's attorney's fees and costs of suit being imposed on them if they lose on *any* of their claims.

83.     The injunctive relief sought would eliminate that irreparable harm and allow Plaintiffs to exercise their right to petition courts for redress of their constitutional rights.  Accordingly, injunctive relief is appropriate.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. ART. 1, § 3, CL. 9;**
**U.S. CONST. ART. 1, § 10, CL. 1;**
**UNLAWFUL BILL OF ATTAINDER**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

84.     Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

85.     California Code of Civil Procedure section 1021.11 makes Plaintiffs and their counsel financially liable for the State's attorney's fees and costs if they lose on even a single cause of action in firearm-related cases.  Section 1021.11 applies to cases existing at the time of its enrollment as a law, meaning that cases currently being litigated by Plaintiffs and others are subject to the law, even if Plaintiffs abandoned those cases at the time Section 1021.11 was enrolled as a law.

86.     The imposition of liability for attorney's fees and costs for cases preexisting the enrollment of Section 1021.11 is designed to discourage persons and organizations who have challenged unconstitutional or otherwise infirm gun laws. It has no purpose in its design beyond that.

87.     Under California law and policy, attorneys are only liable for the fees

31

and costs of an opponent as a sanction for behavior deemed by the trier of fact to be abnormal or improper by the attorney.  Further, liability of the attorney for fees and costs as a sanction is always in the discretion of the trier of fact.  Thus, only in instances where the attorney has been adjudged by the court to have engaged in some malfeasance or other act justifying the imposition of the fees and costs on the attorney as a punishment may liability for such fees and costs be imposed.

88.    Section 1021.11 makes imposition of such fees mandatory, disallowing the discretion judges have to assess the culpability of the attorney for any abnormality or malfeasance by that attorney in representing a party who has challenged a gun law.

89.    In making current litigants liable for attorney's fees and costs of opponents for preexisting litigation as a punishment for having brought or maintained those suits, Section 1021.11 operates as a Bill of Attainder.  In making the attorneys of current litigants liable for attorney's fees and costs of opponents for preexisting litigation as a punishment for having represented those plaintiffs who brought or maintained those suits, Section 1021.11 operates as a Bill of Attainder.

90.    Plaintiffs are thus entitled to declaratory and injunctive relief striking the retrospective provisions of Section 1021.11 as unlawful Bills of Attainder.

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. I**
**RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

91.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

92.    California Code of Civil Procedure section 1021.11 makes Plaintiffs and their counsel financially liable for the State's attorney's fees and costs if they lose on even a single cause of action in a lawsuit challenging firearm laws or regulations, notwithstanding that this Court may determine Plaintiffs to be prevailing parties on the matter or make an award or denial of an award on the

32

matter.

93.   This has the effect of chilling Plaintiffs' First Amendment right to petition the government for redress of their grievances on firearms-related cases, because they will be too afraid of having to pay the enormous expense of the State's legal fees and costs.

94.   The First Amendment right to petition government for redress of grievances is fundamental: "We start with the premise that the rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill. State Bar Ass'n,* 389 U.S. 217, 222 (1967).

95.   Defendants are thus propagating customs, policies, and practices that deprive California residents, including Plaintiffs, of their constitutional right to petition the government for redress of their grievances, as guaranteed by the First Amendment.

96.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that violate due process.

97.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**DUE PROCESS (INTERFERENCE WITH ATTORNEY-CLIENT RELATIONSHIP AND RIGHT TO COUNSEL)**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

98.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

99.   California Code of Civil Procedure section 1021.11 makes Plaintiffs *and their counsel* financially liable for the State's attorney's fees and costs if they lose on even a single cause of action in firearm-related cases.

100.   This makes it much more difficult for Plaintiffs to acquire counsel of

33

their choosing in firearm-related cases, because attorneys who currently represent Plaintiffs, as well as future possible counsel who may represent Plaintiffs, will choose not to proceed with the representation any longer as to Second Amendment cases out of fear of being liable for the State's legal fees. In this way, Section 1021.11 violates Plaintiffs' due process both by interfering with their right to counsel of their choosing and by interfering with existing attorney-client relationships.

101.   Defendants are thus propagating customs, policies, and practices that deprive California residents, including Plaintiffs, of their constitutional right to counsel and their right to have their attorney-client relationships not disrupted by the government, as guaranteed by the Fourteenth Amendment.

102.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that violate due process.

103.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**EQUAL PROTECTION**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

104.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

105.   California Code of Civil Procedure section 1021.11 makes Plaintiffs and their counsel financially liable for the State's attorney's fees and costs if they lose on even a single cause of action in firearm-related cases.

106.   The State of California therefore discriminates against Plaintiffs just because they bring Second Amendment claims challenging gun laws, treating them very differently from other litigants who seek to vindicate any other constitutional right.

107.   While gun owners and Second Amendment litigants are not a

34

recognized protected class, federal caselaw has long "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

108.   There is no rational basis for disparate treatment of litigants based on which constitutional right they seek to vindicate, and because of that, Section 1021.11 violates Plaintiffs' rights to Equal Protection under the Fourteenth Amendment.

109.   Defendants are thus propagating customs, policies, and practices that deprive California residents, including Plaintiffs, of their right to equal protection, as guaranteed by the Fourteenth Amendment.

110.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that violate equal protection.

111.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. ART. VI, CL 2**
**SUPREMACY CLAUSE**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

112.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

113.   California Code of Civil Procedure section 1021.11 makes Plaintiffs and their counsel financially liable for the State's attorney's fees and costs if they lose on even a single cause of action in firearm-related cases.

