C. D. Michel – SBN 144258
cmichel@michellawyers.com
Joshua Robert Dale – SBN 209942
jdale@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
www.michellawyers.com

Attorneys for Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California, Second Amendment Law Center, and California Rifle and Pistol Association, Incorporated

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorneys for Plaintiff Citizens Committee for the Right to Keep and Bear Arms

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH BAY ROD & GUN CLUB, INC.; GARY BRENNAN, an individual; CORY HENRY, an individual; PATRICK LOVETTE, an individual; VIRGINIA DUNCAN, an individual; RANDY RICKS, an individual; CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS; GUN OWNERS OF CALIFORNIA; SECOND AMENDMENT LAW CENTER; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendants. | **CASE NO: 3:22-cv-01461-RBM-WVG** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> **Hearing Date: November 21, 2022** <br> **Courtroom: 5B** <br> **Judge: Hon. Ruth Bermudez Montenegro** |

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ..................................................................................... 2

TABLE OF AUTHORITIES ............................................................................... 3

1.   INTRODUCTION AND BACKGROUND ................................................. 1

2.   ARGUMENT ............................................................................................... 5

    A.   Legal Standard Applicable to this Motion ............................................ 5

    B.   Plaintiffs Are Likely to Succeed on the Merits .................................... 6

        i.   Section 1021.11 destroys Plaintiffs' right to petition the government for redress of grievances .......................................... 6

        ii.   Section 1021.11 interferes with Plaintiffs' right to counsel of their choosing, in violation of the Fourteenth Amendment. ....... 8

        iii.   In treating Plaintiffs differently based on what types of claims they bring, Section 1021.11 violates Equal Protection. ............. 9

        iv.   Section 1021.11 violates the Supremacy Clause as 42 U.S.C. § 1988 governs attorney's fee awards in successful § 1983 claims. ...................................................................................... 11

        v.   Section 1021.11 is void because it is vague as to what constitutes a law that "regulates or restricts firearms" and invites arbitrary enforcement ................................................................ 13

        vi.   Section 1021.11 is a Bill of Attainder. ..................................... 16

    C.   Plaintiffs Will Suffer Irreparable Harm if Denied Relief ................... 18

    D.   The Balancing of the Equities Sharply Favors Plaintiffs ................... 19

    E.   Preliminary Injunctive Relief is In the Public Interest ....................... 20

3.   CONCLUSION ........................................................................................... 20

POINTS & AUTH. IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011)................................................................................ 19

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009)................................................................................. 5

*Ass'n of N.J. Rifle & Pistol Clubs v. AG N.J.*,
   910 F.3d 106 (3d Cir. 2018).................................................................................. 14

*Atonio v. Wards Cove Packing Co.*,
   10 F.3d 1485 (9th Cir. 1993).................................................................................. 16

*Barr v. Am. Ass'n of Political Consultants*,
   140 S. Ct. 2335 (2020)............................................................................................. 6

*Bill Johnson's Rests. v. NLRB*,
   461 U.S. 731 (1983).................................................................................................. 6

*Borough of Duryea v. Guarnieri*,
   564 U.S. 379 (2011).................................................................................................. 6

*Brinn v. Tidewater Transp. Dist. Comm'n*,
   242 F.3d 227 (4th Cir. 2001).................................................................................. 11

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
   434 U.S. 412 (1978)................................................................................................ 12

*City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*,
   538 U.S. 188 (2003).................................................................................................. 7

*Cooper v. Aaron*,
   358 U.S. 1 (1958)...................................................................................................... 3

*Dobbs v. Jackson Women's Health Organization*,
   597 U.S. __, 142 S. Ct. 2228 (2022)........................................................................ 5

*Duncan v. Becerra (Bonta)*,
   265 F. Supp. 3d 1106 (S.D. Cal. 2017)........................................................... 13, 19

*Elrod v. Burns*,
   427 U.S. 347 (1976)................................................................................................ 19

*Ezell v. Chicago*,
   651 F.3d 684 (7th Cir. 2011).................................................................................. 19

ii

*Faisal Nabin Kashem v. Barr*,
  941 F.3d 358 (9th Cir. 2019).................................................................. 15

*Felder v. Casey*,
  487 U.S. 131 (1988) ............................................................................... 12

*Garcia v. Harris*,
  No. CV 16-02572-BRO, 2016 U.S. Dist. LEXIS 193095 (C.D. Cal. Aug. 5,
  2016) ...................................................................................................... 10

*Gatto v. Cty. of Sonoma*,
  98 Cal. App. 4th 744 (Ct. App. 2002)..................................................... 12

*Gray v. New England Tel. & Tel. Co.*,
  792 F.2d 251 (1st Cir. 1986) .................................................................... 8

*Green v. Obledo*,
  161 Cal. App. 3d 678 (Ct. App. 1984)..................................................... 12

*Haywood v. Drown*,
  556 U.S. 729 (2009) ............................................................................... 12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................................ 11

*Hughes v. Rowe*,
  449 U.S. 5 (1980) (per curiam) ............................................................... 11

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009)................................................................. 20

*Kolender v. Lawson*,
  461 U.S. 352 (1983)................................................................................ 15

*Legal Servs. Corp. v. Velazquez*,
  531 U.S. 533 (2001)............................................................................. 7, 8

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012)................................................................... 18

*Monterey Mech. Co. v. Wilson*,
  125 F.3d 702 (9th Cir. 1997)................................................................... 19

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. __, 142 S. Ct. 2111 (2022) ........................................................ 5

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1977)................................................................................ 17

iii

*North Pacifica, LLC v. City of Pacifica,*
   526 F.3d 478 (9th Cir 2008).................................................................... 9, 10

*PLIVA, Inc. v. Mensing,*
   564 U.S. 604 (2011) ............................................................................... 11

*Preminger v. Principi,*
   422 F.3d 815 (9th Cir. 2005) ................................................................. 20

*Rodriguez v. Robbins,*
   715 F.3d 1127 (9th Cir 2013) ................................................................ 20

*Romer v. Evans,*
   517 U.S. 620 (1996) ............................................................................... 10

*Rupp v. Bonta,*
   No. 19-56004, 2022 U.S. App. LEXIS 18769 (9th Cir. June 28, 2022) .................... 13

*Seariver Mar. Fin. Holdings v. Mineta,*
   309 F.3d 662 (9th Cir. 2002)............................................................. 16, 18

*Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.,*
   468 U.S. 841 (1984) ............................................................................... 16

*Sessions v. Dimaya,*
   138 S. Ct. 1204 (2018) ........................................................................... 14

*Spain v. Mountanos,*
   690 F.2d 742 (9th Cir. 1982) ................................................................. 11

*United Mine Workers v. Ill. State Bar Ass'n,*
   389 U.S. 217 (1967) ................................................................................. 6

*United States v. Locke,*
   529 U.S. 89 (2000) ................................................................................. 11

*United States v. Martinez,*
   143 F.3d 1266 (9th Cir. 1998) ................................................................. 9

*Valle del Sol Inc. v. Whitting,*
   732 F.3d 1006 (9th Cir. 2013) ............................................................... 20

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
   429 U.S. 252 (1977) ............................................................................... 18

*Whole Woman's Health v. Jackson,*
   142 S. Ct. 522 (2021) ......................................................................... 5, 10

*Whole Woman's Health v. Jackson,*
   31 F.4th 1004 (5th Cir. 2022) ................................................................ 10

iv

*Willowbrook v. Olech,*
    528 U.S. 562 (2000) ............................................................................................ 9

**Statutes**

42 U.S.C. § 1988 ........................................................................... 3, 11, 12, 13

California Code of Civil Procedure § 425.16 .................................................... 1

California Code of Civil Procedure § 1021.11 ............................................ *passim*

POINTS & AUTH. IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

## 1.   INTRODUCTION AND BACKGROUND

In this matter, Plaintiffs are entities and individuals who face severe threats to their constitutional rights due to California Code of Civil Procedure section 1021.11, which was enacted as part of Senate Bill ("SB") 1327. This threat comes in the form of financial penalties designed to punish plaintiffs seeking to enforce their constitutional rights through the peaceful means of litigation in a court of law.

California knows how to protect fundamental rights from litigation abuse. The state has some of the strongest protections in the country when it comes to ensuring that First Amendment rights are not chilled through Strategic Litigation Against Public Policy (SLAPP). *See* CAL. CIV. PROC. CODE § 425.16, *et seq.* While that code section is designed to prevent plaintiffs with all-but-unlimited resources (corporations and governments) from abusing defendants exercising fundamental rights, California's new Section 1021.11 is designed to put sovereign defendants with all-but-unlimited resources in a position to bankrupt plaintiffs seeking to hold the government in check against constitutional abuses. This is a paradigm shift that cannot be permitted to stand.

Plaintiffs have submitted declarations in support of this motion that illustrates how Section 1021.11 harms them, their associations, and the organizations they represent. *See* Declaration of Gary Brennan in Support of Motion for Preliminary Injunction at ¶¶ 5-10; Declaration of Cory Henry at ¶¶ 3-4; Declaration of Patrick Lovette at ¶¶ 3-4; Declaration of Virginia Duncan at ¶¶ 3-4; Declaration of Alan Gottlieb at ¶¶ 3-16; Declaration of Richard Minnich of CRPA at ¶¶ 5-16; Declaration of Chuck D. Michel at ¶¶ 4-6; Declaration of Sam Paredes at ¶¶ 5-9; and Declaration of Jon Sivers at ¶¶ 5-10.  Additionally, Turner's Outdoorsman has submitted a declaration to explain that it would have been participated as a Plaintiff in a recently-filed Second Amendment lawsuit but for fear of losing and having to pay the State's legal fees. *See* Declaration of Bill Ortiz in Support of Motion for Preliminary Injunction at ¶¶ 5-10.

1

Section 1021.11 was enacted as part of SB 1327, the "bounty" law that California cynically enacted to copy Texas's SB 8 law on abortion. California essentially copied SB 8 word-for-word but substituted in the word "firearms" everywhere that "abortion" was mentioned.[1] Section 1021.11 commands that:

> notwithstanding any other law [thus including even federal laws], any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

Under the plain language of Section 1021.11, if anyone seeks to challenge a state or local law in California related to firearms, they and their attorneys must be willing to bear the cost of the government's attorney's fees if they are not the prevailing party. And to be the "prevailing party" as defined under Section 1021.11, they must prevail on *all claims*. Under Section 1021.11(b), if the government defendant prevails on *even a single cause of action*, the challenging parties and attorneys are not the prevailing party, but the government is, and the plaintiff must pay the government's attorney's fees and costs.

Under Section 1021.11, fees don't even need to be obtained in the subject lawsuit. Under subdivision (c), the government has three years to bring a separate state court civil action to recover fees and costs. What's more, if Plaintiffs and their attorneys are sued in such a civil action, under subdivision (d)(2) fees and costs not being granted to defendants in the original matter are *not a defense* that can be raised to the subsequent civil matter, in violation of basic principles of *res judicata*, collateral estoppel, and federal Supremacy. Defendants could have this Court deny

---

[1] Plaintiffs' complaint provides a detailed background regarding the enactment of SB 1327, and movants defer from repeating that background herein for the sake of economy. Suffice it to say that SB 1327 was a political stunt that Defendants knew was unconstitutional when they enacted it, and was not serious legislation enacted to combat the criminal use of firearms.

2

with finality a request for attorney's fees, yet nonetheless subsequently sue Plaintiffs and their attorneys in a state civil action up to three years later to try and retrieve them in that forum. Plaintiffs could be *awarded* attorney's fees as a prevailing party in this Court under 42 U.S.C. § 1988, yet the government could still file a subsequent action in state court to recover its own attorney's fees as a prevailing party if that government entity managed to get at least one claim dismissed.

Section 1021.11 treats this Court's ruling and judgment on an attorney fee application as merely advisory or in some instances as a nullity.

Additionally, in an outrageous act of contempt for the rule of law and our federal system, Section 1021.11(d)(3) declares that the "court in the underlying action [holding] that any provision of [Section 1021.11] is invalid, unconstitutional, or preempted by federal law" is not enough to bar the subsequent civil action for attorney's fees and costs. California is telling this Court that as far as the State is concerned, the Court's rulings on fee and cost awards aren't worth the paper they are printed on and will be ignored. More than 60 years after President Eisenhower used federal troops to enforce a decision of the U.S. Supreme Court, California's governor and its legislature are repeating the subversive errors of Orval Faubus and the Arkansas legislature.  This Court should take this opportunity to remind California that "[C]onstitutional rights [. . .] can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes." *Cooper v. Aaron,* 358 U.S. 1, 16-17 (1958).

Section 1021.11 is an existential threat for the associational Plaintiffs. SBRGC, CRPA, GOC, and CCRKBA serve as Plaintiffs in many Second Amendment-related lawsuits on behalf of their thousands of members. Critically, they also pay for the expenses of such litigation. If Section 1021.11 is allowed to impact the parties' liability for attorney's fees and costs in those matters, their

ability to petition courts to resolve their grievances would be chilled, if not entirely eliminated. The risk of losing on even a single claim and then having to pay the State's attorney's entire fees and costs bill would be too great. They will also struggle to find attorneys willing to challenge gun laws, given attorneys are also liable for these expenses under Section 1021.11.

Section 1021.11 takes effect January 1, 2023, but has the *ex post facto* effect of applying to any lawsuit that that was pending at any point in the three years prior to enactment of the law.  That means that matters being currently litigated, and that were filed well before SB 1327 was first proposed, are currently being affected by the law. Unsurprisingly, Section 1021.11 is unconstitutional for a number of reasons, and those reasons are the subject of this motion.

The bill's legislative history makes it clear both the California State Senate and Assembly knew it was unconstitutional when they passed it, with the Assembly Judiciary Committee's analysis even stating that "This language appears to be unprecedented in California law and likely would not be endorsed by this Committee but for the fact that it is included in this bill and modeled on Texas law." S. BILL 1327, A. JUD. COMM. ANALYSIS (Cal. June 10, 2022).

The Attorney General has also admitted in writing that this fee-shifting language is unconstitutional.  In his capacity as California's lawyer, he joined an amicus brief filed before the Supreme Court and argued that the Texas law's fee shifting provision is unconstitutional. Defendant Bonta also issued a press release upon the filing of this amicus brief on October 27, 2021, in which he called Texas's SB 8, which includes the fee shifting provisions, "blatantly unconstitutional." *See* Attorney General Bonta: Texas Cannot Avoid Judicial Review of Its Unconstitutional Abortion Ban (October 27, 2021), <https://oag.ca.gov/news/ pressreleases/attorney-general-bonta-texas-cannot-avoid-judicial-review- itsunconstitutional> (as of September 26, 2022).

That brief itself argued against the "one-sided attorney's fees provisions that

4

1   award attorney's fees and costs to any plaintiff who prevails, [. . .] while statutorily

2   barring providers from recovering their attorney's fees and costs even if they

3   prevail." *See Br. of Mass. et al. as Amici Curiae in Supp. of Pet'rs* at 21, *Whole*

4   *Woman's Health v. Jackson*, 142 S. Ct. 522 (2021).  Defendant's logic and

5   argument as to the unconstitutionality of one-sided fee shifting provisions in

6   constitutional challenges applies just as much if not more so to the one-sided

7   "prevailing party" rule under Section 1021.11 when citizens bring constitutional

8   challenges to California's extreme firearms laws. [2]

9

10

## 2.   ARGUMENT

11   ### A.   Legal Standard Applicable to this Motion

12       To obtain a preliminary injunction, the moving party must show: (1) a

13   likelihood of success on the merits; (2) a likelihood of irreparable harm absent

14   preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an

15   injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,

16   559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*,

17   55 U.S. 7, 20 (2008)).

18

19

20

21

22

---

23   [2] Given Defendant's stated position about the unconstitutionality of the fee
provision language in Section 1021.11 when that language uses the word "abortion"
24   instead of "firearms," it is unknown how Defendant Bonta or any of his deputies
could appear or file documents supporting Section 1021.11 in this lawsuit without
25   violating Federal Rule of Civil Procedure 11.  The only appreciable difference
between a fee-shifting law affecting Second Amendment litigation and one
26   affecting abortion litigation is that the U.S. Supreme Court has unambiguously held
that the Second Amendment is a fundamental constitutional right not subject to
27   second-class status (*N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. __, 142 S.
Ct. 2111, 2156 (2022)), but has held that the permissibility of abortion is not a
28   matter subject to protection under the U.S. Constitution. (*See Dobbs v. Jackson
Women's Health Organization*, 597 U.S. _5_, 142 S. Ct. 2228, 2242 (2022)).

## B.     Plaintiffs Are Likely to Succeed on the Merits

### i.     Section 1021.11 destroys Plaintiffs' right to petition the government for redress of grievances.

The First Amendment guarantees the right to petition the government for the redress of grievances, and this right is fundamental. "We start with the premise that the rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill. State Bar Ass'n,* 389 U.S. 217, 222 (1967). The Supreme Court has long recognized that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 741 (1983) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). This right is even more critical when advancing a particular political or social viewpoint, such as Plaintiffs here bringing their Second Amendment claims in a state where their viewpoint is unpopular. "Petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 395 (2011). California is obstructing Second Amendment challenges to its laws in a way that is about as viewpoint and "content-based as it gets". *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2346 (2020).

In the first of its many sins against the Constitution, Section 1021.11 chills the right to petition the government, at least for plaintiffs bringing Second Amendment challenges to firearms laws in California. In fact, the word "chills" doesn't go far enough, because Section 1021.11 effectively freezes Second Amendment-related challenges on the spot for all but the wealthiest of potential plaintiffs. Second Amendment litigation in California can drag on for years, with some of Plaintiffs' cases going as far as Supreme Court petitions. It would be unsurprising for the government's fees and costs during that process to total

POINTS & AUTH. IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

hundreds of thousands if not millions of dollars. Because of that, the Plaintiffs in this very case will likely have to drop out of all of their other Second Amendment actions if Section 1021.11 is not enjoined, because they cannot risk financial ruin and potential bankruptcy. Indeed, the chilling has already begun, with one potential plaintiff refusing to participate in litigation out of fear of having to pay the State's expenses should it not prevail on all claims. *See* Declaration of Bill Ortiz at ¶¶ 5-10.

That California's political leadership has contempt for guns and gun owners is no secret. But that contempt is not an acceptable reason to trample on the right to petition the government. Supreme Court precedent would treat it as no different than California passing a law stating that gun owners can't even *speak* about guns. "[O]ur well established First Amendment admonition that 'government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable,' [citation omitted] dovetails with the notion that all citizens, regardless of the content of their ideas, have the right to petition their government." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 196 (2003). And California also may not use Section 1021.11 as a way to insulate its unconstitutional gun laws from review. "We must be vigilant when Congress imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001).

Here, Section 1021.11 is designed to insulate all of California's state and local gun restrictions from judicial challenge by deterring even *meritorious* lawsuits. Under Section 1021.11, if someone challenges a gun law and does not prevail on *any one* of their claims, their government opponent is deemed the "prevailing" party entitled to have their attorney's fees paid. Again, this means that successful challengers could still be forced to pay fees even when they obtain full relief against an unconstitutional restriction, simply because one claim was dismissed. Furthermore, it would require the posting of appellate bonds, or payment

POINTS & AUTH. IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

of the judgment in hope of reimbursement, just to seek appellate review of the trial court's decision.

Even if a plaintiff was boldly willing to take that risk, they'd have to be *extremely* careful what claims they bring. They'd likely have to limit their claims to just general Second Amendment challenges, and not include other possibly applicable claims lest they lose on one and be stuck with the government's fee bill (even if they prevailed on their core Second Amendment claim). Further, Section 1021.11 would effectively guarantee that if claims are pleaded in the alternative, the plaintiff would be forced to pay the government's fees. The Constitution does not permit the State's attempt to constrain non-frivolous legal theories and claims available to civil-rights litigants. *Velazquez*, 531 U.S. at 548.

> ### ii.    Section 1021.11 interferes with Plaintiffs' right to counsel of their choosing, in violation of the Fourteenth Amendment.

Even assuming that Plaintiffs were willing to take on the risk of paying the government's attorney's fees and costs and bring a lawsuit despite the chilling effect of Section 1021.11, they would likely also struggle to find attorneys willing to challenge gun laws.  Because Section 1021.11 imposes a monetary liability tilted heavily in the government's favor for the government's litigation expenses on not just plaintiffs but *on their attorneys* as well, the choice of counsel willing to take on Second Amendment cases in California will be severely curtailed, and existing counsel may decide not to proceed further.

This is unacceptable, as litigants freely choosing their counsel is a very basic right. "While right to counsel in the criminal and civil context are not identical, a civil litigant does have a constitutional right, deriving from due process, to retain hired counsel in a civil case." *Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 257 (1st Cir. 1986). "Given the constitutional dimension of the right to select counsel . . . the presumption must be in favor of the party's choice of counsel and

1   may not be overridden absent compelling reasons." *Lehtonen*, No. 2:04-cv-00625-

2   KJD-GWF, 2007 U.S. Dist. LEXIS 118124, at *19 (D. Nev. Dec. 18, 2007).

3   Even making a <u>second</u> major leap and assuming a plaintiff wanting to

4   challenge gun laws in California *does* find an attorney willing to take the risk of

5   joint and several liability for attorney's fees, that representation would probably be

6   unethical because the attorney's interest in avoiding fee liability is almost

7   immediately in conflict with his client's interest in vigorously pursuing the case and

8   getting the relief desired.  This inherently creates a breach of the attorney's duty of

9   loyalty. The attorney, seeking to mitigate the chance of a fee award to the

10  government he would also be on the hook for, would face immense pressure to be

11  overly conservative in what claims to bring and would be motivated to advise his

12  client to prematurely settle. Had such a barrier to the attorney-client relationship

13  enacted in the criminal context, it would be outright forbidden, because a criminal

14  defendant has a Sixth Amendment right to a conflict-free attorney. *United States v.*

15  *Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998).

16          **iii.**  **In treating Plaintiffs differently based on what types of**

17              **claims they bring, Section 1021.11 violates Equal Protection.**

18  Section 1021.11 insults Equal Protection by singling out plaintiffs bringing

19  Second Amendment claims without a compelling reason for doing so. The State

20  may not treat one constitutional right as disfavored compared to the rest. While gun

21  owners and Second Amendment litigants are not a recognized protected class,

22  federal caselaw has long "recognized successful equal protection claims brought by

23  a 'class of one,' where the plaintiff alleges that she has been intentionally treated

24  differently from others similarly situated and that there is no rational basis for the

25  difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

26  "When an equal protection claim is premised on unique treatment rather than

27  on a classification, the Supreme Court has described it as a 'class of one' claim."

28  *North Pacifica, LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir 2008). "In order

9

to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [government] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id*. That is undeniably the situation here. Section 1021.11 tilts the playing field in favor of the government, an entity that is better able to bear the burden of litigating civil rights matters than the plaintiffs whose rights are being vindicated, without so much as a pretext for doing so besides Governor Newsom's claims that California can do it because Texas did it too.[3] Simply put, there is no rational basis for treating plaintiffs bringing Second Amendment claims differently than those bringing, e.g., free speech claims.

Moreover, if this Court deems that Section 1021.11 affects not just challenging gun laws but also exercising gun rights—and Plaintiffs contend it does—then strict scrutiny must apply. "If a statute treats individuals differently based on a protected class (such as race or national origin) or infringes on a fundamental right, the statute must pass strict scrutiny." *Garcia v. Harris*, No. CV 16-02572-BRO (AFMx), 2016 U.S. Dist. LEXIS 193095, at *12 (C.D. Cal. Aug. 5, 2016), citing *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 440 (1985). *See also Romer v. Evans,* 517 U.S. 620, 632 (1996) (the sovereign's animus is a factor in determining whether it acted rationally). As the State cannot meet even mere rational basis in defending Section 1021.11; it would likewise fail to meet the far more exacting standard of strict scrutiny.

_____

[3] While such an argument has no merit anyway, it is important to note that in ruling on Texas's SB8 abortion law from which SB 1327 was copied, the Supreme Court and the courts below it did not deal with the fee-shifting provision in depth. In fact, the most recent development in *Whole Woman's Health* was the case being remanded to determine whether plaintiffs there had standing to challenge Texas's fee-shifting provision. "Having received the ruling of the Texas Supreme Court that named official defendants may not enforce the provisions of the Texas Heartbeat Act, S.B. 8, this court REMANDS the case with instructions to dismiss all challenges to the private enforcement provisions of the statute and to consider whether plaintiffs have standing to challenge Tex. Civ. Prac. & Rem. Code Ann. Sec. 30.022." *Whole Woman's Health v. Jackson*, 31 F.4th 1004, 1006 (5th Cir. 2022).

10

iv.  **Section 1021.11 violates the Supremacy Clause as 42 U.S.C. § 1988 governs attorney's fee awards in successful § 1983 claims.**

Under the Supremacy Clause, when "state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617-18 (2011) (citation and internal quotation marks omitted). Such conflict occurs "when compliance with both state and federal law is impossible, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" *United States v. Locke*, 529 U.S. 89, 109 (2000).

Congress has decided that the purview of deciding attorney fee awards in federal civil rights cases are the federal courts that decide those matters. *See* 42 U.S.C. § 1988 (2022). As the Supreme Court has held, this provision grants a right to a prevailing plaintiff to "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). A prevailing defendant (i.e., a government defendant) in a §1983 case may recover attorney's fees from the plaintiff "only if the district court finds that the plaintiff's action was frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam). In all other circumstances, a non-prevailing plaintiff has a right to bring their civil-rights claims without fear of incurring the other side's fees and costs.

Section 1988 is a clear mandate from Congress that is supreme over any state laws purporting to alter the outcome of a fee award granted or denied under § 1988, which exists to encourage civil rights claims. "We agree with the Fifth Circuit that a state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award." *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982); *see also Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233 (4th Cir. 2001). Even California state courts have long since addressed this question. "It follows from [the legislative history of § 1988] and from the Supremacy Clause that the [attorneys] fee provision is part of the § 1983 remedy

whether the action is brought in federal or state court." *Green v. Obledo*, 161 Cal. App. 3d 678, 682-83 (Ct. App. 1984); see also *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 764 (Ct. App. 2002).

Despite all this, Section 1021.11 declares that government defendants, so long as they defeat at least one cause of action brought by Plaintiffs, can pursue a civil action in state court for its attorney's fees. The State can do so here even if this Court denies it fees in this matter, and even if this Court grants fees to *Plaintiffs* under § 1988. In this way, Section 1021.11 stands as a substantial obstacle to Congress's goals in adopting § 1988. It creates massive disincentives for the vindication of Second Amendment rights and allows even defendants found to have violated federal law to recover fees from the citizens whose rights it has violated, contrary to Congress's objectives. *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 418 (1978).

Section 1021.11 would also vastly expand the circumstances under which defendants in civil rights cases may recover fees and costs, and it would do so "for a reason manifestly inconsistent with the purposes" of § 1988. *Felder v. Casey*, 487 U.S. 131, 141-42 (1988) (holding that a state notice-of-claim requirement was preempted as applied to § 1983 claims because it aimed "to minimize governmental liability," thus undermining § 1983's "uniquely federal remedy"); see also *Haywood v. Drown*, 556 U.S. 729, 733-34 (2009) (holding that a state correctional law was preempted where the state "strip[ped] its courts of jurisdiction" over § 1983 damages claims and instead forced plaintiffs to sue the state directly in a court of claims without access to "the same relief, or the same procedural protections," as would otherwise apply in a § 1983 case).

Section 1021.11 is therefore not only an affront to the Second Amendment, but it also insults the *raison d'être* for the Fourteenth Amendment itself. Aside from its function as a mechanism for incorporating the Bill of Rights against state usurpations following the Civil War, the ratification debates for the Fourteenth

12

Amendment, rightly referred to as the second founding, specifically intended to create enforceable remedies against recalcitrant, rebellious, and as time would reveal, recidivist state actors hostile to the concept of equal rights for all.  The original public meaning of that enforcement mechanism was to give those oppressed by state laws and actions access to the courts and to competent legal counsel willing to risk their time and effort to enforce the Constitution and hold constitutional tort-feasors accountable, particularly those victims who were a disfavored and disenfranchised minority. *See* 42 U.S.C §§ 1981-1988 (2022) (referred to as "The Enforcement Act of 1871" or the "Ku Klux Klan Act"). California, in its disdain for gun owners, has thus chosen to try and obstruct Congress's goals in adopting one of the most critical and historic federal statutes that exists.

In sum, Section 1021.11 empowers the government to essentially nullify § 1988 as to Second Amendment cases and thereby undermines the goals of §1983 by discouraging civil rights claims related to the Second Amendment to be brought in federal courts in California. There is no serious doubt here; Section 1021.11 plainly violates the Supremacy Clause and is therefore void.

> **v.    Section 1021.11 is void because it is vague as to what constitutes a law that "regulates or restricts firearms" and invites arbitrary enforcement.**

Section 1021.11 applies to a "statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms". For some matters, the application is clear. For example, in Plaintiff CRPA's lawsuit challenging California's assault weapon ban,[4] there is no question Section 1021.11 would apply, as so-called "assault weapons" are firearms. But what about *Duncan v. Bonta*, Plaintiff's case concerning California's magazine capacity limits? Magazines are "arms" under the

---

[4] *Rupp v. Bonta,* No. 19-56004, 2022 U.S. App. LEXIS 18769 (9th Cir. June 28, 2022).

Second Amendment, *Ass'n of N.J. Rifle & Pistol Clubs v. AG N.J.*, 910 F.3d 106, 116 (3d Cir. 2018), but they are not technically the *firearm* itself. And Section 1021.11 refers to laws that regulate or restrict *firearms*, not just "arms" generally. Similarly, in *Rhode v. Bonta,* Plaintiff CRPA and other Plaintiffs in this matter are challenging California's restrictions on ammunition sales and transfers. Ammunition is not a firearm, but it is obviously related to firearms as well the exercise of the core Second Amendment right.  Yet, it is not clear if Section 1021.11 applies to *Rhode* and other cases seek to adjudicate Second Amendment rights but involve laws that do not directly speak about "firearms" per se.

And what of laws that deeply affect firearm rights, but aren't directly regulating or restricting firearm rights? Plaintiffs in this very matter, for instance, have no idea whether Section 1021.11's fee shifting provision applies to this very challenge to Section 1021.11. For all the reasons already discussed, Section 1021.11 obviously harms—intentionally so—people seeking to vindicate their Second Amendment rights in California through the court system. So in that sense, Section 1021.11 is a restriction aimed at curtailing the use of firearms.  But at the same time, Section 1021.11 isn't *directly* regulating or restricting a particular firearm or arm.  Because of this ambiguity, if Plaintiffs were to lose this lawsuit, the State could seek its attorney's fees in a state court action without that action being deemed frivolous.

As should be apparent, Section 1021.11 violates Due Process due to this vagueness, as it robs Plaintiffs of the required notice and leads to arbitrary enforcement. The void-for-vagueness doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). "[T]he doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Id*.

That Plaintiffs are obviously aware of Section 1021.11 does not mean they

14

must concede the issue of notice. "We ask whether the law gives 'a person of ordinary intelligence fair notice of what is prohibited,' [citation omitted] not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held accountable for the behavior in question." *Faisal Nabin Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019) (citing *United States v. Williams*, 553 U.S. 285, 128 S. Ct. 1830 (2008)). Plaintiffs' counsel would like to think they are of at least ordinary intelligence, and yet even as lawyers, they cannot say with certainty what the bounds of Section 1021.11 are, and whether certain edge cases including this very case would fall within its grasp.

Even if notice were not an issue, Section 1021.11 hands the State unbridled enforcement discretion. It can choose to file a new state civil action to try and recover its fees in any case filed against it that is even tangentially related to firearms, or it can choose to pursue such cases only sparingly, content with the chilling effect of Section 1021.11 stopping most Second Amendment lawsuits. And even if the State does consistently file such fee-recovery suits, Section 1021.11 does not give courts any guidance on how it should be applied in cases not directly about firearms themselves.

The prevention of arbitrary enforcement is "the most important aspect of the vagueness doctrine." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). Section 1021.11 violates this critical aspect by essentially including arbitrary enforcement as a built-in feature. For three years after a gun-related lawsuit ends, the State can choose to deliver or not deliver a devastating financial blow. No doubt some litigants (who have exposure from past Second Amendment litigation) would refrain from filing new lawsuits to avoid "poking the bear" and having the State retaliate by seeking its fees for prior litigation.

This Sword of Damocles must not be allowed to hang over Plaintiffs for a moment longer. Nor should it be allowed to hang over anyone else desiring to bring firearm-related claims in California. Section 1021.11 must be enjoined.

15

### vi.     Section 1021.11 is a Bill of Attainder.

Both in making current litigants liable for attorney's fees and costs of opponents for preexisting litigation as a punishment for having brought or maintained those suits, and in making the attorneys of current litigants liable for attorney's fees and costs of opponents for preexisting litigation as a punishment for having represented those plaintiffs who brought or maintained those suits, Section 1021.11 operates as a Bill of Attainder.

"Three key features brand a statute a bill of attainder: that the statute (1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial." *Seariver Mar. Fin. Holdings v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002). But a law need not individually name specific persons to be a Bill of Attainder. "A statute need not identify individuals by name to incur suspicion. A law that defines a class of persons on the basis of "irreversible acts committed by them" is adequately specific." *Atonio v. Wards Cove Packing Co.*, 10 F.3d 1485, 1495 (9th Cir. 1993). Here, the "irreversible acts" committed by Plaintiffs are that they have filed firearm-related litigation in the last few years and did not prevail, or likely will not prevail, on *all* of their claims. They cannot undo that. "If the defining act is irrevocable, the individual or class may not escape the effect of the legislation by correcting the past conduct, thereby exiting the targeted class." *Seariver Mar. Fin. Holdings*, 309 F.3d at 671. The first element is therefore satisfied.

Three inquiries determine whether a statute inflicts punishment on the specified individual or group: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.' " *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 852 (1984).

The historical meaning of legislative punishment does encompass the

"punitive confiscation of property by the sovereign." *Nixon v. Adm'r of Gen. Servs*., 433 U.S. 425, 474 (1977). Here, Plaintiffs could easily be bankrupted if they were found to be liable for the State's attorney's fees and costs in their prior or current firearm-related litigation. The State often employs several attorneys, and these cases can last for several years, meaning the final bill could easily reach the hundreds of thousands or millions of dollars in each individual case.

As to the second factor, Section 1021.11 cannot be said to further nonpunitive legislative purposes. Indeed, the California Assembly Judiciary Committee Analysis states that "[t]his language appears to be unprecedented in California law and likely would not be endorsed by this Committee but for the fact that it is included in this bill and modeled on Texas law." S. BILL 1327, A. JUD. COMM. ANALYSIS (Cal. June 10, 2022). Similarly, the Senate Floor Analysis explained that "While the goal of repurposing the Texas law may be sound, these problematic provisions may not justify those ends. They insulate government action from meaningful challenge by creating a strong, punitive deterrent for any that try and in the end, may violate due process guarantees." S. Bill 1327, S. Floor Analysis (Cal. June 28, 2022).

That Governor Newsom wants to garner political plaudits from abortion supporters or gun control advocates is not a legitimate nonpunitive legislative purpose. The legislative record of Section 1021.11 is replete with examples of how the law was drafted with an intent to punish gun owners in California for Texas's action on abortion. It also includes a cavalier expectation that the law would precipitate constitutional challenges. "Whether this bill runs afoul the Second Amendment, or any other constitutional requirement, is an issue that is sure to be litigated should the measure reach the Governor's desk." S. BILL 1327, S. PUB. SAF. COMM. ANALYSIS (Cal. April 26, 2022). Moreover, while the State attempted to (but ultimately did not) draw a distinction on the purported basis that SB 1327's private right of action was limited to so-called "assault weapons" and

"ghost guns,"[5] As drafted, Section 1021.11's reach includes *all* challenges to state or local laws on firearms, not just those affecting already illegal "assault weapons" or "ghost guns."[6] And the highly unusual way this law was passed, with the legislature acknowledging its likely unconstitutionality, also speaks to a legislative intent to punish because the departure from established legislative procedures may suggest an improper purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977). There can really be no doubt: Section 1021.11 inflicts punishment.

The final element to determine whether Section 1021.11 is a Bill of Attainder is whether it inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial. *Seariver Mar. Fin. Holdings*, 309 F.3d at 668. Here, while Section 1021.11 technically does require the State to go to a court to recover its expenses, that court has *zero* discretion to deny fees to the State, because so long as the State defeated at least one claim in a case challenging a firearm law, it is mandatorily entitled to its fees and costs under Section 1021.11. Like a hearing on the amount of a criminal fine, any "trial" under Section 1021.11 is a mere formality over the amount of attorney's fees plaintiffs and their counsel are obligated to pay. Section 1021.11 is a Bill of Attainder and for that reason too, it must be stopped in its tracks immediately.

## C.   Plaintiffs Will Suffer Irreparable Harm if Denied Relief

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d

---

[5] According to SB 1327's author: "By enacting its abortion ban, Texas is knowingly infringing upon a well established constitutional right. However, while the Supreme Court recognizes an individual constitutional right to bear arms, it certainly does not recognize a constitutional right to own, manufacture, or sell an illegal assault weapon or ghost gun." S. Bill 1327, A. Floor Analysis (Cal. June 24, 2022).

[6] Not that Section 1021.11 would be any less constitutionally infirm if its applicability had been limited to just lawsuits over "assault weapons" and "ghost guns." Legal challenges to such laws are equally protected by the constitutional doctrines identified hereinabove.

18

990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment's irreparable-if-only-for-a-minute rule to cases involving other rights and, in doing so, has held a deprivation of these rights irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Second Amendment should be treated no differently. *See McDonald*, 561 U.S. at 780 (2010) (refusing to treat the Second Amendment as a second-class right subject to different rules); *see also Ezell v. Chicago*, 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law"); and *Duncan v. Becerra (Bonta)*, 265 F. Supp. 3d 1106 (S.D. Cal. 2017) ("Loss of . . . the enjoyment of Second Amendment rights constitutes irreparable injury.") Section 1021.11 singling out firearm-related litigation is thus entirely inappropriate. And of course, the constitutional violations discussed above are also grounds to establish irreparable harm, including the right to petition the courts for redress of grievances, the Due Process right to counsel, Equal Protection guarantees, protections against Bills of Attainder, protections against vague laws, and violations of the Supremacy Clause. Should Section 1021.11 be allowed to go into effect, Plaintiffs will suffer all of these constitutional harms, as well as the potential financial harm of being found liable for the State's attorney's fees and costs in the other litigation they are involved in.

### D.     The Balancing of the Equities Sharply Favors Plaintiffs

This factor considers the "balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011). In contrast to Plaintiffs' injury of being denied several constitutional rights and being burdened with paying the state's legal expenses in any gun-related lawsuits, Defendants

suffer no injury because there is no plausible legitimate interest in Section 1021.11's provisions. Indeed, Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice. . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir 2013); *and see Valle del Sol Inc. v. Whitting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law.") (citations omitted).

### E.  Preliminary Injunctive Relief is In the Public Interest

When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (emphasis added). Section 1021.11 violates multiple constitutional rights and must be stopped. The public interest plainly favors Plaintiffs.

### 3.  CONCLUSION

For the aforementioned reasons, Plaintiffs implore this Court to grant their motion to preliminarily enjoin Code of Civil Procedure section 1021.11 before it can do more damage than it already has.

Respectfully Submitted,

Dated:  October 17, 2022          **MICHEL & ASSOCIATES, P.C.**

/s/ C.D. Michel
C.D. Michel
Counsel for Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California, Second Amendment Law Center, and California Rifle and Pistol Association, Incorporated
e-mail: cmichel@michellawyers.com

20

1

Dated:  October 17, 2022                    **LAW OFFICES OF DON KILMER**

2
                                             *s/ Don Kilmer*
3                                            Don Kilmer
                                             Counsel for Plaintiff Citizens Committee for
4                                            the Right to Keep and Bear Arms

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

POINTS & AUTH. IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG