Rob Bonta
Attorney General of California
R. Matthew Wise
Supervising Deputy Attorney General
Ryan R. Davis
Deputy Attorney General
State Bar No. 266330
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone: (916) 210-6050
  Fax: (916) 324-8835
  E-mail: Ryan.Davis@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his*
*official capacity*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **SOUTH BAY ROD & GUN CLUB, INC., et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROBERT BONTA, et al.,**<br><br>Defendants. | Case No. 3:22-cv-1461-BEN-JLB<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:          November 21, 2022<br>Judge:        Hon. Roger T. Benitez<br>Courtroom:  5A<br>Action Filed:  September 28, 2022<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................1

Background..................................................................................................3

    A.    Texas Senate Bill 8 ...........................................................3

        1.    Enactment of SB 8 .............................................3

        2.    Initial Legal Challenge to SB 8 .....................6

        3.    The Pending Challenge to SB 8 .....................9

    B.    California Senate Bill 1327...................................11

    C.    This Lawsuit ...................................................15

    D.    Defendant's Efforts to Resolve This Litigation .......16

Argument.....................................................................................................16

Conclusion...................................................................................................20

# TABLE OF AUTHORITIES

**Page**

CASES

*Bennett v. Spear*
    520 U.S. 154 (1997)........................................................17

*Boardman v. Pac. Seafood Grp.*
    822 F.3d 1011 (9th Cir. 2016)........................................19

*Bock v. Washington*
    33 F.4th 1139 (9th Cir. 2022)........................................19

*Burgos v. Long*
    No. 2:11–cv–01906–JAM–JFM, 2013 WL 5818093 (E.D. Cal. Oct.
    29, 2013)..........................................................................19

*In re BofI Holding, Inc. S'holder Litig.*
    848 F. App'x 234 (9th Cir. 2021) (unpublished) ............18

*Jackson Woman's Health Org. v. Dobbs*
    945 F.3d 265 (5th Cir. 2019)............................................5

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)........................................................18

*Thomas v. Union Carbide Agric. Prods. Co.*
    473 U.S. 568 (1985)...................................................3, 18

*Trustgard Ins. Co. v. Collins*
    942 F.3d 195 (4th Cir. 2019)....................................18, 19

*United States v. Texas*
    566 F. Supp. 3d 605 (W.D. Tex. 2021) ...........................6

*Van Stean v. Tex. Right to Life*
    No. D-1-GN-21-004179, slip op. (98th Dist. Ct., Travis County,
    Tex., Dec. 9, 2021) .........................................................6

*Warth v. Seldin*
    422 U.S. 490 (1975)........................................................18

1
2

# TABLE OF AUTHORITIES
### (continued)

Page

3
4

*Whitmore v. Arkansas*
    495 U.S. 149 (1990)............................................................................17

5
6

*Whole Woman's Health v. Jackson*
    142 S. Ct. 522 (2021)...............................................................3, 6, 8, 9

7
8

*Whole Woman's Health v. Jackson*
    556 F. Supp. 3d 595 (W.D. Tex. 2021) ............................................6, 7

9
10

*Whole Woman's Health v. Jackson*
    642 S.W.3d 569 (Tex. 2022) ..............................................................9

11

*Winter v. National Resources Defense Counsel,*
    555 U.S. 7 (2008)...............................................................................19

12
13

*Ex parte Young*
    209 U.S. 123 (1908)............................................................................5

14

**STATUTES**

15
16

United States Code, Title 42
    § 1988 ....................................................................................6, 9, 11

17

    §1983.............................................................................................. 5, 11

18
19

California Government Code
    § 9600(a)...........................................................................................14

20

California Senate Bill 1327 .........................................................*passim*

21
22

Texas Health and Safety Code
    §§ 171.201-.212..................................................................................3
    § 171.210(a)(4) ...................................................................................3

23
24

Texas Senate Bill 8 .....................................................................*passim*

25
26
27
28

# TABLE OF AUTHORITIES
### (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment ..................................................................9, 11, 15
    Second Amendment ................................................................14, 15
    Fourteenth Amendment ...............................................................15
    Article III ..............................................................................2, 3, 17

**OTHER AUTHORITIES**

Ben Christopher, *What Would Rob Bonta do Next as California
    Attorney General*, Cal Matters (Oct. 13, 2022), available at
    https://tinyurl.com/mr3bxmn8....................................................14

Cal. Office of the Governor, Governor Newsom Statement on Supreme
    Court Decision (Dec. 11, 2021), available at
    https://tinyurl.com/z2bpc6rn .....................................................11

Gavin Newsom, Opinion: *The Supreme Court Opened the Door to
    Legal Vigilantism in Texas. California Will Use the Same Tool to
    Save Lives*, The Wash. Post (Dec. 20, 2021), available at
    https://tinyurl.com/3ky3pmkz ....................................................11

Jacob Gershman, *Behind Texas Abortion Law, an Attorney's Unusual
    Enforcement Idea*, The Wall St. J. (Sept. 4, 2021), available at
    https://tinyurl.com/2p85k7fc .......................................................4

Jenna Greene, *Column: Crafty Lawyering on Texas Abortion Bill
    Withstood SCOTUS Challenge*, Reuters (Sept. 5, 2021), available at
    https://tinyurl.com/mvv8t338 ......................................................5

Jonathan Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933,
    1001 (2018) ................................................................................5

Stephen Paulsen, *Legal Loophole That Helped End Abortion Rights*,
    Courthouse News Service (July 30, 2022), available at
    https://tinyurl.com/2p8d9hya ......................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page**

Press Release, Cal. Dept. of Justice, Attorney General Bonta: Texas
    Cannot Avoid Judicial Review of its Unconstitutional Abortion Ban
    (Oct. 27, 2021), available at https://tinyurl.com/wpdjhzwk ...............................7

Robert Hertzberg, Statement on Senate Bill 1327, Firearms: A Private
    Right of Action (Feb. 18, 2022), available at
    https://tinyurl.com/57xu5px5 ..........................................................................12

Tweet of Senator Bob Hertzberg (Feb. 18, 2022), available at
    https://tinyurl.com/3eehjb5c ............................................................................12

Defendant's Opposition to Motion for Preliminary Injunction
(3:22-cv-1461-BEN-JLB)

**INTRODUCTION**

The challenged California statute (SB 1327) was a response to, and was modeled upon, a recently enacted Texas statute (SB 8) that has itself been the subject of extensive litigation.  SB 8 has two principal components.  The first created a private "bounty hunter" provision that authorized onerous private suits against individuals who engaged in certain activities related to abortions; it was intended to defeat federal court jurisdiction by making the provision unenforceable by state officials.  The second, relevant here, was a one-sided fee-shifting mechanism that was available to defendants (but not plaintiffs) in suits challenging state abortion restrictions (but not other laws), whenever even a single claim or cause of action was dismissed, and regardless of the reason for the dismissal.  Because of those and other extraordinary features, that fee-shifting mechanism has been challenged by plaintiffs in Texas and roundly criticized for its chilling effects, including in opinions filed by Justices of the United States Supreme Court.  To date, however, no court has adjudicated the legality of the SB 8 fee-shifting mechanism.

SB 1327 was premised on the view that if Texas were ultimately allowed to employ the mechanisms contained in SB 8, California should have the right to employ the same mechanisms to advance its own policy interests.  Like SB 8, SB 1327 has two principal components.  The first—which is not at issue in this case—creates a private right of action to enforce certain restrictions on assault weapons and ghost guns.  The second—which is the focus of plaintiffs' legal claims here—copies the SB 8 fee-shifting mechanism and applies to suits challenging laws that regulate or restrict firearms.  Like the plaintiffs in the pending challenge to SB 8, the plaintiffs here contend that this fee-shifting mechanism violates the Constitution, including by infringing on their constitutionally protected right to access the courts.

The State of California has joined amicus briefs in lawsuits challenging SB 8, and those briefs have recognized that SB 8's fee-shifting scheme was an unprecedented attempt to thwart judicial review.  Attorney General Bonta has publicly criticized SB 8 as an attempt by Texas to shield its laws from judicial review.  To date, the Attorney General has committed not to seek fees under the fee-shifting mechanism in section 2 of SB 1327 in every particular action involving the California Department of Justice in which that issue has been raised.  And the Attorney General hereby commits—consistent with the original legislative objective of SB 1327—not to seek fees or costs from any plaintiff or plaintiff's attorney under section 2 of SB 1327 in any case, *unless and until* a court ultimately holds that the fee-shifting provision in section 4 of SB 8 is constitutional and enforceable and that decision is affirmed on appeal or no appeal is taken.  The Attorney General's commitment extends to fees or costs incurred at any time in connection with any suit filed before the date on which a decision ultimately upholding the constitutionality of section 4 of SB 8 is affirmed on appeal (or the time to file an appeal expires).  And it applies to all prospective plaintiffs and their attorneys, regardless of whether they are a plaintiff or attorney in the present case. The Attorney General is prepared to enter a stipulation to this effect with plaintiffs should plaintiffs agree to do so.

In light of defendant's commitment, this Court lacks Article III jurisdiction to consider plaintiffs' claims or to grant the relief they request.  Plaintiffs cannot identify any imminent injury that is fairly traceable to defendants, and their claims are unripe at this juncture.  Plaintiffs are free to bring additional lawsuits against defendant challenging California firearms regulations without exposing themselves or their attorneys to liability for costs or fees under section 2 of SB 1327.  The possibility that defendant might one day seek costs or fees under section 2 of SB 1327—only in the event that a court ultimately holds that the fee-shifting provision in section 4 of SB 8 is constitutional and enforceable, and then only with respect to

2

suits filed after the date on which such a ruling is affirmed on appeal or the time for filing an appeal has expired—does not provide a basis for federal court jurisdiction at this time. As the Supreme Court has recognized, a claim is premature under Article III if, as here, it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–581 (1985) (internal quotation marks and citation omitted).

## BACKGROUND

### A.   Texas Senate Bill 8

#### 1.   Enactment of SB 8

Senate Bill 8 was passed by the Texas Legislature and signed by Governor Abbott in May 2021. Act of May 13, 2021, 87th Leg., R.S., ch. 62, 2021 Tex. Sess. Law Serv. 125. SB 8's first main provision, which is primarily contained in Section 3, creates a private right of action that authorizes any person to sue, for at least $10,000 in damages, anyone who performs, induces, assists, or intends to assist an abortion when the fetus has a detectable heartbeat. Tex. Health & Safety Code §§ 171.201-.212. Section 3 may be enforced only by private civil actions, not by the "state, a political subdivision, a district or county attorney, or an executive or administrative officer or employee of this state or a political subdivision[.]" *Id.* § 171.207(a); *see also id.* § 171.208(a). And it includes several other provisions that "are considerable departures from the norm in Texas courts and in most courts across the Nation." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 546 (2021) (Sotomayor, J., concurring in judgment in part and dissenting in part).[1]

---

[1] *See, e.g.*, Tex. Health & Safety Code § 171.210(a)(4) (allowing plaintiffs to sue in any county in which they live, even if that county has no relationship to the defendants or the abortion procedure at issue); *id.* § 171.210(b) (allowing plaintiffs to veto any venue transfer); *id.* § 171.208(e)(5) (prohibiting defendants from invoking nonmutual issue or claim preclusion, making the defendant susceptible to repeat lawsuits); *id.* § 171.208(b)(3) (guaranteeing attorney's fees and costs to

The second principal provision (which parallels the provision of SB 1327 that is at issue in this suit) is contained in section 4 of SB 8.  That provision adds section 30.022 to the Civil Practices and Remedies Code and provides that

> Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, any governmental entity or public official in this state, or any person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts abortion or that limits taxpayer funding for individuals or entities that perform or promote abortions, in any state or federal court, or that represents any litigant seeking such relief in any state or federal court, is jointly and severally liable to pay the costs and attorney's fees of the prevailing party.

For the purposes of section 30.022, a party is considered a "prevailing party" if a state or federal court "dismisses any claim or cause of action brought against the party that seeks the declaratory or injunctive relief described in Subsection (a), regardless of the reason for the dismissal" or "enters judgment in the party's favor on any such claim or cause of action."  *Id.* § 30.022(b).  Fees under section 30.022 are authorized in a separate civil action to recover costs and attorney's fees, up to three years after the judgment becomes final.  *Id.* § 30.022(c).  And section 30.022(d) also provides that it is not a defense to an action brought under that subdivision that a prevailing party did not seek fees in the underlying action; that the court in the underlying action declined to recognize or enforce the requirements of this section; or that the court in the underlying action held that any provisions of this section are invalid, unconstitutional, or preempted by federal law.  *Id.*

The Texas state senator who sponsored SB 8 acknowledged that the law was crafted to deter the exercise of constitutionally protected rights, while also evading federal judicial review.[2]  At the time SB 8 was enacted, binding U.S. Supreme

---

prevailing plaintiffs); *id.* § 171.208(i) (categorically denying fees and costs to any defendants).

[2] Jacob Gershman, *Behind Texas Abortion Law, an Attorney's Unusual Enforcement Idea*, The Wall St. J. (Sept. 4, 2021), available at

Court precedent held that a State could not prohibit any person from choosing to terminate a pregnancy before viability. *See, e.g., Jackson Woman's Health Org. v. Dobbs*, 945 F.3d 265 (5th Cir. 2019), *rev'd* 142 S.Ct. 2228 (2022). To avoid pre-enforcement suits against state officers under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908), Texas empowered private parties—but not state officials—to enforce the substantive prohibitions laid out in SB 8. The sponsor of the bill conceded that the law was "a way to pass a heartbeat bill that was going to be upheld."[3] And the architect of the bill, Jonathan Mitchell, admitted that the "entire point of SB 8" was "to prevent the judiciary from ruling on the constitutionality of the statute."[4] Indeed, Mitchell wrote in a 2018 law review article that laws like SB 8 can "[c]ounteract [t]he [e]ffects [o]f [a] [j]udicial [i]njunction" because "they enable private litigants to enforce a statute even after a federal district court has enjoined the executive from enforcing it." *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1001 (2018). With respect to fee-shifting, Mitchell's 2018 article observed that "the need to foot one's own legal bills may induce statutory compliance even for those who expect to prevail on their constitutional objections." *Id.* at 1002. In Mitchell's view, "[t]hese sorts of provisions should be standard fare in legislation that is expected to encounter a court challenge—assuming . . . that the legislature wants to induce compliance with its statute[.]" *Id.* at 1003.

---

https://tinyurl.com/2p85k7fc; Jenna Greene, *Column: Crafty Lawyering on Texas Abortion Bill Withstood SCOTUS Challenge*, Reuters (Sept. 5, 2021), available at https://tinyurl.com/mvv8t338 (quoting Sen. Hughes as saying SB 8 is a "very elegant use of the judicial system").

[3] Gershman, *supra* n.2 (quoting Sen. Hughes).

[4] Stephen Paulsen, *The Legal Loophole That Helped End Abortion Rights*, Courthouse News Service (July 30, 2022), available at https://tinyurl.com/2p8d9hya.

5

## 2.   Initial Legal Challenge to SB 8

Abortion providers and advocates sued Texas state officials in federal and state courts to enjoin enforcement of SB 8 before it could take effect. *Whole Woman's Health*, 142 S. Ct. at 530.[5]  Both the state and federal lawsuits focused primarily on the private-right-of-action provisions in section 3 of SB 8.[6]  But the plaintiffs also emphasized the chilling effect of the fee-shifting provision contained in section 4 of SB 8.  For example, the plaintiffs in *Whole Woman's Health* explained that the fee-shifting mechanism was designed to "deter *any* challenges, including meritorious challenges, to state and local abortion restrictions in Texas, not just challenges to SB 8."  Compl. ¶ 11, *Whole Woman's Health v. Jackson*, No. 1:21-cv-616, Dkt. 1, 2021 WL 2945846 (W.D. Tex. July 13, 2021).  They argued that the fee-shifting provision "chill[ed] the exercise of rights to free speech and to petition" and that it was "directly at odds" with the federal statute governing fees in civil rights actions, 42 U.S.C. § 1988.  *Id.* ¶¶ 158, 162.[7]

California joined amicus briefs in the lower courts and at the Supreme Court criticizing SB 8.  In those briefs, California denounced Texas's attempt to insulate its laws from pre-enforcement review.  In a multistate amicus brief filed in the district court in a lawsuit instituted by the federal government, California explained that the fee-shifting provision of SB 8 was an "attempt[] to thwart judicial review,"

---

[5] The United States separately sued to enjoin enforcement of SB 8's private-right-of-action provisions on Supremacy Clause and preemption grounds.  *United States v. Texas*, 566 F. Supp. 3d 605 (W.D. Tex. 2021).

[6] *See, e.g.*, *Van Stean v. Tex. Right to Life*, No. D-1-GN-21-004179, slip op. at 46–48 (98th Dist. Ct., Travis County, Tex., Dec. 9, 2021) (enjoining enforcement of certain private-right-of-action provisions under state law).

[7] Several plaintiffs submitted declarations "averring that the possibility of fee awards in SB 8 cases will have a chilling effect on their ability to engage in constitutionally-protected activity[.]"  *Whole Woman's Health v. Jackson*, 556 F. Supp. 3d 595, 615 (W.D. Tex. 2021), *rev'd* 142 S. Ct. 522 (2021) (collecting quotes from declarations).

and one of several "unusual" and "extraordinary provisions" designed to insulate Texas's abortion laws from challenge.  Amici Curiae Br. of Mass. et al. in Supp. of Pls.' TRO & Prelim. Inj. 7–8, *United States v. Texas*, No. 1:21-cv-796, Dkt. 71, at 7–8 (W.D. Tex. Sept. 15, 2021).  In another amicus brief, California criticized Texas's "unprecedented attack on the rule of law" and SB 8's "attempts to thwart judicial review and insulate the State from accountability[.]"  Br. of Mass. et al. as Amici Curie in Supp. of Pet'rs at 5, *Whole Woman's Health v. Jackson*, Nos. 21-463, 21-588, 2021 WL 5016707 (Oct. 27, 2021).  In statements issued in connection with those amicus briefs, California Attorney General Rob Bonta condemned SB 8 as "blatantly unconstitutional" and specifically called out Texas's attempt to "shield[]" its laws "from federal judicial review."[8]

Texas responded to the lawsuits by raising threshold jurisdictional arguments. For example, in the federal lawsuit filed by the abortion providers against certain state officers (including state court defendants, the Texas Attorney General, and state licensing officials), Texas moved to dismiss the suit under the doctrine of sovereign immunity.  State Agency Defs.' Mot. to Dismiss at 2, *Whole Woman's Health v. Jackson*, No. 21-616, Dkt. 48, 2021 WL 5141228 (W.D. Tex. August 8, 2021).  Texas also argued that the plaintiffs lacked standing to challenge any provision of SB 8—including the fee-shifting provision—because they had not established any credible threat that the State might invoke its enforcement power in the future.  *Id.*  The district court denied the motion to dismiss, concluding that the providers had "sufficiently alleged a demonstrated willingness on the part of the [state defendants] to enforce abortion restrictions through administrative actions" and finding that the plaintiffs faced a "credible threat of enforcement" with respect to the fee-shifting provision.  *Whole Woman's Health v. Jackson*, 556 F. Supp. 3d

---

[8] Press Release, Cal. Dept. of Justice, Attorney General Bonta: Texas Cannot Avoid Judicial Review of its Unconstitutional Abortion Ban (Oct. 27, 2021), available at https://tinyurl.com/wpdjhzwk.

595, 612–13, 615 (W.D. Tex. 2021), *rev'd* 142 S. Ct. 522 (2021).

The Supreme Court granted certiorari before judgment and then affirmed in part and reversed in part. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021). The Supreme Court reached only the threshold question of which parties were proper defendants to the challenge to SB 8's private-right-of-action provision; the Court did not address the constitutionality of any section of SB 8, including the fee-shifting provisions. *Id.* at 531 ("[T]he ultimate merits question—whether S.B. 8 is consistent with the Federal Constitution—is not before the Court.").[9] The Court held that the state-court defendants were insulated from suit because of sovereign immunity, *id.* at 532, and that Texas's Attorney General was not a proper defendant because nothing would allow federal courts to "parlay" his "enforcement authority into an injunction against any and all unnamed private parties who might seek to bring their own S.B. 8 suits[,]" *id.* But the Court also concluded that the plaintiffs had plausibly alleged that the licensing-official defendants were duty-bound to bring disciplinary actions, and therefore held that the suit against those defendants could proceed. *Id.* at 537.

Chief Justice Roberts and Justice Sotomayor authored separate opinions concurring in the judgment in part and dissenting in part, both of which were joined by Justice Breyer and Justice Kagan. Chief Justice Roberts observed that SB 8 "employed an array of stratagems designed to shield its unconstitutional law from judicial review." *Whole Woman's Health*, 142 S. Ct. at 543 (Roberts, C.J.,

---

[9] Texas asserted that any challenge to the fee-shifting provision in section 4 of SB 8 was "outside the question presented." Reply Br. for Resp'ts Jackson, Carlton, Thomas Young, Benz, Paxton & the State of Texas 7, *Whole Woman's Health v. Jackson*, Nos. 21-463, 21-588, 2021 WL 5044725 (Oct. 29, 2021). The question presented in the petition was "whether a State can insulate from federal-court review a law that prohibits the exercise of a constitutional right by delegating to the general public the authority to enforce that prohibition through civil action." Pet. for Writ of Cert. Before J. at i, *Whole Woman's Health v. Jackson*, No. 21-463, 2021 WL 4463502 (Sept. 23, 2021).

concurring in the judgment in part and dissenting in part).  In his view, SB 8 "effectively chill[ed] the provision of abortions in Texas."  *Id.* at 544. He would have authorized the suit to proceed against additional defendants, including the state court clerk and the Texas Attorney General.  *Id.*  Justice Sotomayor recognized that SB 8 amounted to a "brazen challenge to our federal structure[,]" with "the threat of [SB 8's] punitive measures creat[ing] a chilling effect that advances the State's unconstitutional goals."  *Id.* at 547 (Sotomayor, J., concurring in the judgment in part and dissenting in part).  Justice Sotomayor specifically described SB 8's fee-shifting provision as "procedural meddling[,]" explaining that it was designed—like the other provisions of SB 8—to "deter efforts to seek pre-enforcement review[.]"  *Id.* at 546 n.2.[10]

### 3.    The Pending Challenge to SB 8

In August of this year, abortion providers and non-profit advocates in Texas filed a separate challenge to several of Texas's abortion laws, on the basis that those laws violate the constitutional right to travel, the First Amendment, and the Due Process clause.  Compl., *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 1 (W.D. Tex. Aug. 23, 2022).  Relevant here, the plaintiffs challenged SB 8's fee-shifting scheme, contending that the law violated the First Amendment right to petition the government for redress of grievances and was preempted by 42 U.S.C. § 1988.  *Id.* ¶¶ 192–204.  The plaintiffs explained that the fee-shifting scheme was

---

[10] The Fifth Circuit upon remand certified to the Texas Supreme Court the question whether Texas law authorizes certain state licensing officials to directly or indirectly enforce SB 8's requirements.  The state supreme court held that the licensing officials did not have such authority.  *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 572 (Tex. 2022).  In the district court, the plaintiffs thereafter dismissed all counts in the complaint against all defendants.  The court retained jurisdiction "over any subsequent claims for fees and/or costs incurred in this litigation."  Order, *Whole Woman's Health v. Jackson*, No. 21-616, Dkt. 107 (W.D. Tex. June 24, 2022).

Defendant's Opposition to Motion for Preliminary Injunction
(3:22-cv-1461-BEN-JLB)

"designed to insulate all Texas abortion restrictions from judicial challenge by deterring even meritorious lawsuits[,]" Mot. for Prelim. Inj. 46, *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 6 (W.D. Tex. Aug. 24, 2022), and described how they could not even file the *Fund Texas Choice* lawsuit until they had "secured funding to ensure their continued financial viability" in the event that the fee-shifting provision was ever applied to their claims, Reply in Supp. of Mot. 24, *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 56 (W.D. Tex. Sept. 26, 2022).[11] California filed an amicus brief in support of the plaintiffs, focusing on plaintiffs' claim that Texas unlawfully interfered with the right to interstate travel.  Amici Curiae Br. of Cal. et al., *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 38-1 (W.D. Tex. Sept. 23, 2022).

Texas opposed the plaintiffs' motion for a preliminary injunction.  Resp. to Pls.' Mot. for Prelim. Inj. & Mot. to Dismiss Pls.' Compl., *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 33 (W.D. Tex. Sept. 19, 2022).  With respect to the plaintiffs' challenge to the fee-shifting provisions in section 4 of SB 8, Texas raised jurisdictional and other threshold defenses.  *Id.* at 11–14, 26, 30–32.  Texas argued that the plaintiffs lacked standing because the possibility that the Attorney General might someday seek fees under that provision was conjectural and hypothetical, *id.* at 11; asserted that the Attorney General was entitled to sovereign immunity because he had not demonstrated a willingness to seek attorney's fees, *id.* at 14; and

---

[11] *See also* Reply in Supp. of Mot. 24, *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 56 (W.D. Tex. Sept. 26, 2022) ("The Texas legislature's unique fee-shifting provision that attaches to all affirmative abortion-related constitutional challenges . . . is so chilling that few organizations can afford to test the scope of the laws for fear of the financial ruin they may suffer in the case of any loss in court.  And few organizations will be able to find counsel willing to risk the severe financial injury attendant to cases such as this, since section 30.022 imposes joint and several liability on any counsel who assist in the challenge of an abortion statute.").

claimed that *Pullman* abstention principles weighed against federal intervention before state courts could construe section 30.022, *id.* at 30–32.  Significantly, however, Texas did not make any commitment not to seek fees under the challenged provision.  Nor did Texas substantively respond to plaintiffs' First Amendment claim.[12]  With respect to plaintiffs' argument that the fee-shifting provision is preempted by 42 U.S.C. § 1988, Texas argued that the Supremacy Clause cannot be enforced through §1983 actions, *id.* at 16–17, and, in any event, that "SB 8's fee shifting provision does not directly conflict with § 1988 in all circumstances and does not render compliance with federal law impossible or stand as an obstacle to the purposes of § 1988[,]" *id.* at 27.  The district court held an evidentiary hearing on the motion for a preliminary injunction and the parties are currently awaiting a decision from that court on the motion and on related evidentiary matters.

## B.   California Senate Bill 1327

California's SB 1327 was a reaction to SB 8.  The day after the Supreme Court issued its decision regarding SB 8, Governor Newsom criticized the ruling on the ground that it had the practical effect of "endorsing Texas's scheme to insulate its law from the fundamental protections of *Roe v. Wade*."[13]  The Governor explained that "California opposed Texas's ploy at the Supreme Court, and I wish the court had agreed with us[,]" but he stated that if Texas was allowed to "shield [its] laws from review by the federal courts" then California "should use that authority to

---

[12] In its section on standing, Texas quoted a decision from the Seventh Circuit holding that ordinary fee regimes do not implicate the First Amendment. *See* Resp. to Pls.' Mot. for Prelim. Inj. & Mot. to Dismiss Pls.' Compl. 13–14, *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 33 (W.D. Tex. Sept. 19, 2022)

[13] Cal. Office of the Governor, Governor Newsom Statement on Supreme Court Decision (Dec. 11, 2021), available at https://tinyurl.com/z2bpc6rn.

1    protect people's lives."[14]

2         In furtherance of that objective, the Governor proposed and the Legislature

3    enacted SB 1327.[15]  SB 1327 has two principal sections that closely track

4    provisions of SB 8.  Section 1, which is not at issue in this case, creates a private

5    right of action to enforce certain existing restrictions on assault weapons and ghost

6    guns.  SB 1327 § 1 (Cal. Bus. & Prof. Code § 22949.62).  Like section 3 of SB 8,

7    section 1 of SB 1327 specifically prohibits the "state, a political subdivision, a

8    district or county or city attorney, or an executive or administrative officer or

9    employee of this state or a political subdivision" from enforcing its provisions and

10   explicitly provides that the law "shall be enforced exclusively through . . . private

11   civil actions."  *Id.* (Cal. Bus. & Prof. Code § 22949.64(a)).  Section 1 of SB 1327

12   also incorporates the modifications to state-court procedures found in SB 8.  Unlike

13   SB 8, however, SB 1327 did not seek to contravene any established judicial

14   precedent.  As the author of SB 1327 explained, "[b]y enacting its abortion ban,

15   Texas . . . knowingly infring[ed] upon a well-established constitutional right."[16]  In

16   contrast, with respect to SB 1327's private right of action, "while the Supreme

17   Court recognizes an individual constitutional right to bear arms, it certainly does

18   not recognize a constitutional right to own, manufacture, or sell an illegal assault

19   _____

20        [14] Gavin Newsom, Opinion: *The Supreme Court Opened the Door to Legal*
21   *Vigilantism in Texas. California Will Use the Same Tool to Save Lives*, The Wash.
     Post (Dec. 20, 2021), available at https://tinyurl.com/3ky3pmkz; Governor Newsom
22   Statement on Supreme Court Decision, *supra* n.13.

23        [15] Tweet of Senator Bob Hertzberg (Feb. 18, 2022), available at
24   https://tinyurl.com/3eehjb5c ("I'm proud to answer Gov. @GavinNewsom's call
     for legislation to help restrict illegal ghost guns and assault weapons in California.
25   Modeled after Texas' #SB8, my bill creates a private right of action for
     Californians to use against those selling and manufacturing illegal guns.").
26
27        [16] Robert Hertzberg, Statement on Senate Bill 1327, Firearms: A Private
     Right of Action (Feb. 18, 2022), available at https://tinyurl.com/57xu5px5.
28

weapon or ghost gun."[17]  SB 1327 also expressly provides that its private-right-of-action provision "shall become inoperative" if the analogous private right of action in SB 8 is "invalidat[ed] . . . in its entirety by a final decision of the United States Supreme Court or Texas Supreme Court[.]"  SB 1327 § 1 (Cal. Bus. & Prof. Code § 22949.71).

Section 2 of SB 1327, which is at issue here, parallels the fee-shifting provision in section 4 of SB 8.  The language in the two fee-shifting provisions is nearly identical, except for the subject matter of the lawsuit that triggers fees. While section 4 of SB 8 applies to suits challenging abortion laws, SB 1327's fee-shifting provision is implicated in lawsuits seeking declaratory or injunctive relief with respect to any law that regulates or restricts firearms.  Specifically, section 2 of SB 1327 provides that:

> any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

S.B. 1327 § 2 (Cal. Code Civ. P. § 1021.11(a)).  Like SB 8, a party is a "prevailing party" if the court dismisses any claim, regardless of the reason for dismissal, or enters judgment in favor of the party opposing the declaratory or injunctive relief. *Id.* (Cal. Code Civ. P. § 1021.11(b)).  As a result, as in SB 8, the only party that could possibly qualify as the "prevailing party" is the defendant.  Also like SB 8, prevailing parties may seek costs and fees within three years of the date when the dismissal or denial of a claim becomes final.  *Id.* (Cal. Code Civ. P. § 1021.11(c)). And as with SB 8, it is not a defense that the prevailing party did not seek attorney's fees in the underlying action; that the court in the underlying action

---

[17] *Id.*

declined to recognize or enforce this provision; or that the court in the underlying action held the challenged provision invalid, unconstitutional, or preempted by federal law.  *Id.* (Cal. Code Civ. P. § 1021.11(d)).

SB 1327 contains a severability clause with respect to the private right of action (Cal. Bus. & Prof. Code § 22949.70), and declares in a separate severability clause that "every statute that regulates or prohibits firearms is severable in each of its applications to every person and circumstance," SB 1327 § 3(c).  SB 1327 is scheduled to take effect on January 1, 2023.[18]

In evaluating SB 1327, the Report of the Senate Judiciary Committee of the California Legislature acknowledged that the bill "is modeled after [SB 8], and includes a number of the same problematic procedural mechanisms."  SB 1327 Senate Judiciary Report (Apr. 1, 2022), at 2.  The report reiterated that "[t]he clear premise of this bill is if Texas can use this clever scheme to subvert federal supremacy and infringe on constitutional rights its Legislature and Governor do not favor, then California should use it to carry out its own, constitutional policy goals."  *Id.* at 12.

Attorney General Bonta similarly understood SB 1327 as a law that responded to the Supreme Court's decision regarding SB 8.[19]  As the Attorney General saw it, the Governor and the Legislature were attempting to use SB 8's structure "in the best way that it can be used, in a way that advances California values"; but the Attorney General also recognized that the approach was "dangerous.  It's a dangerous game.  We're using it responsibly.  Now others can use it like Texas, and maybe the Supreme Court will look at the landscape of how this approach is being used and try to correct it.  If that happens, that's fine, too."[20]

---

[18] Cal. Gov. Code § 9600(a).

[19] Ben Christopher, *What Would Rob Bonta do Next as California Attorney General*, Cal Matters (Oct. 13, 2022), available at https://tinyurl.com/mr3bxmn8.

[20] *Id.*

14

Governor Newsom signed SB 1327 into law in July 2022.  Since then, several plaintiffs and attorneys in pending Second Amendment challenges to California's firearm laws sought assurances that SB 1327's fee-shifting provision would not be invoked in those lawsuits.  In each of those cases, the Attorney General committed not to seek fees under SB 1327.[21]

## C.   This Lawsuit

The plaintiffs here include individuals, non-profit organizations, and a Second Amendment scholarship and legal resource center who either have pending cases, or assert that they desire to file new cases, against California challenging its firearms regulations.  Compl. ¶¶ 32–49.  The complaint alleges that the fee-shifting scheme in section 2 of SB 1327 is a Bill of Attainder, *id.* ¶ 89; violates the First Amendment right to petition the government for redress of grievances, *id.* ¶ 95; violates due process, *id.* ¶¶ 101, 125; violates the Equal Protection Clause of the Fourteenth Amendment, *id.* ¶ 109; and is preempted and unconstitutional under the Supremacy Clause, *id.* ¶ 118.  The complaint also seeks relief under the All Writs Act.  *Id.* ¶ 134.  The complaint does not challenge the private right of action in section 1 of SB 1327.

Plaintiffs are currently seeking a preliminary injunction.  Mot. 2.  Plaintiffs argue that SB 1327's fee-shifting provision creates "financial penalties designed to punish plaintiffs seeking to enforce their constitutional rights through the peaceful means of litigation in a court of law[,]" and that at least one prospective plaintiff has been deterred from participating as a plaintiff in a recently-filed Second Amendment lawsuit.  Mem. of P. & A. 1.  And the associational plaintiffs who

---

[21] *See*, *e.g.*, *Renna v. Bonta*, No. 20-cv-2190, Dkt. 57 at 3 (S.D. Cal. Sept. 28, 2022); *Abrera v. Newsom*, No. 22-cv-1162, Dkt. 22 at 8–9 (E.D. Cal. Oct. 10, 2022); *Defense Distributed v. Bonta*, No. 22 CV 6200, Dkt. 19 at 9–11 (C.D. Cal. Oct. 24, 2022); *Rupp v. Becerra*, No. 8:17-cv-00746, Dkt. 130 at 8–10 (S.D. Cal. Oct. 21, 2022); *Miller v. Bonta*, No. 3:22-cv-1446, Dkt. 22 at 22–23 (S.D. Cal. Oct. 31, 2022).

1    serve as plaintiffs "in many Second Amendment-related lawsuits on behalf of their

2    thousands of members" argue that they are facing "an existential threat" from the

3    fee-shifting provision, and that they will "struggle to find attorneys willing to

4    challenge gun laws, given attorneys are also liable" under the fee-shifting provision.

5    *Id*. at 3–4.

6        **D.   Defendant's Efforts to Resolve This Litigation**

7        As with other cases challenging the fee-shifting provision of SB 1327, the

8    Attorney General committed not to seek fees under SB 1327 against plaintiffs and

9    attorneys in this lawsuit.  After plaintiffs filed their motion in this case, defendant

10   proposed a resolution under which the parties would stipulate that defendant would

11   not seek attorney's fees or costs under section 2 of SB 1327 from any plaintiff or

12   plaintiff's attorney—including prospective plaintiffs who are not involved in this

13   case—unless and until a court ultimately holds that the fee-shifting provision in

14   section 4 of SB 8 is constitutional and enforceable, and that decision is affirmed on

15   appeal or no appeal is taken.  As part of that stipulation, defendant would also

16   commit not to seek attorney's fees or costs under section 2 of SB 1327 in

17   connection with any suit filed before the date on which any decision ultimately

18   upholding the constitutionality of section 4 of SB 8 is affirmed on appeal (or the

19   time to file an appeal expires)—again, regardless of whether the party bringing that

20   suit is a plaintiff in the present case.  But the parties were unable to agree to the

21   terms of a stipulation.

22                        **ARGUMENT**

23       Plaintiffs' legal claims are premised on the concern that the fee-shifting

24   mechanism challenged here will chill prospective litigation.  The Attorney General

25   has previously recognized and criticized the potential chilling effect of that fee-

26   shifting mechanism in the context of SB 8, and has acknowledged that California's

27   SB 1327 was a reaction to SB 8—founded on the Legislature's view that if Texas

28   were allowed to employ the problematic mechanisms in SB 8 to advance its policy

                                    16

interests, then California should be allowed to use the same mechanisms to advance its own policy interests.  To date, however, no court has upheld the constitutionality of the fee-shifting mechanism contained in section 4 of SB 8.  Accordingly, defendant hereby commits not to seek attorney's fees or costs under section 2 of SB 1327 from any plaintiff or plaintiff's attorney—including prospective plaintiffs who are not involved in this case—unless and until a court ultimately holds that the fee-shifting provision in section 4 of SB 8 is constitutional and enforceable, and that decision is affirmed on appeal or no appeal is taken.  That commitment extends to attorney's fees or costs incurred at any time in connection with any suit filed before the date on which a decision ultimately upholding the constitutionality of section 4 of SB 8 is affirmed on appeal (or the time to file an appeal expires)—again, regardless of whether the party bringing that suit is a plaintiff in the present case.

In light of that commitment, this Court lacks jurisdiction to consider the merits of plaintiffs' claims or to grant the relief requested by plaintiffs.  Article III confines the jurisdiction of the federal courts to actual "cases and controversies," and "the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  "To satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing," plaintiffs must demonstrate that they have "suffered injury in fact, that the injury is fairly traceable to the actions of the defendant[s], and that the injury will likely be redressed by a favorable decision."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal quotation marks and citations omitted).  Because of defendant's commitment not to seek fees under section 2 of SB 1327 in any case brought by the plaintiffs—in connection with all pending cases as well as any cases that will be filed for the foreseeable future—plaintiffs lack any injury in fact that is fairly traceable to defendant.  That

stands in contrast to the circumstances confronting the plaintiffs in Texas, who have alleged injury precisely because Texas refuses to commit not to seek fees.[22]

The possibility that defendant might one day seek fees under section 2 of SB 1327—only in the event that a court ultimately holds that the fee-shifting provision in section 4 of SB 8 is constitutional and enforceable, and then only with respect to suits filed after the date on which such a ruling is affirmed on appeal or the time for filing an appeal has expired—does not confer jurisdiction on this court.  When a plaintiff seeks to establish standing based on an anticipated future injury, the plaintiff must show that the injury is "imminent."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 & n.2 (1992).  A similar concern for the avoidance of premature and possibly unnecessary litigation underlies the requirement that a suit be "ripe" for adjudication.  *See Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) (noting "close affinity" between ripeness and standing doctrines).  An injury is not imminent and a claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–581 (1985) (internal quotation marks and citation omitted).  Applying those principles, courts have held that disputes are not ripe if they are "contingent on the outcome of . . . other ongoing lawsuits."  *In re BofI Holding, Inc. S'holder Litig.*, 848 F. App'x 234, 236 (9th Cir. 2021) (unpublished); *see, e.g.*, *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) ("Trustgard's alleged injury . . . is of a hypothetical and contingent nature: the injury may or may not occur depending on the outcome of the state lawsuit.").

---

[22] The Texas state defendants point to the absence of *affirmative* evidence that their Attorney General "has sought (or will imminently seek) attorneys' fees under S.B. 8" and contested plaintiffs' standing to challenge section 4 of SB 8 in the *Fund Texas Choice* litigation on that basis.  Resp. to Pls.' Mot. for Prelim. Inj. & Mot. to Dismiss Pls.' Compl. 11, *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 33 (W.D. Tex. Sept. 19, 2022).  As the plaintiffs there explain, however, that very uncertainty is what inflicts their injury:  the "fee-shifting provision . . . is so chilling that few organizations can afford to test the scope of the laws for fear of the financial ruin they may suffer in the case of any loss in court."  Reply in Supp. of Mot. 24, *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 56 (W.D. Tex. Sept. 26, 2022).

18

For the same reasons, the dispute over the fee-shifting provision in section 2 of SB 1327 is not ripe under the present circumstances.  Defendant has now expressly committed not to seek fees in any cases filed in the foreseeable future—and he would be subject to principles of estoppel if he ever reneged on the terms of that commitment to plaintiffs.  *See generally Bock v. Washington*, 33 F.4th 1139, 1145 (9th Cir. 2022).  For the time being—and perhaps for all time—that commitment has eliminated any possibility that plaintiffs or their attorneys will be "punish[ed]" for "seeking to enforce their constitutional rights."  Mem. P. & A. 1.  And the possibility that section 2 of SB 1327 might deter plaintiffs from bringing some future suit against defendants "is of a hypothetical and contingent nature." *Trustgard Ins. Co.*, 942 F.3d at 200.  It would only arise if the parallel provision in section 4 of SB 8 is held to be constitutional and that decision is affirmed on appeal or no appeal is taken—a scenario that plaintiffs must view as remote in light of their position that they "are [l]ikely to [s]ucceed on the [m]erits" of their constitutional challenges.  Mem. P. & A. 6.

For the same reason, plaintiffs cannot establish that they would suffer irreparable harm absent a preliminary injunction.  *See Winter*, 555 U.S. at 20; *see also Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) ("This Court has ruled that '[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.  A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'") (quoting *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)).  And plaintiffs cannot, under these circumstances, demonstrate that the equities tip in their favor or that an injunction is in the public interest.  *See Burgos v. Long*, No. 2:11–cv–01906–JAM–JFM, 2013 WL 5818093 (E.D. Cal. Oct. 29, 2013) at *11 (finding that "the balance of equities and public interest

weigh against injunctive relief" because "[p]laintiff will not suffer cognizable harm if the injunction is not issued").

## CONCLUSION

In light of defendant's commitment, the Court lacks jurisdiction to entertain plaintiffs' claims and the Court should deny the motion for preliminary injunction on that basis.

Dated:  November 2, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General

*s/ Ryan R. Davis*

RYAN R. DAVIS
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity*

SA2022304322/43462121.docx

# CERTIFICATE OF SERVICE

Case Name:    ***South Bay Rod & Gun Club, Inc., et al. v. Rob Bonta***
Case No.      **3:22-cv-01461-JO-WVG**

I hereby certify that on <u>November 2, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 2, 2022</u>, at San Francisco, California.

_____            _____
            G. Pang                             Signature
           Declarant
SA2022304322/43462136.docx