1  C. D. Michel – SBN 144258
   cmichel@michellawyers.com
2  Joshua Robert Dale – SBN 209942
   jdale@michellawyers.com
3  Konstadinos T. Moros – SBN 306610
   kmoros@michellawyers.com
4  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Blvd., Suite 200
5  Long Beach, CA 90802
   Telephone: (562) 216-4444
6  Facsimile: (562) 216-4445
   www.michellawyers.com
7
   Attorneys for Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory
8  Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California,
   Second Amendment Law Center, and California Rifle and Pistol Association,
9  Incorporated

10 Donald Kilmer-SBN 179986
   Law Offices of Donald Kilmer, APC
11 14085 Silver Ridge Road
   Caldwell, Idaho 83607
12 Telephone: (408) 264-8489
   Email: Don@DKLawOffice.com
13
   Attorneys for Plaintiff Citizens Committee for the Right to Keep and Bear Arms
14

15                **UNITED STATES DISTRICT COURT**

16              **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17  SOUTH BAY ROD & GUN CLUB, INC.; GARY BRENNAN, an | **CASE NO: 3:22-cv-01461-RBM-WVG** |
| 18  individual; CORY HENRY, an individual; PATRICK LOVETTE, an | **REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'** |
| 19  individual; VIRGINIA DUNCAN, an individual; RANDY RICKS, an | **MOTION FOR PRELIMINARY INJUNCTION** |
| 20  individual; CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND | |
| 21  BEAR ARMS; GUN OWNERS OF CALIFORNIA; SECOND | **Hearing Date: November 21, 2022** |
| 22  AMENDMENT LAW CENTER; and CALIFORNIA RIFLE & PISTOL | **Courtroom: 5B** **Judge: Hon. Roger T. Benitez** |
| 23  ASSOCIATION, INCORPORATED, | |
| 24              Plaintiffs, | |
| 25          v. | |
| 26  ROBERT BONTA, in his official capacity as Attorney General of the | |
| 27  State of California; and DOES 1-10, | |
| 28              Defendants. | |

---

POINTS & AUTH. IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
                                        22-cv-01461-RBM-WVG

## 1.      INTRODUCTION

The Attorney General does not attempt to defend Section 1021.11 on the merits. Instead, trying to defend the indefensible, he engages in the false pretense of an unenforceable promise. First, he recounts the history of Texas's SB 8 and its effect on abortion rights in that state. Then he admits that the equally malicious SB 1327 was enthusiastically plagiarized from the Texas law to attack gun rights here in California. And given the heated rhetoric of Governor Newsom and Attorney General Bonta about the Texas law, they leave no doubt that they would fervently enforce Section 1021.11 in California, but for their opposition to the Texas law.

How do we know the constitutional harm of Section 1021.11 still exists? Because in disclosing some of the parties' confidential settlement communications, the Attorney General admits that his Potemkin "promise" not to enforce Section 1021.11 today is conditioned upon resurrecting that power in the future if the Texas law is upheld.  The Attorney General's purported voluntary forbearance in enforcing Section 1021.11 is an attempt to manufacture a standing controversy. By asking this Court to sanction such sophistry in an effort to moot this lawsuit, he is flaunting the law and abandoning his duties to this Court under Federal Rule of Civil Procedure 11.

## 2.      THE PARTIES' SETTLEMENT DISCUSSIONS

Sidestepping Federal Rule of Evidence 408 to manufacture standing issues in this case, the Attorney General sets forth his version of settlement discussions between his office and Plaintiffs' counsel regarding this motion. But the Attorney General provides only a one-sided and incomplete account of those discussions.

While it is true that the Attorney General proposed a resolution under which he would stipulate that his office would not seek attorney's fees and costs under Section 1021.11 from any plaintiffs or attorneys for now, the Attorney General admits that this offer was conditioned on reserving the right to reassert the validity and constitutionality of Section 1021.11, if Texas' equivalent (SB 8) fee-shifting

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

1 | provision was upheld. Opp. At 16.[1]

2 | Plaintiffs were clear during those discussions that this proposal would not

3 | provide the necessary relief to Plaintiffs for a number of reasons.  First and

4 | foremost, his offer to stipulate to *temporarily* not enforce Section 1021.11—subject

5 | to revocation if the Texas law is upheld—is not the same character of relief as

6 | Plaintiffs are seeking in this lawsuit, which is to enjoin Section 1021.1, full stop.

7 | If California's Second Amendment-only fee-shifting law is unconstitutional,

8 | then it is unconstitutional. What happens in a different district court, in a different

9 | circuit, in some future holding regarding a mirror-image law passed by a different

10 | state, as applied to litigation over activities that are no longer protected by the U.S.

11 | Constitution (abortion), has no bearing on the relief Plaintiffs seek in this lawsuit.

12 | The right to petition courts to uphold Second Amendment rights against

13 | infringements by the United States and all 50 states (including California), is the

---

[1]An Attorney General declining to defend a law that he believes is unconstitutional is not without precedent. *See Perry v. Brown*, 671 F.3d 1051, 1071 n.9 (9th Cir. 2012) (California Attorney General refusing to defend Proposition 8), *vacated and remanded, Hollingsworth v. Perry*, 570 U.S. 693 (2013), *on remand, appeal dismissed, Perry v. Brown*, 725 F.3d 1140 (9th Cir. 2013).

What this Attorney General has not done, is make a written Offer of Judgment under Federal Rule of Civil Procedure 68. Nor has he circulated a terms sheet, or moved this Court for an order that the parties participate in Alternative Dispute Resolution (a motion plaintiffs would oppose).

Perhaps the Attorney General in these circumstances should have just filed a notice of non-opposition, rather than make a nearly fraudulent settlement proposal and then try to pass that off as grounds for dismissing this case as moot.

Here, not only is the Attorney General wasting taxpayer and this Court's resources submitting opposition briefing supporting a fee-shifting law that he has repeatedly argued is unconstitutional in Texas, but now he causes this Court and Plaintiffs to expend resources to consider and respond to opposition arguments that are based on facts that are patently inadmissible. FED. R. EVID. 408.

There is not enough time, given the current briefing schedule, and urgency of this matter, for Plaintiffs to challenge the Attorney General to withdraw the offending filing under Rule 11(c)(2); although this Court can issue its own order to show cause pursuant to Rule 11(c)(3).

Section 1021.11 and the Attorney General's attempt to defend it is unprecedented. But that does not excuse California's top lawyer and law enforcement official brandishing a disrespect for the law by presenting to this court a pleading, written motion, or other paper, and advocating a position, that is unwarranted by existing law and/or that by his own admission is frivolous. FED. R. CIV. P. 11.

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

1    gravamen of this action regardless of what happens to abortion rights in Texas.[2]

2    The Attorney General only offered to enter into a stipulation that Plaintiffs

3    were entitled to judgment. He expressly refused to agree to have declaratory

4    findings such as those sought by Plaintiffs' complaint included in any stipulated

5    judgment. Such a stipulated judgment, absent findings based on constitutional

6    grounds as to why Plaintiffs were entitled to judgment, would not constitute

7    "settled law." Cities and counties would simply argue that the stipulated judgment

8    neither bound local governments nor provided them with notice that it would be

9    unconstitutional to enforce Section 1021.11. *See Boyd v. Benton County*, 374 F.3d

10   773, 781 (9th Cir. 2004) ("a victim's constitutional rights may be clearly established

11   in the absence of [an appellate] case 'on all fours prohibiting [the] particular

12   manifestation of unconstitutional conduct [at issue]' " if the violation is patent)

13   (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001)).

14   At least one of the Plaintiffs in this case has already had to risk exposure to

15   the ravages of Section 1021.11 against a municipal defendant who would not be

16   bound by the Attorney General's "promise." *See California Rifle & Pistol*

17   *Association, Incorporated, et al. v. City of Glendale, et al.*, C.D. Cal. Case No.

18   2:22-cv-07346 (current CRPA litigation challenging City of Glendale's "sensitive

19   places" ordinances prohibiting carrying of firearms in public places within the city).

20   A preliminary injunction or a judgment with declaratory findings as to the

21   unconstitutionality of Section 1021.11 would not only enjoin the Attorney General

22   from enforcing it, but it would also enjoin other agencies and local governments.

23

24   [2]   While attorneys are subject to Rule 11 sanctions for their court filings, section (c)(1) authorizes this Court to impose sanctions against a "***party*** that violated the rule or is responsible for the violation." *Id.* (emphasis added).

25   Governor Newsom and the Legislature (as evidenced by press releases, heated rhetoric, their own legislative analysis, and admissions made by their

26   lawyer) are waging a proxy war in the courts by pitting abortion rights in Texas against Second Amendment rights in California. Neither Governor Newson nor his

27   Attorney General represent the people of Texas. The perception that constitutional rights are in jeopardy in Texas has no bearing on constitutional adjudications in

28   California. This is litigation for an "improper purpose." FED. R. CIV. P. 11(b)(1).

1   *See Cal. Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*, 29 F.4th

2   468, 483 (9th Cir. 2022) (district court's order enjoining the Attorney General from

3   enforcing certain sections of Proposition 65 against Plaintiffs also enjoined private

4   actors who "identified with [the AG] in interest, [were] in 'privity' with them,

5   represented by them or subject to their control.") (citing FED R. CIV. P. 65(d)(2) and

6   quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, (1973)).

7        Plaintiffs had suggested that the Attorney General simply agree to issue a

8   detailed Legal Opinion or Legal Alert confirming that Section 1021.11 was

9   unconstitutional. He could cut/paste them from his filings in Texas. But the

10  Attorney General refused that option.[3]

11       Ultimately the details of the settlement proposal and the discussions over

12  why Plaintiffs did not accept it are not admissible for consideration by the Court on

13  this motion. FED. R. EVID. 408. But the Attorney General's mischaracterization that

14  it offered the relief Plaintiffs seek in this lawsuit, but Plaintiffs refused, comes close

15  to a false statement. It appears to have been proffered to harass, cause unnecessary

16  delay, or needlessly increase the cost of this litigation. FED. R. CIV. P. 11.

17  **3.      ARGUMENT**

18       **A.      Voluntary Cessation of Harmful Conduct Does Not Moot a Case**

19       Defendants cannot moot a case by simply voluntarily ceasing the injurious

20  conduct, especially when they admit that they will resume the conduct based on

21  some alternative contingent event they have no control over. *See Friends of the*

22  *Earth v. Laidlaw Environmental Services,* 528 U.S. 167, 189-90 (2008) (police

23  moratorium on chokehold policy did not render case challenging policy mott

24  _____

25  [3]   If Defendants want to moot the case they can follow in the footsteps of New
    York. California can repeal the law. *New York State Rifle & Pistol Association, Inc.*
26  *v. City of New York, New York*, 140 S. Ct. 1525 (2020). They could also make an
    agreement that California will refrain from enforcing Section 1021.11 in perpetuity
27  and indemnify any future plaintiffs and their lawyers litigating gun rights in
    California, again in perpetuity, by defending said plaintiffs, and paying any fees
28  awarded under Section 1021.1.

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

1   because moratorium was not permanent).

2   **B.     The Attorney General's Promise of Forbearance is an Empty One**

3   The Attorney General's basic argument in opposition is that because he

4   promises not to enforce Section 1021.11 until some future time if-and-when SB 8's

5   fee shifting provision is upheld, that this suit and plaintiffs lack Article III standing.

6   Opp. at 16-20. To begin with, the Attorney General has not yet actually made any

7   signed commitment, and he has refused Plaintiffs' suggestion to issue a formal

8   legal opinion confirming that Section 1021.11 is unconstitutional.

9   The Attorney General's claims that judicial estoppel would bind him in the

10   future is a tortured interpretation of the doctrine. Judicial estoppel isn't based on

11   some promise in a vacuum, rather, courts inquire "whether the party has succeeded

12   in persuading a court to accept that party's earlier position, so that judicial

13   acceptance of an inconsistent position in a later proceeding would create the

14   perception that either the first or the second court was misled." *Peter-Palican v.*

15   *Gov't of the Commonwealth of the N. Mar. I.*, No. C07-0022, 2013 U.S. Dist.

16   LEXIS 202666, at *23-24 (D. N. Mar. I. Sep. 13, 2013), citing *New Hampshire v.*

17   *Maine*, 532 U.S. 742, 750 (2001).

18   Here, this Court has yet to weigh in on this case at all, so judicial estoppel is

19   not applicable on those facts. But it is arguable that judicial estoppel is already

20   available AGAINST the California Attorney General now, in this case, regardless

21   of what a court in Texas does with the fee shifting provisions of Texas's SB 8.

22   The *New Hampshire* Court did not intend to limit the judicial estoppel

23   doctrine to only those elements set forth in that opinion, and reliance was only one

24   of the factors cited.  "In enumerating these factors, we do not establish inflexible

25   prerequisites or an exhaustive formula for determining the applicability of judicial

26   estoppel. Additional considerations may inform the doctrine's application in

27   specific factual contexts." *Id.* at 752.

28   This Attorney General has already taken a position on a Texas law that is a

1  mirror image of a later-enacted law in California. Those positions are clearly

2  inconsistent in successive (and ongoing) litigation. And now he is seeking to derive

3  an unfair advantage (dismissal of this case) by maintaining those inconsistent

4  positions through intentional self-contradiction.

5       The *New Hampshire* Court pointed out that judicial estoppel's essential

6  purpose is to "protect the integrity of the judicial process" by "preventing parties

7  from deliberately changing positions according to the exigencies of the moment"

8  and to "prevent parties from playing fast and loose with the court." *Id.* at 750-51

9  (internal citations omitted).

10      The Attorney General also lacks the power to bind his successors. See *Ariz.*

11 *All. for Retired Ams. v. Hobbs*, No. CV-22-01374-PHX-GMS, 2022 U.S. Dist.

12 LEXIS 173622, at *12 (D. Ariz. Sep. 26, 2022) ("The Attorney General's position

13 that Plaintiffs are not likely to be prosecuted for this conduct does not change the

14 Court's conclusion . . . as the Attorney General acknowledges, his interpretation

15 will not bind his successor in office, and he will only remain in office for three

16 more months."). Even if the Attorney General's promise could bind his successors

17 via estoppel as he suggests, Opp. at 19, the Attorney General is not the only party at

18 the state level that could enforce the fee shifting provision at issue.

19      For example, in *B&L Productions, Inc., et al. v. Gavin Newsom, et al.*, Case

20 No. 8:22-cv-01518, currently pending in the Central District of California, Plaintiff

21 CRPA has joined several other plaintiffs in suing Governor Newsom, Rob Bonta,

22 Karen Ross (the Secretary of the California Department of Food & Agriculture),

23 Todd Spitzer (District Attorney of Orange County), and the 32nd District

24 Agricultural Association. The case challenges restrictions on the use of public

25 property for gun shows. If Plaintiffs lose on any one of their six causes of action in

26 that case, then Section 1021.11 would arguably apply. Perhaps the Attorney

27 General or his successor would keep his promise at that point, but that promise does

28 not bind any of the other named defendants.

6

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

1

**C.      Plaintiffs Have Active Gun Litigation Against Local Governments**

2       Even if the Attorney General's promise can bind state-level officials—and

3  his opposition cites no authority to suggest it does—it certainly would not bind

4  local governments or entities. District attorneys, county counsel, and city attorneys

5  can also enforce Section 1021.11.

6       In addition to Plaintiffs' ongoing *B&L Productions* litigation involving local

7  government defendants, Plaintiffs CRPA and Gun Owners of California (as well as

8  Second Amendment Foundation, a Plaintiff in the parallel *Miller II* matter) have

9  recently filed suit against the City of Glendale to challenge its restrictions on gun

10  possession on all city property. See *California Rifle & Pistol Association,*

11  *Incorporated, et al. v. City of Glendale, et al.*, C.D. Cal. Case No. 2:22-cv-07346. If

12  Plaintiffs do not prevail on all claims in that action, Glendale will be able to seek

13  reimbursement of its legal expenses under Section 1021.11.

14       A District Court in Arizona dealt with a similar question very recently, in

15  which the Attorney General of Arizona promised not to enforce a challenged law at

16  issue. The Court in that case explained:

17       Defendants promises that they will not enforce the provision in the
        upcoming election also do not persuade the Court that Plaintiffs lack
18       standing. The Ninth Circuit has held that a failure to disavow
        enforcement coupled with self-censorship to avoid enforcement is
19       sufficient to show "a causal connection between the injury and the
        conduct complained of." *Tingley v. Ferguson*,        F.4th       , 2022
20       U.S. App. LEXIS 25312, 2022 WL 4076121, at *7 (9th Cir. 2022). The
        Plaintiffs have shown that they will engage in self-censorship. <u>And the</u>
21       <u>Attorney General cannot disavow enforcement because he cannot bind</u>
        <u>County Attorneys or future Attorneys General to his interpretation of</u>
22       <u>the statute.</u> Additionally, the third standing requirement "carries 'little
        weight' when the challenged law is 'relatively new,' and the record
23       contains little information as to enforcement." *California Trucking Ass'n*
        *v. Bonta*, 996 F.3d 644 (9th Cir. 2021). The Felony Provision was passed
24       June 8, 2022, and goes into effect on September 24, 2022. So, the statute
        has never been enforced. This lack of enforcement history, however, is
25       a product of the law's newness, and is not indicative of the State's
        commitment not to enforce the provision against voter advocacy
26       organizations.

27  *Ariz. All. for Retired Ams.*, No. CV-22-01374, 2022 U.S. Dist. LEXIS 173622, at

28  *12 n.1 (D. Ariz. Sept. 26, 2022) (emphasis added).

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

1    The Attorney General cannot disavow enforcement to moot this case,

2   because he cannot bind Glendale, the District Attorney of Orange County, or any

3   other local officials or entities who would enforce Section 1021.11 against these

4   Plaintiffs in existing cases. Even if made in good faith, the Attorney General's

5   promise cannot provide Plaintiffs the full relief they would receive if they achieved

6   declaratory and injunctive relief in this matter from the Court.[4]

7    Because the Attorney General does not (and cannot) offer such relief with his

8   promise, standing remains. A case becomes moot "only when it is impossible for a

9   court to grant any effectual relief whatever to the prevailing party." *Campbell-*

10  *Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (citing *Knox v. SEIU, Local 1000*,

11  567 U.S. 298, 307 (2012)). "[A] case will only become moot if a party receives all

12  the relief claimed in their complaint." *Dwango, Ltd. v. Spahn*, No. C15-1289RSL,

13  2016 U.S. Dist. LEXIS 180547, at *12 (W.D. Wash. Feb. 29, 2016).

14  **D.    The Attorney General is Currently Benefitting from Section
            1021.11, Leveraging it to Gain Concessions from Current Gun**

15  **Plaintiffs and Through its Chilling Effect on Potential Plaintiffs**

16   The Attorney General asserts that Plaintiffs have suffered no injury in fact.

17  Opp. at 17. Yet they have. In *Lance Boland, et al. v. Robert Bonta*, Case No. 8:22-

18  cv-01421 (C.D. Cal.), a recently-filed case challenging California's Unsafe

19  Handgun Act, the Attorney General has already entered into a stipulation with

20  Plaintiff CRPA to amend the complaint to dismiss a single commerce clause claim

21  in exchange to not seek fees under Section 1021.11 for that dismissed claim, <u>but</u>

22  <u>only if plaintiffs would dismiss the claim *with prejudice*</u>. The Parties signed a

23  stipulation to that effect, and the court signed the parties' proposed order. (*See*

24  Exhibits A & B hereto).  This is a highly unusual concession by a plaintiff. But for

25

26  [4]  Moreover, if this Court finds Section 1021.11 unconstitutional, then Plaintiffs
27  could use its ruling to argue against any claims of qualified immunity on the part of
    local officials who try to enforce Section 1021.11 after such a ruling. *See DePaul*
28  *Indus. v. Miller*, 14 F.4th 1021, 1027 (9th Cir. 2021).

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
                                            22-cv-01461-RBM-WVG

1   Section 1021.11's guarantee of fee recovery to the state, plaintiffs could have

2   dismissed their claim at the pleading stage *without prejudice* and perhaps litigated it

3   another day.

4          This demonstrates that the Attorney General, who knows and admits Section

5   1021.11 is unconstitutional, has already leveraged, and will continue to leverage,

6   Section 1021.11's unconstitutional burden on plaintiffs for the benefit of his clients.

7   This injury is "fairly traceable to [this] defendant." Opp. at 17.

8          The Attorney General, who recognizes the chilling effect of this law (Opp. at

9   16), also benefits from how it dissuades plaintiffs from filing or joining lawsuits

10  challenging gun laws. Such individuals (not trained in the law) are unlikely to risk

11  the Attorney General's putative promise not to enforce Section 1021.11. *See*

12  Declaration of Bill Ortiz in Support of Motion for Preliminary Injunction at ¶¶ 5-

13  10. This is a chilling effect that Section 1021.11 already has on gun rights litigation.

14

15          **E.     Section 1021.11 Also Interferes Plaintiffs' Collection of Fees**

16          The Attorney General's argument in opposition relies solely on his promise

17  not to collect his own legal expenses. But Section 1021.11 does not only affect the

18  state's ability to collect fees in firearm law challenges, but also affects Plaintiffs'

19  ability to collect their own fees. Under the plain language of Section 1021.11, only

20  government defendants can be the prevailing party. CAL. CIV. PROC. CODE §

21  1021.11(b) (Deering 2022). *But see* 42 U.S.C. § 1988(b) (2022) ("In any action or

22  proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title . . . the

23  court, in its discretion, may allow the prevailing party, other than the United States,

24  a reasonable attorney's fee as part of the costs. . . .") and *United States ex rel.*

25  *Chunie v. Ringrose*, 788 F.2d 638, (9th Cir. 1986), *cert. denied*, 479 U.S. 1009

26  ("Although attorney's fees may be awarded at the appellate as well as the trial level,

27  [ ], a prevailing defendant is entitled to an award of fees only where the plaintiff's

28  action was 'frivolous, unreasonable, or without foundation.' ") (quoting *Hughes v.*

1 | *Rowe*, 449 U.S. 5, 14 (1980)) (citation omitted).

2 |     Contrary to Section 1988, gun law challengers in California must now win all

3 | claims or forfeit prevailing party status, and therefore forfeit fees. The Attorney

4 | General admits this inequitable standard applies: "Like SB 8, a party is a

5 | 'prevailing party' if the court dismisses any claim, regardless of the reason for

6 | dismissal, or enters judgment in favor of the party opposing the declaratory or

7 | injunctive relief . . . [a]s a result, as in SB 8, the only party that could possibly

8 | qualify as the 'prevailing party' is the defendant." Opp. at 13.

9 |     Not only does the Attorney General's putative promise to not enforce Section

10 | 1021.11 not bar local governments from enforcing the law, but it also does nothing

11 | to change or mitigate the fee shifting provisions of Section 1021.11 explicitly

12 | designed to ignore and contravene unambiguous federal law regarding civil rights

13 | litigation fee awards promulgated under 42 U.S.C. § 1988.  Plaintiffs are still

14 | harmed by Section 1021.11 regardless of the enforceability of the Attorney

15 | General's ethereal promise.

16 | **4.**    **CONCLUSION**

17 |     For these reasons as well as those discussed in Plaintiffs' opening brief, this

18 | Court should enjoin enforcement Section 1021.11 against all state actors.

19 | Respectfully Submitted,

20 | Dated:  November 7, 2022      **MICHEL & ASSOCIATES, P.C.**

21 | /s/ C.D. Michel

22 | For Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun

23 | Owners of California, Second Amendment Law Center, and California Rifle and Pistol

24 | Association, Incorporated

25 | **Law Offices of Donald Kilmer, APC**

26 | /s/ Don Kilmer

27 | For Plaintiff Citizens Committee for the Right to Keep and Bear Arms

28 |

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
22-cv-01461-RBM-WVG

1

**CERTIFICATE OF SERVICE**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

2

3      Case Name: *South Bay Rod & Gun Club, Inc. v. Bonta*
       Case No.: 3:22-cv-01461-RBM-WVG

4

5      IT IS HEREBY CERTIFIED THAT:

6
       I, the undersigned, declare under penalty of perjury that I am a citizen of the
7      United States over 18 years of age. My business address is 180 East Ocean
       Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled
8      action.

9

10     I have caused service of the following documents, described as:

11     **REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION**
       **FOR PRELIMINARY INJUNCTION**
12

13     on the following parties by electronically filing the foregoing on November 7, 2022
       with the Clerk of the District Court using its ECF System, which electronically
14     notifies them.

15

16      Robert Meyerhoff
        Robert.Meyerhoff@doj.ca.gov
17      Elizabeth Watson
        Elizabeth.Watson@doj.ca.gov
18      1300 I Street, Suite 125
        Sacramento, CA 95814
19

20
       I declare under penalty of perjury that the foregoing is true and correct. Executed on
21     November 7, 2022, at Long Beach, CA.

22

23                                                  */s/Christina Castron*
                                                    CHRISTINA CASTRON
24

25

26

27

28

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
                                              22-cv-01461-RBM-WVG