C.D. Michel – SBN 144258
cmichel@michellawyers.com
Joshua Robert Dale – SBN 209942
jdale@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
www.michellawyers.com

Attorneys for Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California, Second Amendment Law Center, and California Rifle and Pistol Association, Incorporated

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorneys for Plaintiff Citizens Committee for the Right to Keep and Bear Arms

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOUTH BAY ROD & GUN CLUB, INC.; GARY BRENNAN, an individual; CORY HENRY, an individual; PATRICK LOVETTE, an individual; VIRGINIA DUNCAN, an individual; RANDY RICKS, an individual; CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS; GUN OWNERS OF CALIFORNIA; SECOND AMENDMENT LAW CENTER; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED,<br><br>Plaintiffs,<br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>Defendants. | **CASE NO: 3:22-cv-01461-RBM-WVG**<br><br>**PLAINTIFFS' REPLY TO DEFENDANT BONTA'S SUPPLEMENTAL BRIEF RE MOTION FOR PRELIMINARY INJUNCTION**<br><br>[filed concurrently with Request for Judicial Notice in Support of Plaintiffs' Reply to Defendant Bonta's Supplemental Brief; Declaration of Joshua Robert Dale in Support of Plaintiffs' Reply to Defendant Bonta's Supplemental Brief; and Declaration of Jason Davis in Support of Motion for Preliminary Injunction]<br><br>Hearing Date: December 16, 2022<br>Courtroom: 5B<br>Judge: Hon. Roger T. Benitez |

GAVIN NEWSOM, in his official capacity as Governor of the State of California,

        Intervenor-Defendant.

/ / /

/ / /

/ / /

**PLAINTIFFS' REPLY BRIEF AND PROPOSED REMEDY**

**1.   THE GOVERNOR'S INTERVENTION IS FURTHER EVIDENCE THAT THE STATE DESIRES TO USE THE LAW AND THAT THE CHILLING EFFECT WILL CONTINUE**

California's Attorney General has (for now) only deflected the controversy raised by this case away from his office. By feigning to decline a defense of California Code of Civil Procedure section 1021.11, he apparently still hopes the statute can be kept on life support. The Attorney General's coordination with the Governor's office (*See* Defendant's Supplemental Brief at 2:17-25 & 9:16-25) to defend the law on the merits, while expedient, still leaves this Court's key question unanswered: how can the government's lawyers, while representing the sovereign state of California, and its public officials (and as officers of the court themselves)[1] argue in a Texas federal court that a law is unconstitutional, while admitting—even boasting—that the California law modeled on the same Texas law is constitutional in a California federal court?

That the Governor ever answers that question directly and forthrightly is doubtful. But the Governor's intervention in this case demonstrates conclusively that California's promise of non-enforcement of Section 1021.11 was always a callow, empty, cynical, and false promise. Why would the Governor seek to intervene to defend Section 1021.11 on the merits if there is truly no intention to enforce the law? The same false promise was apparently the basis for an order denying a preliminary injunction against this law on December 8, 2022 in the Eastern District of California in *Arnold Abrera v. Gavin Newsom, et al*. *See* Order on Plaintiff's Motion for Preliminary Injunction in *Abrera v. Newsom*, Case No. 2:22-cv-01162 (Dkt. No. 29 thereof), a true and correct copy of which is attached as Exhibit "A" to Plaintiffs' Request for Judicial Notice in Support of Reply to Supplemental Brief ("Pla's Supp. RJN").

---

[1] The Attorney General makes arguments in litigation on behalf of the state at the direction of the Governor. *See* CAL. GOV'T CODE §§ 12013 & 12510 (Deering 2022).

1

Additionally, the Attorney General baselessly asserts that if a District Court in Texas holds the equivalent provision in Texas is constitutional, or if a Fifth Circuit panel does so after an appeal is taken, then that should allow the Attorney General to return later and upend this Court's judgment. (Def's. Supp. Brief at 10:5-14.) The Attorney General again cites zero authority for his bizarre assertion that a ruling on litigating abortion rights should have any bearing on the finality of what this Court decides in this matter and in *Miller II* regarding the constitutional right to self defense. And even if a decision on an abortion litigation law impacted access to the courts one district in an equally dire manner as a law restricting civil rights litigation in another district, it is elementary that rulings in other circuits are merely persuasive authority. *See, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) (discussing the "development of a hierarchical system of appellate courts with clear lines of authority"). Only Ninth Circuit rulings and Supreme Court rulings bind this Court. *See id*.

In sum, the Attorney General requested supplemental briefing at the November 28, 2022 hearing to address the merits of Section 1021.11, but has made no new merits arguments in his supplemental brief. He has not even surrendered with honor and filed an unqualified non-opposition. And to this date, he still benefits from the law's effect in his defense of firearms law challenges.[2]

California's constitutional nihilism is on full display in this case.

---

[2] *See, e.g.*, September 19-22, 2022 email chain between Deputy Attorney General Rob Meyerhoff and Plaintiffs' counsel regarding meeting-and-conferring on Defendant's proposed FED. R. CIV. P. 12 motion in *Lance Boland, et al. v. Robert Bonta, et al.*, Case No. 8:22-cv-01421 (C.D. Cal.) (conditioning non-enforcement of Section 1021.11 regarding plaintiffs' voluntary dismissal of a claim in that gun law challenge only if plaintiffs stipulated to dismiss with prejudice), Exhibit "A" to the Declaration of Joshua Robert Dale filed in Support of the Supplemental Reply on Plaintiffs' Motion for Preliminary Injunction. And see Declaration of Jason Davis in Support of Motion for Preliminary Injunction, filed concurrently herewith (discussing the refusal of the Attorney General to agree to waive Section 1021.11 fees in another gun law challenge. *Roe, et al., v. United States, et al.*, Case No.: 1:19-cv-270 (E.D. Cal.))

## 2. IN LIGHT OF THE SEVERE CHILLING EFFECT OF THE STATUTE, AN APPROPRIATE REMEDY WILL INCLUDE THE OPPORTUNITY FOR NOTICE TO ALL AFFECTED GOVERNMENT ENTITIES

Governor Newsom's intervention in this matter, while inconvenient, has the advantage of putting California's Treasury at the disposal of this Court to achieve an equitable result. "While a State may not, without its consent, be sued in a Circuit Court of the United States, such immunity may be waived; and if it voluntarily becomes a party to a cause and submits its rights for judicial determination it will be bound thereby." *Gunter v. Atl. Coast Line R.R.*, 200 U.S. 273, 277 (1906).  The solution proposed herein can rest on the same findings the Court must make to grant the Motion for Preliminary Injunction in the first place.

As this Court has already noted in its December 1st Order on Article III standing (Dkt. No. 28), even if the Attorney General could make an enforceable promise not to prosecute Section 1021.11 and bind the state's 58 District Attorneys, the Attorney General cannot, without lawful authority, bind "other government attorneys such as county counsel or city attorneys." *See* Court's Dec. 1, 2022 Order, at 9:1-2.

There are 58 counties in California, and at least 482 municipal corporations that make up California's cities. All of these cities and counties are charged with enforcing California laws regulating firearms (e.g., issuance of CCW permits by Chiefs of Police and County Sheriffs) and any laws, ordinances, and regulations they may pass in their own right, some of which are already being challenged.[3]

If this Court issues a permanent injunction against the California Attorney General's office that is binding only his successors and the state's 58 District Attorneys – Plaintiffs would potentially have to relitigate this matter against the 540

---

[3] *See, e.g., National Association for Gun Rights, Inc., v. City of San Jose,* Case No. 5:22-cv-00501 (N.D. Cal.) (challenging special taxes and permits imposed on gun owners in the City of San Jose); and *California Rifle and Pistol Assoc., Inc., et al. v. City of Glendale,* Case No. 2:22-cv-07346 (C.D. Cal.) (challenging the City of Glendale's expansive "sensitive places" ordinance prohibiting where licensed CCW holders may carry in the city for self defense).

other state actors identified in Section 1021.11. This law gives them the same power to bankrupt law firms, bankrupt the civil rights organizations they represent, and thus chill the Second Amendment rights of people who need representation.

If this Court were to issue only a Preliminary Injunction out of the December 16th hearing against the California Attorney General and District Attorneys, and set a trial for permanent injunctive relief sometime in early summer of 2023, that would provide the time necessary to achieve service (providing notice and an opportunity to be heard) to those other 540 state actors, thus making this Court's Order a complete remedy to uphold the Constitutional rights of the Plaintiffs.

Of course, the California Legislature can just as easily repeal Section 1021.11 when it reconvenes on January 4, 2023. There is precedent for this to happen. To blunt the unconstitutional effects of the prohibition in California Assembly Bill 2571 (2022) prohibiting speech promoting firearms to minors (after a lawsuit was filed challenging it), the Legislature amended portions of that law with Assembly Bill 160 (2022) while a motion for preliminary injunction was pending. *See* Order Denying Plaintiffs' Motion for Preliminary Injunction in *Junior Sports Magazine Inc. v. Bonta,* No. 2:22-cv-04663 (C.D. Cal.), 2022 U.S. Dist. LEXIS 193730.

Or, as the Court suggested during the hearing on November 28, 2022, California could enter into a consent decree. That decree would have to include the necessary authority to bind California's cities and counties, perhaps with the latter's consent, which can now be coordinated through the Governor's office.

Absent capitulation by repealing the law or cooperation via consent decree, California should bear the burden of this court acquiring jurisdiction over all 540 counties and cities, and managing the status of that service.

**A.     Defendants Come to the Court with Unclean Hands**.

California, through the lawyers representing its Governor and Attorney General in Texas, has called the same "fee-shifting scheme" language used by Code of Civil Procedure section 1021.11 "an unprecedented attempt to thwart judicial

4
PLAINTIFFS' REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEF
3:22-cv-01461-RBM-WVG

1  review," and "an attempt by Texas to shield its laws from judicial review." See
2  Defendant's Opposition to Motion for Preliminary Injunction ("Def's Opp.") (Dkt.
3  No. 19) at 2:2-4. "The Attorney General has previously recognized and criticized the
4  potential chilling effect of that fee shifting mechanism in the context of SB 8, and
5  has acknowledged that California's SB 1327 was a reaction to SB 8—founded on
6  the Legislature's view that if Texas were allowed to employ the problematic
7  mechanisms in SB 8 to advance its policy interests, then California should be
8  allowed to use the same mechanisms to advance its own policy interests." Def's
9  Opp. at 16:24-17:2.

Despite these characterizations of the law's challenged language as chilling, problematic, a scheme unprecedented, and an attempt to thwart judicial review, the Attorney General is now merely stepping aside so that the Governor can somehow try to defend Section 1021.11 and keep it from being enjoined.

The sole legal argument made so far by the Attorney General, in the only true Opposition Brief filed to date by his office, was that Plaintiffs lacked injury to support an injunction because the Attorney General had not and would not enforce the law. And now with the Attorney General stepping aside, and Governor's intervention in this suit, we know that the State's promise of "non-enforcement" was a cynical lie, a pretext, a tactic of delay sanctionable under Federal Rule of Civil Procedure 11. Defendant's "lack of injury" opposition argument has already been shot down by the Court (*See* Court's Order of Dec. 1, 2022), after a 90-minute hearing, and is now the law of the case.

California refusing to defend an indefensible state law is not a novel concept. When a predecessor Attorney General opposed a state policy (a ban on same-sex marriage) that he believed violated fundamental rights under the U.S. Constitution, he had no problem weighing in on the controversy to voice his opposition. *See Strauss v. Horton*, 46 Cal. 4th 364, (2009).  After the California Supreme Court upheld Proposition 8, in *Strauss,* Attorney General Brown simply, and

unequivocally, refused to defend the law in a federal court challenge. *See Perry v. Brown*, 671 F.3d 1051, 1071 n.9 (9th Cir. 2012), *vacated and remanded, Hollingsworth v. Perry*, 570 U.S. 693 (2013), *on remand, appeal dismissed*, *Perry v. Brown*, 725 F.3d 1140 (9th Cir. 2013).

In this case, California's chief law officer hasn't found the courage of his predecessor to so actively oppose a California law that he argues violates the U.S. Constitution in Texas, nor has he unequivocally (and honorably) waived the white flag of non-opposition when that law is challenged in a federal court here in California. He merely side-steps that duty and now Governor Gavin Newsom is assuming the sophistic task of defending Section 1021.11.

In light of the machinations thus far from California's Executive Branch, it is unlikely the Governor will acknowledge or accede to the unconstitutionality of the law. Absent the Court granting the relief requested by Plaintiffs <u>and</u> remedying the potential ongoing chilling effect of the law, Plaintiffs expect local governments to use their taxpayer-backed resources to punish and bankrupt those who dare challenge unconstitutional gun restrictions.

### B.  The Scope of the Problem and Defendants' Conduct Warrants a Proportional Remedy

It is also possible that the Attorney General's non-opposition "opposition," and the Governor's late intervention, are really just a subtle signal to powerful deep-pocketed local governments in California (e.g., the cities and counties of Los Angeles and San Francisco) who can just as easily leverage of the chilling effect of Section 1021.11; and that they are now to take up the mantle against Second Amendment plaintiffs, Second Amendment organizations, and the law firms litigating Second Amendment cases.

For example, California local governments are getting quite aggressive in leveraging creative new legal theories to punish litigants seeking to vindicate constitutional rights by suing municipal governments. *See generally Vacation Rental*

*Owners and Neighbors of Rancho Mirage, et al., v. City of Rancho Mirage, et al.* No. E077118 (Cal. Ct. App. 4th Dist.). In that case, the City of Rancho Mirage argued in the trial court that California's anti-SLAPP statute (CAL. CIV. PROC. CODE § 425.16) required dismissal in the public interest of a lawsuit challenging a city ordinance. The city also sought fees and costs against the plaintiffs bringing the challenge. The City claimed that the ordinance that was being challenged by the plaintiffs in the underlying suit was "government expression" and was therefore protected speech under the anti-SLAPP doctrine. The trial court rightly disagreed and denied the motion. But a city with deep pockets can impose costs on civil rights plaintiffs that can still have the effect of discouraging future litigation.

  The denial of the anti-SLAPP motion is being appealed by Rancho Mirage (yet more costs being imposed by a deep-pocketed government defendant), and the *Rancho Mirage* case is fully briefed, but oral argument has not yet been set. *See also* May 21, 2019 Notice of Appearance of Counsel filed in *G. Mitchell Kirk, et al. v. City of Morgan Hill, et al.*, Santa Clara County (Cal.) Superior Court Case No. 19CV346360 (appearance on behalf of Defendant City of Morgan Hill by lawyers for national gun control group Giffords to defend a local gun law from legal challenge), which is attached as Exhibit "B" to Pla's Supp. RJN.

  This kind of strategic effort to trample Second Amendment litigation is part and parcel with Section 1021.11, which is why an order from this Court that is also enforceable against California's cities and counties is needed to make Plaintiffs whole.

  As noted, there are 58 counties in California. It is plausible that the Attorney General's supervisory role over District Attorneys in those counties will be sufficient to make this Court's orders issued against the Attorney General, and now the Governor, enforceable against them too. *See* CAL. CONST. art. V, § 13; and CAL. GOV'T CODE §§ 12550-12554 (Deering 2022).

  But, of course, County Counsel in those same 58 counties do not fall under the

supervisory power of the Attorney General. And then there are 482 cities in California. Those city attorneys and city governments are also not bound by orders issued against the Attorney General. These "Doe Defendants" must now be brought into this matter if the chilling effect of Section 1021.11 is to be truly stopped.

California Government Code section 12240 mandates the creation of a roster of "State and local public officials of California." Section 12241 requires the Secretary of State to make copies of said roster available to any person requesting them. Furthermore, Article V, Section 13 of the California Constitution mandates that "It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced."

As noted above, the Attorney General could have capitulated early and stated his reasons to prevent Section 1021.11 from having even the appearance of endorsement by his office. But Rob Bonta is no Jerry Brown, and in any event, at this stage of the litigation, that opportunity has been abandoned. Perhaps the path of a consent decree with cities and counties being brought into a voluntary agreement to nullify Section 1021.11 can still be achieved.

But until such a development (or outright repeal of the law), the only choice left open to achieve that uniform effect on the law requires that the State should bear the costs and the burden of making that order enforceable against California's cities and counties.

### 3. AVAILABLE REMEDIES

First, there needs to be an order joining all 540 separate local entities. It is possible that a vast majority of those local governments would elect to become part of a voluntary consent decree without the necessity of formal service and summons. But issuing a separate summons, at a fee of $402 each, for the 540 local entities, will cost Plaintiffs approximately $217,080.

There are only three ways of achieving service of process on these 540 cities and counties in California:

(1) California Code of Civil Procedure section 416.50 allows for service of process on public entities by delivering a copy of the summons and complaint "to the clerk secretary, president, presiding office, or other head of [a] governing body."

(2) Section 415.30 authorizes service by mail utilizing a notice and acknowledge of receipt protocol similar to Federal Rule of Civil Procedure 4.

(3) Finally, Section 415.50 authorizes service by publication upon a finding by this Court that a necessary party to the action "cannot with reasonable diligence be served in another manner specified" under California law.

The time, expense, and logistics of personally serving 58 counties and 482 cities (540 separate entities) is an enormous undertaking. Even at $150 per service, it would cost an additional $81,000 to have process servers personally serve the necessary documents on 540 local entities. Add thousands of more dollars in support personnel costs for document management, and the cost of making this order enforceable against those 540 local government entities is more than $300,000. Double that expenditure for the related case of *Miller, et al., v. Bonta*.

One equitable solution is to compel California to bear the expense of seeking voluntary consent from those 540 local entities, or of filing the motion for joinder and absorbing the costs of issuing 540 new summons.

The Court should also compel California to manage the logistical difficulties they have created with their law, including filing reports with this Court on the status of joining the parties at appropriate intervals. Then, when service is achieved, waived, or jurisdiction is consented to by these 540 new Doe defendants, the Court can schedule a trial on the permanent injunction.

Imposing this procedural duty now on the state is justified on the same grounds as granting the preliminary injunction on substantive grounds. The balance of hardships tips sharply in favor of Plaintiffs and against Defendants, who have obstructed and delayed these proceedings with frivolous filings, insisted on hearings after tentative rulings and then presented no new authorities or arguments at that

hearing, refused to answer the Court's questions about a substantive defense at said hearing, and refused to even discuss consent decrees. The Attorney General engages in these delay tactics that cause more cost to Plaintiffs and more use of the Court's resources, all so he can finally say that he cannot ethically defend the law. Yet California's official position—in the intervenor's latest filing picking up where the Attorney General left off—is *still* one of boasting that it has modeled its law against the Second Amendment here on a Texas abortion law that California unabashedly claims is patently unconstitutional.

Furthermore, the likelihood is that California will eventually bear the costs of joinder and service on these 540 local governments anyway should Plaintiffs be named the prevailing party in this action. This all makes a compelling case for this remedy, or at least presenting California with a choice of remedies: (1) California can repeal its law, (2) Defendant Bonta can issue an unqualified Attorney General Opinion that Section 1021.11 is unconstitutional, (3) California can persuade all 540 local entities to consent to jurisdiction as part of a consent decree, or (4) this Court can order California to use its resources to secure that jurisdiction the hard way.

Respectfully submitted,

Dated: December 13, 2022         **MICHEL & ASSOCIATES, P.C.**

/s/ C.D. Michel
For Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California, Second Amendment Law Center, and California Rifle and Pistol Association, Incorporated

**Law Offices of Donald Kilmer, APC**

/s/ Don Kilmer
For Plaintiff Citizens Committee for the Right to Keep and Bear Arms

# CERTIFICATE OF SERVICE
## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *South Bay Rod & Gun Club, Inc. v. Bonta*
Case No.: 3:22-cv-01461-RBM-WVG

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

    I have caused service of the following documents, described as:

**PLAINTIFFS' REPLY TO DEFENDANT BONTA'S SUPPLEMENTAL BRIEF RE MOTION FOR PRELIMINARY INJUNCTION**

on the following parties by electronically filing the foregoing on December 13, 2022 with the Clerk of the District Court using its ECF System, which electronically notifies them.

| | |
|---|---|
| Elizabeth Watson | Bradley A. Benbrook |
| Elizabeth.Watson@doj.ca.gov | Stephen M. Duvernay |
| Ryan Richard Davis | Benbrook Law Group, PC |
| Ryan.Davis@doj.ca.gov | 701 University Avenue, Suite 106 |
| 1300 I Street, Suite 125 | Sacramento, CA 95825 |
| Sacramento, CA 95814 | brad@benbrooklawgroup.com |
| | |
| David H. Thompson | Robin B. Johansen |
| Peter A. Patterson | Thomas A. Willis |
| Joseph O. Masterman | Kristen Mah Rogers |
| Cooper & Kirk, PLLC | Inez Kaminski |
| 1523 Hampshire Avenue, NW | Olson Remcho, LLP |
| Washington, DC 20036 | 1901 Harrison Street, Suite 1550 |
| dthompson@cooperkirk.com | Oakland, CA 94612 |
| | twillis@olsonremcho.com |

    I declare under penalty of perjury that the foregoing is true and correct. Executed on December 13, 2022, at Long Beach, CA.

                                                  */s/Christina Castron*
                                                  CHRISTINA CASTRON