| | |
|---|---|
| 1 | C.D. Michel – SBN 144258 |
| 2 | cmichel@michellawyers.com |
|   | Joshua Robert Dale – SBN 209942 |
| 3 | jdale@michellawyers.com |
|   | Konstadinos T. Moros – SBN 306610 |
| 4 | kmoros@michellawyers.com |
|   | MICHEL & ASSOCIATES, P.C. |
| 5 | 180 E. Ocean Blvd., Suite 200 |
|   | Long Beach, CA 90802 |
| 6 | Telephone: (562) 216-4444 |
|   | Facsimile: (562) 216-4445 |
| 7 | www.michellawyers.com |

Attorneys for Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California, Second Amendment Law Center, and California Rifle and Pistol Association, Incorporated

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorneys for Plaintiff Citizens Committee for the Right to Keep and Bear Arms

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH BAY ROD & GUN CLUB, INC.; GARY BRENNAN, an individual; CORY HENRY, an individual; PATRICK LOVETTE, an individual; VIRGINIA DUNCAN, an individual; RANDY RICKS, an individual; CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS; GUN OWNERS OF CALIFORNIA; SECOND AMENDMENT LAW CENTER; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendants. | **CASE NO: 3:22-cv-01461-RBM-WVG** <br><br> **PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT NEWSOM'S SUPPLEMENTAL BRIEF** <br><br> Hearing Date: December 16, 2022 <br> Courtroom: 5B <br> Judge: Hon. Roger T. Benitez |

PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT'S BRIEF
3:22-cv-01461-RBM-WVG

| | |
|---|---|
| 1 | |
| 2 | GAVIN NEWSOM, in his official capacity as Governor of the State of California, |
| 3 | |
| 4 | Intervenor-Defendant. |
| 5 | |

6  / / /
7  / / /
8  / / /

## 1. INTRODUCTION

During the November 28, 2022 hearing, after a tentative ruling had already been issued on the standing issue, this Court asked the Attorney General's lawyers the same essential question repeatedly: How can the government's lawyers, while representing the sovereign state of California, argue in a Texas federal court that a law is unconstitutional, while arguing—even boasting—that the California law modeled on the same Texas law is constitutional in a California federal court? No satisfactory answer was given. Instead, the Attorney General filed an equivocating Supplemental Brief declining to defend the law.

Intervenor-Defendant's Supplemental Brief (Dkt. No. 32) ("Governor's Brief") does not provide a satisfactory answer either. The Brief impermissibly argues against the law of the case, wherein this Court already found that Plaintiffs have alleged an injury and have standing. *See* Court's Order of Dec. 1, 2022 (Dkt. No. 26).

It is still curious why so much effort is being made to defend this law which the Governor's own brief refers to as "outrageous and objectionable." *See* Governor's Brief at 8:18-19. The Governor's Brief is not a *legal* brief. It is a *political* brief. Section 1021.11, along with the rest of SB 1327, was passed at the Governor's urging as a political stunt.

The Governor's overarching argument appears to be: "Texas is committing political violence against its citizens with SB 8. The Texas law is outrageous and should be declared unconstitutional. But if Texas is allowed to abuse its citizens, then California should be allowed to abuse its citizens too." That kind of race-to-the-bottom antebellum federalism gave us noxious and thoroughly repudiated cases like *Dred Scott v. Sandford,* 60 U.S. 393 (1857). The Fourteenth Amendment was specifically ratified to purge from American constitutional jurisprudence that kind of

thinking. Of course, what happens in a Texas district court[1] (or Fifth Circuit) has no bearing on this Court.

As to the cursory and limited substantive arguments made on the merits against Plaintiffs' claims, the Governor's Brief drips with intellectual dishonesty. As one notable example, he argues Section 1021.11 is not unconstitutionally vague because "large-capacity magazines" are plainly a restriction on firearms. Governor's Brief at 14:21-15:3. As this Court may recall, the State of California is taking the exact opposite position in *Duncan v. Bonta*. There, the State is currently arguing that the plain text of the Second Amendment does not apply to its magazine capacity law because magazines are "accoutrements" rather than "arms." *See* Defendant's Supplemental Brief in Response to the Court's Order of September 26, 2022 at 17:13-17, *Duncan v. Bonta*, Case No. 17-cv-1017 (Dkt. No. 118). Plaintiffs thus remain unclear even after reading the State's own arguments in two separate cases whether Section 1021.11 would apply to their magazine capacity challenge in *Duncan*.

The Governor's Brief tries to relitigate, without deigning to file a motion for reconsideration, issues that this Court has already decided in its December 1st Order. The law of the case cannot be disturbed just because of the Governor's late intervention.

**2.     BACKGROUND ON GOVERNOR NEWSOM'S INVOLVEMENT**

Governor Newsom initially expressed outrage over the Supreme Court's

---

[1] Even if the Texas case were relevant here beyond mere persuasive authority, the fee-shifting aspect of the SB 8 has not been decided yet. Recall that the Supreme Court ruled on the private right of action aspect of SB 8 and decided that it could not enjoin state-court clerks from docketing lawsuits. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). Yet SB 8's fee shifting provision is still being challenged, with the most recent apparent development being in April 2022. "Having received the ruling of the Texas Supreme Court that named official defendants may not enforce the provisions of the Texas Heartbeat Act, S.B. 8, this court REMANDS the case with instructions to dismiss all challenges to the private enforcement provisions of the statute *and to consider whether plaintiffs have standing to challenge Tex. Civ. Prac. & Rem. Code Ann. Sec. 30.022.*" *Whole Woman's Health v. Jackson*, 31 F.4th 1004, 1006 (5th Cir. 2022) (emphasis added).

decision in *Whole Woman's Health v. Jackson* by promising to use the same tactics Texas used against gun owners in California. Complaint, ¶¶ 1-2. "Texas and [Gov.] Greg Abbott and their Republican leadership, if they're going to use this framework to put women's lives at risk, we're going to use it to save people's lives here in the state of California."[2]

But the Governor knew from the start that at least the fee-shifting provision in the law was unconstitutional because the Attorney General of California had argued as much as to the equivalent measure in Texas's version of the law. *See Br. of Mass. et al. as Amici Curiae in Supp. of Pet'rs* at 21, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021). Further, the legislative history of Section 1021.11 confirms that both chambers viewed the fee-shifting provision as unconstitutional, but passed it anyway at the Governor's request. The Assembly's judiciary committee noted that the law "likely would not be endorsed by this Committee but for the fact that it is included in this bill and modeled on Texas law." S. BILL 1327, A. JUD. COMM. ANALYSIS (Cal. June 10, 2022).

The Governor, unfazed, went forward with signing a law he knew was unconstitutional. He then ran ads touting SB 1327 in Texas newspapers. Complaint, ¶ 20.

## 3. ARGUMENT

### A. This Court Has Already Ruled on Standing

As an initial matter, the Governor's attempts to resurrect the Attorney General's standing arguments, Governor's Brief at 15:25-16:9, should be rejected. "When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618 (1983). Of course, a Court can revisit its prior decisions to correct

---

[2] Dan Walters, *Newsom's new gun control bill just a stunt*, CAL MATTERS (July 27, 2022), <https://calmatters.org/commentary/2022/07/newsoms-new-gun-control-bill-just-a-stunt/> (as of September 12, 2022).

serious errors, but the law of the case doctrine posits that it should not do so unless that decision was "clearly erroneous and would work a manifest injustice." *Id*. at n.8.

Here, the Governor does not present any serious argument to suggest that this Court's prior ruling was clearly erroneous. Plaintiffs should not have to rebut the same arguments over and over.

### B. The SB 8 Litigation Has No Bearing on This Case

Governor Newsom argues, like the Attorney General before him, that "if Texas is ultimately allowed to maintain its fee-shifting rule in SB 8, then so too must California be allowed to apply its identical rule in SB 1327." Governor's Brief at 2:14-16. Also like the Attorney General, the Governor cites no authority for this "rule." To reiterate, even if a decision on an abortion litigation law impacted access to the courts in one district in an equally dire manner as a law restricting civil rights litigation in another district, that decision is merely persuasive authority. *See, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) (discussing the "development of a hierarchical system of appellate courts with clear lines of authority"). Only Ninth Circuit rulings and Supreme Court rulings bind this Court.

### C. Section 1021.11 Violates the Supremacy Clause

As to whether Section 1021.11 violates the Supremacy Clause, Governor Newsom bizarrely cites the legal briefing of his nemesis, the State of Texas, as some kind of legal authority. Governor's Brief at 5:12-6:11. The Texas district court has not yet ruled on the constitutionality of SB 8's fee shifting provision, but even if it had, it would only be persuasive authority.

Newsom goes on to argue there is no conflict between state and federal law if a federal court orders that Plaintiffs be awarded fees (or decides neither party should get fees) because "nothing in S.B. 1327 prevents simultaneous awards of attorney's fees to a plaintiff under §1988 and to a defendant under state law in a mixed-result case". *Id* at 6:12-14. But that nonsensical argument denies the existence of math.

A hypothetical example is in order: Suppose a plaintiff prevails on all but one

of his firearm-related claims, and a federal court orders fees under §1988 in the amount of $500,000. But then, the State files suit in a California court pursuant to Section 1021.11 because the plaintiff failed on one of his claims. If the State is awarded $1,000,000 for its legal expenses, then the plaintiff has lost the original $500,000 awarded to him by the federal court, and then an additional $500,000. The fee award under federal law was obliterated, and then some. The intent of § 1988 would have obviously been frustrated.

And this Court need not rely only on such hypothetical exercises, because the law on this is clear, not unsettled as the Governor argues: "We agree with the Fifth Circuit that a state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award." *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982); *see also Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233 (4th Cir. 2001). Even California state courts have long since addressed this question. "It follows from [the legislative history of § 1988] and from the Supremacy Clause that the [attorneys] fee provision is part of the § 1983 remedy whether the action is brought in federal or state court." *Green v. Obledo*, 161 Cal. App. 3d 678, 682-83 (Ct. App. 1984); see also *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 764 (Ct. App. 2002).

These cases were also cited in the Plaintiffs' opening brief for their motion for preliminary injunction, which was filed over two months ago. Yet despite such long notice of Plaintiffs' arguments, the Governor does not even attempt to address those citations and misleads the Court by suggesting it is an open question.

### D. Under Section 1021.11, Plaintiffs Effectively Have No Right to Petition for the Redress of Second Amendment-related Grievances

In the section of his brief about the right to petition the courts for redress of grievances, the Governor once again talks at length about *Whole Woman's Health* and what the Texas attorney general has argued. Governor's Brief at 8:6-25. The Governor's brief makes a misleading assertion that concerns about fee shifting

5
PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT'S BRIEF
3:22-cv-01461-RBM-WVG

provision of SB 8 "did not move the Supreme Court in *Whole Woman's Health*." Governor's Brief at 8:6-7. But the Supreme Court did not consider or decide the fee-shifting aspect of SB 8 in its ruling. In this case, the Parties are litigating Section 1021.11, and on that topic, the Governor presents no compelling argument in its defense in terms of Plaintiffs' First Amendment claim.

He admits that the fee-shifting provisions like the one at issue in this case are "outrageous and unconstitutional." Governor's Brief at 8:18-20. Yet the Governor argues that because such provisions have not *yet* been held unconstitutional in Texas, that California should be allowed to enforce Section 1021.11. But that is exactly what the Parties are litigating *here*. A law cannot be upheld as constitutional just because no court has ruled on the issue before.

The Governor's Brief equivocates attorney fees (and litigation costs) with court filing fees, arguing that both merely "increase the potential cost of litigating above and beyond a plaintiff's own cost of hiring counsel." *Id*. at 9:8-10. While a federal court filing fee increases the cost by a few hundred dollars, that is a knowable amount that allows would-be plaintiffs to budget accordingly before filing a lawsuit, and it is also not a prohibitive expense. In contrast, Section 1021.11 imposes a financial burden that could easily stretch into the millions of dollars even when a plaintiff mostly *prevails* in their lawsuit.

Ironically, the Governor analogizes Section 1021.11 to California's anti-SLAPP law, which is designed to deter strategic lawsuits meant to silence free speech. *Id*. at 9:11-14. But that law only shifts fees if the plaintiff has filed a baseless or frivolous lawsuit, which is tremendously different standard than Section 1021.11's all-or-nothing standard. And it's notable that California's anti-SLAPP standard of sanctioning baseless or frivolous lawsuits cited by the Governor is much more equitable to plaintiffs, and is very similar to the § 1988 standard for awarding a prevailing government defendant its fees that Section 1021.11 attempts to sidestep. Furthermore, California's anti-SLAPP law is designed to terminate abusive

litigation by deep-pocket plaintiffs early in that process, if that litigation is designed to trample the exercise of fundamental rights. Section 1021.11's anti-anti-SLAPP policy is designed to leverage the deep pockets of government defendants after the litigation is concluded and plaintiffs seeking to vindicate Second Amendment rights are not 100 percent successful.

And while it is true that one-way fee-shifting provisions are not uncommon, Governor's Brief at 11:16, none of the examples the Governor cites serve to chill the filing of lawsuits even by individual litigants with *meritorious* claims. All of the examples the Governor provides involve individuals who prevail in their lawsuits being awarded fees either against the government, their employer, or an insurer. *Id*. at 11:16-20.

Finally, the Governor argues that none of the other fee-shifting provisions he cited amount to content or viewpoint-based discrimination. *Id*. at 11:20-22. "[R]ather, each reflects a legislative judgment about where to assign the costs and risks of litigation in particular areas of the law." *Id*. That's true of the laws the Governor listed. It is not true of Section 1021.11, which applies solely to lawsuits challenging firearms laws (content-based discrimination) and only against plaintiffs challenging such laws, never the government defending them (viewpoint-based discrimination). In empowering government at the expense of plaintiffs seeking to vindicate their Second Amendment rights, California is obstructing challenges to its laws in a way that is about as viewpoint and "content-based as it gets." *See Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2346 (2020).

Further, because Newsom argues that Plaintiffs' Equal Protection Clause claim fails because their First Amendment argument fails (Governor's Brief at 12:9-13:16), the reverse is also true. If this Court determines Plaintiffs have prevailed on their First Amendment claim, they should also prevail on their Equal Protection

claim.[3]

### E. Interference With the Right to Counsel is Not Analogous to Punishing Attorney Misconduct

The Governor equates an attorney deciding to take on a firearms-related lawsuit to attorney misconduct. Governor's Brief at 13:21-23. This is a startling admission considering that in the same brief, the Governor denies that the intent of Section 1021.11 is to punish. *See* Governor's Brief at 15:9-21 (arguing the law is not a Bill of Attainder).

The issue here of course is that by taking on firearm-related cases in California, attorneys may find themselves essentially cornering themselves into malpractice. Because attorneys are liable for fees alongside their clients if even one claim fails, attorneys would feel immense financial pressure to be very conservative in their claims, perhaps only bringing a single general Second Amendment-based challenge, and leaving other less viable (but colorable) claims unpled, in violation of their duties to the client. More likely, they would cease taking firearm-related cases entirely to avoid such a predicament. Even if they didn't, they'd have to limit their clientele to only well-funded clients. If a potential client who wants to bring a Second Amendment challenge has limited assets, then the government would only have the attorney to go after for its fees.

This is not a mere "economic disincentive." Governor's Brief at 13:27. Rather, it is effectively an economic *prohibition*, at least for attorneys who would otherwise represent poorer plaintiffs in firearm-related lawsuits.

### F. Section 1021.11 is Fatally Vague

The Governor insists that Section 1021.11 is not unconstitutionally vague

---

[3] Though Plaintiffs can also prevail even if this Court found that the right to petition for redress of grievances is not violated by Section 1021.11, because the law still provides for unique treatment for firearm-related challenges. "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." *North Pacifica, LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir 2008).

8

PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT'S BRIEF
3:22-cv-01461-RBM-WVG

because it "applies only to suits involving challenges to 'any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms.' " Governor's Brief at 14:18-20, citing CAL. CIV. PROC. CODE § 1021.11(a). In arguing why the law is not vague, Newsom refers to one of the examples of a gray area Plaintiffs cited in their brief (magazine capacity restrictions) and insists that that example is in fact not vague, because California's magazine capacity law plainly restricts firearms. As noted above, that argument contradicts the State's position in the ongoing case of *Duncan v. Bonta*.

Does Section 1021.11 itself "regulate firearms?" It would seem to, given its effect on the *litigation* surrounding firearms. But it isn't all that clear whether it does or doesn't. Or what of *Rhode v. Bonta*, another case currently pending before this Court? That case concerns ammunition. While ammunition is obviously essential to firearms, it again is not the firearm itself. Does Section 1021.11 apply? It's not clear to Plaintiffs whether even the Governor knows what this basket-case of a law does and does not effect. The law is irredeemably vague.

### G.    Section 1021.11 Has No Purpose Besides Punishment

The Governor says that Section 1021.11 is not a Bill of Attainer because the legislative purpose of fee-shifting statutes is to create additional incentives or disincentives to litigation at the outset, and SB 1327 is no different in that respect. Governor's Brief at 15:10-21. The Governor's admission that the purpose of Section 1021.11 is to disincentivize firearm-related litigation is a concession that supports Plaintiffs' Equal Protection claim. But there is also no doubt that Section 1021.11 is meant to punish gun rights litigants, because there is no permissible rational purpose for the law otherwise (dissuading constitutional challenges is not a permissible purpose).  The Governor cites to no legislative intent to save costs, stop abuse of the courts, or any other potentially non-punitive government interest in the law.

However, the one justification for law the Governor expressly and repeatedly states is that it is revenge against Texas and the Supreme Court given how he

constantly tries to tie the two together. *See* Governor's Brief at 15:25 ("Section 1021.11 should rise or fall in tandem with S.B. 8."). In that same brief however, the Governor gives away the game when he equates bringing firearm-related lawsuits to attorney misconduct. *Id*. at 13:21-25. And the legislative history of Section 1021.11 makes its punitive intent clear:

> While the goal of repurposing the Texas law may be sound, these problematic provisions may not justify those ends. They insulate government action from meaningful challenge by creating a strong, **punitive** deterrent for any that try and in the end, may violate due process guarantees.

S. BILL 1327, S. FLOOR ANALYSIS (Cal. June 28, 2022) (emphasis added); *see also* S. BILL 1327, A. JUD. COMM. ANALYSIS (Cal. June 10, 2022) (a "lose-lose scenario for plaintiffs").

### 4.  CONCLUSION

Nothing the Governor has argued provides justification for allowing a law whose express purpose is to chill Second Amendment litigation to continue to do just that.  The Court should immediately enjoin Section 1021.11.

Respectfully submitted,

Dated:  December 13, 2022            **MICHEL & ASSOCIATES, P.C.**

/s/ C.D. Michel
For Plaintiffs South Bay Rod & Gun Club, Inc. Gary Brennan, Cory Henry, Patrick Lovette, Virginia Duncan, Randy Ricks, Gun Owners of California, Second Amendment Law Center, and California Rifle and Pistol Association, Incorporated

**Law Offices of Donald Kilmer, APC**

/s/ Don Kilmer
For Plaintiff Citizens Committee for the Right to Keep and Bear Arms

# CERTIFICATE OF SERVICE
# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *South Bay Rod & Gun Club, Inc. v. Bonta*
Case No.: 3:22-cv-01461-RBM-WVG

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

    I have caused service of the following documents, described as:

**PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT NEWSOM'S SUPPLEMENTAL BRIEF**

on the following parties by electronically filing the foregoing on December 14, 2022 with the Clerk of the District Court using its ECF System, which electronically notifies them.

| | |
|---|---|
| Elizabeth Watson<br>Elizabeth.Watson@doj.ca.gov<br>Ryan Richard Davis<br>Ryan.Davis@doj.ca.gov<br>1300 I Street, Suite 125<br>Sacramento, CA 95814 | Bradley A. Benbrook<br>Stephen M. Duvernay<br>Benbrook Law Group, PC<br>701 University Avenue, Suite 106<br>Sacramento, CA 95825<br>brad@benbrooklawgroup.com |
| David H. Thompson<br>Peter A. Patterson<br>Joseph O. Masterman<br>Cooper & Kirk, PLLC<br>1523 Hampshire Avenue, NW<br>Washington, DC 20036<br>dthompson@cooperkirk.com | Robin B. Johansen<br>Thomas A. Willis<br>Kristen Mah Rogers<br>Inez Kaminski<br>Olson Remcho, LLP<br>1901 Harrison Street, Suite 1550<br>Oakland, CA 94612<br>twillis@olsonremcho.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 14, 2022, at Long Beach, CA.

                                                */s/Christina Castron*
                                                CHRISTINA CASTRON

CERTIFICATE OF SERVICE