114.   Section 1021.11 commands that "*notwithstanding any other law,*" "any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute,

ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party."

115. Section 1021.11 is not limited to California state court cases and makes no exceptions for federal litigation.

116. Section 1021.11 also declares that the "court in the underlying action [holding] that any provision of [Section 1021.11] is invalid, unconstitutional, or preempted by federal law" is not enough to bar a subsequent civil action for attorney's fees and costs.

117. All of this is in plain violation of the federal Supremacy Clause found in Article Six of the Constitution. It has been long decided that 42 U.S.C. § 1988—and only Section 1988—governs attorney's fee awards in cases brought under 42 U.S.C. § 1983. California Code of Civil Procedure section 1021.11 thus frustrates the aim of federal law and is void.

118. Defendants are thus propagating customs, policies, and practices that violate the Supremacy Clause of the U.S. Constitution.

119. Defendants cannot satisfy their burden to justify these customs, policies, and practices that violate the Supremacy Clause.

120. Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**VOID FOR VAGUENESS**
**U.S. CONST. AMEND XIV**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

121. Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

122. The Fourteenth Amendment to the United States Constitution guarantees due process by requiring adequate guidance to those who would be law-abiding that they may have a reasonable opportunity to know what is

36

prohibited. Vague statutes are thus prohibited because they impermissibly delegate basic policy matters to law enforcement, judges, and juries on an ad hoc and subjective basis.

123.   California Code of Civil Procedure section 1021.11, which burdens plaintiffs who challenge or want to challenge unconstitutional or otherwise impermissible laws by making them responsible for attorney's fees and costs of the government if those plaintiffs are not 100 percent successful, is so vague that a person of ordinary intelligence cannot understand its scope, which renders it subject to arbitrary enforcement. The potential for arbitrary and inconsistent application of the exercise of the right to petition courts for redress of grievances against California firearms laws violates the guarantee of due process of law in the Fourteenth Amendment of the U.S. Constitution.

124.   As but one example, because Section 1021.11 applies to any litigation challenge to "any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms," it is unclear whether this challenge to Section 1021.11 itself, which arguably "regulates" firearms by discouraging lawsuits challenging firearms restrictions, comes within the ambit of Section 1021.11, thus obligating these Plaintiffs to pay the State's attorney's fees and costs of suit if they do not prevail 100 percent on this matter.

125.   Section 1021.11 is accordingly void for vagueness, both facially and as applied against the individual Plaintiffs in this action.

126.   Defendants are thus propagating customs, policies, and practices that deprive California residents, including Plaintiffs, of their right to due process, as guaranteed by the Fourteenth Amendment.

127.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that violate due process.

128.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**SEVENTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**ALL WRITS ACT**
**28 U.S.C. § 1651**
**AGAINST ALL DEFENDANTS**

129.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

130.   California Code of Civil Procedure section 1021.11 makes Plaintiffs and their counsel financially liable for the State's attorney's fees and costs if they lose on even a single cause of action in firearm-related cases.

131.   Section 1021.11 commands that "*notwithstanding any other law,*" "any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party."

132.   Section 1021.11 is not limited to California cases and makes no exceptions for federal litigation.

133.   Section 1021.11 also declares that the "court in the underlying action [holding] that any provision of [Section 1021.11] is invalid, unconstitutional, or preempted by federal law" is not enough to bar a subsequent civil action for attorney's fees and costs.

134.   Plaintiffs are entitled under the All Writs Act to declaratory and injunctive relief against Defendants enjoining enforcement of Section 1021.11 as well as enjoining State from taking any action in a state court that would undermine, alter, nullify, or impair the enforcement or effect of any judgment, ruling, order, or award this Court makes as to a prevailing party and the determination of attorney's fees and costs of suit under 42 U.S.C. § 1988.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

**PRAYER**

2          WHEREFORE, Plaintiffs request that judgment be entered in their favor and

3     against Defendants as follows:

4          1.      A declaration that California Code of Civil Procedure section 1021.11

5     is an unlawful and unenforceable Bill of Attainder;

6          2.      A declaration that California Code of Civil Procedure section 1021.11

7     violates the Supremacy Clause;

8          3.      A declaration that California Code of Civil Procedure section 1021.11

9     violates the First Amendment;

10         4.      A declaration that California Code of Civil Procedure section 1021.11

11    violates the Fourteenth Amendment;

12         5.      An order permanently enjoining Defendants from enforcing California

13    Code of Civil Procedure section 1021.11 in all other matters;

14         6.      Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C.

15    § 1988; and

16         7.      All other relief the court deems appropriate.

17    Dated:  September 28, 2022          **MICHEL & ASSOCIATES, P.C.**

18                                        /s/ C.D. Michel

19                                        C.D. Michel
                                          Counsel for Plaintiffs South Bay Rod & Gun
20                                        Club, Inc. Gary Brennan, Cory Henry,
                                          Patrick Lovette, Virginia Duncan, Randy
21                                        Ricks, Gun Owners of California, Second
                                          Amendment Law Center, and California
22                                        Rifle and Pistol Association, Incorporated
                                          e-mail: cmichel@michellawyers.com
23

24    Dated:  September 28, 2022          **LAW OFFICES OF DON KILMER**

25                                        s/ Don Kilmer

26                                        Don Kilmer
                                          Counsel for Plaintiff Citizens Committee for
27                                        the Right to Keep and Bear Arms

28

39

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF