UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH BAY ROD & GUN CLUB, Inc., et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>Rob Bonta, Attorney General of California, et al.,<br><br>                              Defendants. | Case No.: 22cv1461-BEN (JLB)<br><br>**OPINION AND ORDER ENJOINING ENFORCEMENT OF CALIFORNIA CODE OF CIVIL PROCEDURE § 1021.11** |

## I. INTRODUCTION

"It is cynical." "It is an abomination." "It is outrageous and objectionable." "There is no dispute that it raises serious constitutional questions." "It is an unprecedented attempt to thwart judicial review." Such are the Intervenor-Defendant Governor's expressed views regarding the fee-shifting provisions of a Texas law (S.B. 8) and, at least by implication, of California's § 1021.11. It is "blatantly unconstitutional," says Defendant Attorney General Rob Bonta.[1] For the reasons that follow, as they may apply to S.B. 8, but apply clearly to § 1021.11, § 1021.11 is declared unconstitutional.

---

[1] To his credit, given the obvious, the Attorney General has refused to defend § 1021.11.

Therefore, Defendants are permanently enjoined throughout the state from enforcing or taking any action to seek attorney's fees and costs pursuant to § 1021.11.

## II. BACKGROUND

Plaintiffs seek injunctive relief from a newly-enacted California state law adding an attorney's fees and costs-shifting provision enacted as section 2 of Senate Bill 1327, codified at California Code Civil Procedure § 1021.11.[2] The Plaintiffs have Article III standing and there exists a continuing live case or controversy, as this Court found in its previous Order (dated December 1, 2022). The Defendant Attorney General of the State of California declines to defend the law. The Governor of the State of California has been granted leave to intervene to defend the law. The parties were given notice that the hearing on the preliminary injunction would be combined with the trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). Declarations have been admitted into evidence and the combined preliminary injunction hearing and trial on the merits has taken place.

## III. DISCUSSION

### A. Texas S.B. 8 (§ 30.022) and California S.B. 1327 (§ 1021.11)

The Intervenor-Defendant Governor describes the California law as *identical* or *virtually identical* to a Texas law known as S.B. 8.[3] But that is not quite accurate. S.B. 8, among other things, creates a fee-shifting provision that applies only to cases

---

[2] Plaintiffs do not challenge Sections 1 or 3 of Senate Bill 1327.
[3] Intervenor-Defendant's Supplemental Brief, at 1-2 ("So, when the California Legislature enacted Senate Bill 1327 ("S.B. 1327") a firearms regulation that is *virtually identical* to Texas's S.B. 8—the Governor signed the bill into law, even as he continued expressing that it was 'wrongheaded' for Texas and the Supreme Court to have opened the door to such legislation in the first place.") (emphasis added); *Id.* at 2 ("California Code of Civil Procedure section 1021.11—is a fee-shifting provision that Plaintiffs acknowledge is *identical* to the equivalent provision in Texas's S.B. 8.") (emphasis added); *Id.* at 12 ("the Governor and others have previously expressed doubts about the constitutionality of the *nearly identical* fee-shifting provision of Texas's S.B. 8.") (emphasis added).

challenging abortion restrictions. It is codified at Texas Civil Practice & Remedies Code § 30.022.[4] California's Code of Civil Procedure § 1021.11 applies only to cases challenging firearm restrictions.[5] Both provisions tend to insulate laws from judicial

---

[4] Tex. Civ. Prac. & Rem. Code § 30.022 provides:
**(a)** Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, any governmental entity or public official in this state, or any person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts abortion or that limits taxpayer funding for individuals or entities that perform or promote abortions, in any state or federal court, or that represents any litigant seeking such relief in any state or federal court, is jointly and severally liable to pay the costs and attorney's fees of the prevailing party.
**(b)** For purposes of this section, a party is considered a prevailing party if a state or federal court:
   **(1)** dismisses any claim or cause of action brought against the party that seeks the declaratory or injunctive relief described by Subsection (a), regardless of the reason for the dismissal; or
   **(2)** enters judgment in the party's favor on any such claim or cause of action.
**(c)** Regardless of whether a prevailing party sought to recover costs or attorney's fees in the underlying action, a prevailing party under this section may bring a civil action to recover costs and attorney's fees against a person, including an entity, attorney, or law firm, that sought declaratory or injunctive relief described by Subsection (a) not later than the third anniversary of the date on which, as applicable:
   **(1)** the dismissal or judgment described by Subsection (b) becomes final on the conclusion of appellate review; or
   **(2)** the time for seeking appellate review expires.
**(d)** It is not a defense to an action brought under Subsection (c) that:
   **(1)** a prevailing party under this section failed to seek recovery of costs or attorney's fees in the underlying action;
   **(2)** the court in the underlying action declined to recognize or enforce the requirements of this section; or
   **(3)** the court in the underlying action held that any provisions of this section are invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion.

[5] Cal. Code Civ. Proc. § 1021.11 provides:
**(a)** Notwithstanding any other law, any person, including an entity, attorney, or law

review by permitting fee awards in favor of the government, tilting the table in the government's favor, and making a plaintiff's attorney jointly and severally liable for fee awards. California's law then goes even further. As a matter of law, a California plaintiff cannot be a prevailing party. *See* § 1021.11(e). The Texas statute has no similar

---

firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.
**(b)** For purposes of this section, a party is considered a prevailing party if a court does either of the following:
  **(1)** Dismisses any claim or cause of action brought by the party seeking the declaratory or injunctive relief described by subdivision (a), regardless of the reason for the dismissal.
  **(2)** Enters judgment in favor of the party opposing the declaratory or injunctive relief described by subdivision (a), on any claim or cause of action.
**(c)** Regardless of whether a prevailing party sought to recover attorney's fees or costs in the underlying action, a prevailing party under this section may bring a civil action to recover attorney's fees and costs against a person, including an entity, attorney, or law firm, that sought declaratory or injunctive relief described by subdivision (a) not later than the third anniversary of the date on which, as applicable:
  **(1)** The dismissal or judgment described by subdivision (b) becomes final upon the conclusion of appellate review.
  **(2)** The time for seeking appellate review expires.
**(d)** None of the following are a defense to an action brought under subdivision (c):
  **(1)** A prevailing party under this section failed to seek recovery of attorney's fees or costs in the underlying action.
  **(2)** The court in the underlying action declined to recognize or enforce the requirements of this section.
  **(3)** The court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion.
**(e)** Any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief as described in subdivision (a), shall not be deemed a prevailing party under this section or any other provision of this chapter.

provision and thus it appears that a Texas prevailing plaintiff can be awarded his attorney's fees. The California provision, on the other hand, denies prevailing party status to a plaintiff, even a plaintiff who is entirely successful, and thus denies any possibility of recovering his attorney's fees. The California plaintiffs-never-prevail provision is not insignificant. And although both § 1021.11's and § 30.022's effect on court access should be constitutionally scrutinized, it is important to note that only § 1021.11 applies to laws affecting a clearly enumerated constitutional right set forth in our nation's founding documents. Whether these distinctions are enough to save the Texas fee-shifting provision from judicial scrutiny remains to be seen. And although it would be tempting to comment on it, the Texas law is not before this Court for determination.

### B. The First Amendment Right to Petition and Access the Courts

The principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review of laws impinging on federal constitutional rights.[6] Today, it applies to Second Amendment rights.[7] Tomorrow, with a slight amendment, it could be any other constitutional right including the right to speak freely, to freedom of the press, to practice one's religion, to restrict cruel and unusual punishment, and to be free from government takings without compensation. Section 1021.11 makes its threat by means of a lopsided, unorthodox attorney's fee-shifting scheme which ensures the citizen cannot win and may be forced to pay for the

---

[6] Introduced into evidence are declarations demonstrating instances of how § 1021.11 has already caused plaintiffs to dismiss legal claims in exchange for government waivers of attorney's fees. The declarations also evidence plaintiffs who would have filed actions challenging firearm restrictions but for the threat of paying government attorney's fees under § 1021.11. Other declarations detail how § 1021.11(a) has already made it difficult to find attorneys to represent plaintiffs in both existing and planned actions to test the constitutionality of state and local firearm restrictions. *See generally* Order (filed Dec. 1, 2022).

[7] The Governor says, "Its scope is clear: It applies only to suits involving challenges to 'any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms.'" *See* Intervenor-Defendant's Supplemental Brief, at 14.

government's attorney's fees. The fee-shifting provision exacerbates the disincentive to litigation by threatening plaintiff lawyers with joint and several liability for paying the government's attorney's fees. By deterring citizens and coercing attorneys from accessing the courts for relief from constitutionally questionable laws, § 1021.11 severely chills both First Amendment rights and Second Amendment rights.

In our ordered system of civil justice, the Second Amendment right, and for that matter all constitutional rights, are ultimately protected by the First Amendment right to identify unconstitutional infringements and seek relief from the courts. "The right of petition is one of the freedoms protected by the Bill of Rights." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (citation omitted). "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). "[P]ersons . . . have the right to petition the Government for redress of grievances which, of course, includes 'access . . . to the courts for the purpose of presenting their complaints.'" *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (citations omitted).

Long ago, the Supreme Court recognized that maintaining the courts as a setting to resolve questions about defective laws is necessary for a peaceful society. The Court said,

> [t]he right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship . . . . Equality of treatment in this respect is not left to depend upon comity between the states, but is granted and protected by the Federal Constitution.

*Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907) (citations omitted). Where the financial cost is too high to enable a person to access the courts, there is a

violation of Due Process and Equal Protection, as well.  Due Process requires that a citizen be able to be heard in court.

> Without this guarantee that one may not be deprived of his rights, neither liberty nor property, without due process of law, the State's monopoly over techniques for binding conflict resolution could hardly be said to be acceptable under our scheme of things.  Only by providing that the social enforcement mechanism must function strictly within these bounds can we hope to maintain an ordered society that is also just.  It is upon this premise that this Court has through years of adjudication put flesh upon the due process principle.

*Boddie v. Connecticut*, 401 U.S. 371, 375 (1971).  Laws like § 1021.11 that exact an unaffordable price to be heard in a court of law are intolerable.

> Courts are the central dispute-settling institutions in our society.  They are bound to do equal justice under law, to rich and poor alike.  They fail to perform their function in accordance with the Equal Protection Clause if they shut their doors to indigent plaintiffs altogether.  Where money determines not merely "the kind of trial a man gets," but whether he gets into court at all, the great principle of equal protection becomes a mockery.

*Id.* at 388-89 (Brennan, J, concurring) (citations omitted).  Without meaningful access to the courts to peacefully resolve questions about the validity of state laws, frustrated citizens are left to civil disobedience or self-help, neither of which bodes well.  *Chambers* and *Boddie* were concerned with the cost of getting into court, but the principle is equally applicable to the cost of leaving court.  Under the California scheme, for three years after the close of a partially successful gun rights case there exists the specter of government filing an independent action for its attorney's fees against both the plaintiff and his attorney.  That threat of liability has already scared away plaintiffs and attorneys from filing or maintaining cases.  The threat of being ordered to pay the government's attorney's fees and costs in a non-frivolous § 1983 action to vindicate Second Amendment rights substantially chills First Amendment rights.

A state law that threatens its citizens for questioning the legitimacy of its firearms regulations may be familiar to autocratic and tyrannical governments, but not American government.  American law counsels vigilance and suspiciousness of laws that thwart judicial scrutiny.  The Supreme Court does not countenance such efforts by Congress. "The attempted restriction is designed to insulate the Government's interpretation of the Constitution from judicial challenge.  The Constitution does not permit the Government to confine litigants and their attorneys in this manner.  We must be vigilant when Congress imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001).[8]  How much more problematic are states that enact laws that insulate its own laws from legitimate judicial challenge?

It is true that § 1021.11 does not completely deny access to the courts, yet it threatens to impose a very high price through an unfair procedure for which there are no adequate state remedies.  The legislative history of § 1021.11 suggests the legislature understood the punitive effect of the law, but enacted it anyway: "While the goal of repurposing the Texas law may be sound, these problematic provisions may not justify those ends.  They insulate government action from meaningful challenge by creating a strong, punitive deterrent for any that try and in the end, may violate due process guarantees." *See* S.B. 1327, S. Floor Analysis (Cal. June 28, 2022); *see also* S.B. 1327, A. Jud. Comm. Analysis (Cal. June 10, 2022) (a "lose-lose scenario for plaintiffs").

Constitutional litigation can be expensive.  While no plaintiff can know how many attorney hours will be spent by government defendants, there are hints that the Attorney

---

[8] As one U.S. Senator from New York put it, "I am sick and tired of people who say that if you debate and you disagree with this administration somehow you're not patriotic. We should stand up and say, we are Americans and we have a right to debate and disagree with any administration."

General's costs are high. Among the disclosed hourly consulting rates of expert witnesses hired by the Attorney General's office in other Second Amendment cases pending in this Court are hourly rates of $500 for reviewing materials and $750 per hour for depositions and court appearances;[9] $600 per hour for testimony (in deposition and in court) and $480 per hour for all other services;[10] $130 per hour;[11] $250 per hour;[12] $500 per hour;[13] $250 per hour;[14] $150 per hour;[15] $350 per hour;[16] and $1,050 per hour.[17] Pursuant to § 1021.11, plaintiffs not only have to bear their own costs of litigation in every case but are also exposed to the genuine possibility of paying large defense fees and costs even when pursuing non-frivolous claims.

The provision also makes attorneys and law firms that represent non-prevailing plaintiffs jointly and severally liable to pay defense attorney's fees and costs. The threat of losing discourages the airing of novel claims, even if the claims are substantial. The suppression of novel claims, in turn, does a disservice to the courts, as was noted about another defective statute that discouraged attorneys from asserting constitutional claims. "By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power." *Legal Services Corp.*, 531 U.S., at 545. "The restriction imposed by the statute here threatens severe impairment of the judicial function. Section 504(a)(16) sifts out cases presenting

---

[9] *Duncan v. Bonta*, 17cv1017 BEN (JLB), Saul Cornell ¶ 5, Dkt. 118-4.
[10] *Id.,* Louis Klarevas, ¶ 3, Dkt. 118-6.
[11] *Id.,* Brennan Rivas, ¶ 1, Dkt. 118-7.
[12] *Id.,* Randolph Roth, ¶2, Dkt. 118-8.
[13] *Id.,* Robert Spitzer, ¶ 3, Dkt. 118-9.
[14] *Id.,* Michael Vorenberg, ¶ 6, Dkt. 118-10.
[15] *Id.,* Ryan Busse, ¶ 3, Dkt. 118-3.
[16] *Id.,* Dennis Baron, ¶ 1, Dkt. 118-2.
[17] *Miller v. Bonta*, 19cv1537 BEN (JLB)*,* Lucy P. Allen ¶ 3, Dkt. 137-1.

constitutional challenges in order to insulate the Government's laws from judicial inquiry." *Id*. at 546.

This Court concludes that the purpose and effect of § 1021.11 is to trench on a citizen's right of access to the courts and to discourage the peaceful vindication of an enumerated constitutional right. Because the state fee-shifting statute undermines a citizen's constitutional rights, it is this Court's role to declare its invalidity and enjoin its threat.

> It is, however, a basic principle that the Constitution is the "fundamental and paramount law of the nation," and "[i]t is emphatically the province and duty of the judicial department to say what the law is." Indeed, "[i]f the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery." The nature of the federal right infringed does not matter; it is the role of the Supreme Court in our constitutional system that is at stake.

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 545 (2021) (Roberts, C.J., concurring in part and dissenting in part) (citations omitted).

### C. The Supremacy Clause and 42 U.S.C. § 1988

Section 1021.11 is defective for another reason. Through its unfair legal stratagems, the state law chills the First Amendment right to petition government for the redress of grievances, which, in turn, chills the Second Amendment right. The chill is deepened by the extraordinary provision that declares a plaintiff shall not be a prevailing party. In the end, this state statute undercuts and attempts to nullify 42 U.S.C. § 1988.[18]

---

[18] Title 42 U.S.C. § 1988(b) states in part:
"In any action or proceeding to enforce a provision of sections . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

Section 1988 is a fee-shifting statute that is intended to encourage the protection of constitutional rights by rewarding plaintiffs who successfully challenge constitutionally-defective statutes. This is accomplished through the Civil Rights Act of 1866 (codified at 42 U.S.C. § 1983).[19] "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, p. 4 (1976)); *see also Pulliam v. Allen*, 466 U.S. 522, 540 (1984) ("Congress enacted § 1983 and its predecessor, § 2 of the Civil Rights Act of 1866, to provide an independent avenue for protection of federal constitutional rights. The remedy was considered necessary because 'state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights.'") (citation omitted). Under § 1988, a plaintiff may be a prevailing party, in contrast to § 1021.11(e). A prevailing party is normally entitled to attorney's fees. The Supreme Court teaches that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S., at 429 (citations omitted). So, a citizen plaintiff who files a § 1983 action can look forward to recouping her attorney's fees if she is successful, thus furthering Congress' intent to encourage the vindication of federal constitutional rights. After all, the vindication of federal constitutional rights and the striking down of unconstitutional laws inures to the benefit of all citizens.

---

[19] Title 42 U.S.C. § 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

On the other side of the coin, § 1988 also encourages the vindication of federal constitutional rights by removing the threat to plaintiffs of an adverse fee award for the government's attorney's fees. Where the federal government is a defendant, Congress has precluded the government from being awarded fees. Where state or local governments are defendants, the Supreme Court construes § 1988 as permitting defense fees only where the plaintiff's claim is "vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley,* 461 U.S., at 429 n.2. (quoting H. R. Rep. No. 94-1558, p. 7 (1976)); *cf. Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Only then does a plaintiff risk an adverse attorney's fee award. Thus, attorney's fees for defendants are presumptively *unavailable* unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit.

In the middle ground of § 1988, where a § 1983 plaintiff brings several claims for relief but dismisses or loses on some claims while winning on others, the plaintiff may yet be considered a prevailing party and awarded her attorney's fees. A plaintiff challenging a regulation as unconstitutional will be a "prevailing party" and entitled to attorney's fees if he or she succeeds on any significant issue in litigation which achieves some of the benefit sought. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. This is a generous formulation. . . .'" *Hensley*, 461 U.S., at 433 (citations omitted). The prevailing party formulation is consistent with the First Amendment right to petition. "Nor does the text of the First Amendment speak in terms of successful petitioning - it speaks simply of 'the right of the people to petition the Government for a redress of grievances.'" *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 532 (2002). This makes sense because even unsuccessful but substantial claims advance First Amendment interests. "Like successful suits, unsuccessful suits allow the public airing of disputed facts, and raise matters of public concern. They also promote the evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around. The

ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system as a designated alternative to force." *Id.* at 532 (citations and internal quotation marks omitted).

California's fee shifting provision turns this approach upside down. A plaintiff who succeeds on the merits is *never* a prevailing party (§ 1021.11(e)); government defendants may be entitled to attorney's fees from plaintiffs even where the claims asserted are not frivolous; anything less than complete success for a plaintiff becomes a win for the government coffers (§ 1021.11(b)). In flipping the tilt of the litigation field from favoring civil rights plaintiffs as Congress intended, California's statute creates a steep and potentially costly ascent. And a plaintiff might have to face that ascent alone.

The California attorney's fee-shifting construct goes beyond § 1988 by discouraging attorneys from representing civil rights plaintiffs. When a § 1983 plaintiff needs representation, § 1021.11(a) makes any attorney understandably reluctant, if not terrified. The provisions of § 1021.11(a) would expose the attorney to the risk of joint and several liability for the government's fees. And unlike typical fee-shifting provisions, the risk would extend for three years after the conclusion of appellate review of the original litigation, as opposed to being part of the judgment in the original litigation. California's § 1021.11 system of litigation rewards and punishments is completely contrary to that which was intended by Congress as expressed in § 1988.

"Under the Supremacy Clause of the United States Constitution . . . . a state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award." *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982). Compare the generous § 1988 standard to the crabbed § 1021.11(e) standard. Subsection (e) states: "Any person . . . who seeks declaratory or injunctive relief . . . shall not be deemed a prevailing party under this section or any other provision of this chapter." Plainly, because of the Supremacy Clause, California's cramped state law must yield to

the federal law.[20]  Compare also the claim-encouraging § 1988 allowance for plaintiff-side attorney's fees even without success on all claims[21] to the punishing language of subsection (b) defining a government defendant as the prevailing party if an otherwise successful plaintiff fails to prevail (regardless of the reason) on any claim for relief.[22]

If it is correct to say that § 1021.11 will have the effect of thwarting federal court orders enforcing Second Amendment rights through § 1988 attorney's fee awards, then § 1021.11 cannot survive.  "A state statute that has the effect of thwarting a federal court order enforcing federal rights 'cannot survive the command of the Supremacy Clause of the United States Constitution.'"  *Hook v. State of Arizona*, 907 F. Supp. 1326, 1335 (D. Ariz. 1995) (quoting *Washington v. Washington State Comm'l Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695 (1979)).

Like subsections (e) and (b), subsection (d)(3) also runs headlong into the Supremacy Clause through its attempt to ignore or countermand a federal court ruling of

---

[20] This would also be true in state court litigation for § 1983 challenges to firearm regulations.  "From these preemption decisions by the United States Supreme Court, we distill the following: Neutral state procedural rules of court administration not affecting the ultimate outcome of the controversy are not preempted by federal law.  But state law that would produce a different outcome in state than in federal court must yield to federal law.  Only then does federal preemption prevent a state court from applying state law in a federal civil rights case brought in state court." *Cty. of L.A. v. Superior Court*, 21 Cal. 4th 292, 300 (1999) (citations omitted).

[21] "We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988 . . . . Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S., at 440.

[22] "For purposes of this section, a party is considered a prevailing party if a court does either of the following:
(1) Dismisses any claim or cause of action brought by the party seeking the declaratory or injunctive relief described by subdivision (a), *regardless of the reason* for the dismissal.
(2) Enters judgment in favor of the party opposing the declaratory or injunctive relief described by subdivision (a), on any claim or cause of action." (Emphasis added).

invalidity. Subsection (d)(3) frustrates the intent of §1988 and flouts a court's ruling and award of § 1988 attorney's fees to a plaintiff. Subsection (d)(3) nakedly declares that it is no defense to a prevailing government party's action for attorney's fees if a "court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion." A state statute clothed with such power has no clothes at all. "Congress has made clear in § 1988 its intent that attorney's fees be available in any action to enforce a provision of § 1983." *Pulliam*, 466 U.S., at 580. In fact, "[t]he legislative history of [§ 1988] confirms Congress' intent that an attorney's fee award be available even when damages would be barred or limited by 'immunity doctrines and special defenses, available only to public officials." *Id*.

In answer to the Supremacy Clause problem, the Intervenor-Defendant Governor offers only one defense: "*nothing in S.B. 1327 prevents simultaneous awards of attorney's fees to a plaintiff under § 1988 and to a defendant under state law in a mixed-result case, so there is no conflict*."[23] But that is not a satisfactory answer. Take a hypothetical § 1983 case where a plaintiff achieves substantial success in challenging an unconstitutional firearm restriction. Under § 1988, he might be entitled to an attorney's fee award of $10,000. The government could then, three years later, elsewhere obtain its own attorney's fee award against the plaintiff *and his attorney* for $10,000, or $20,000, or 30,000[24] under § 1021.11. How would that not frustrate the Congressional intent of encouraging § 1983 actions to vindicate constitutional rights through § 1988 attorney's fee awards? *Spain* answers this question. The Supremacy Clause would not allow it:

---

[23] Intervenor-Defendant's Supplemental Brief, at 6 (emphasis added).
[24] *See Abrera v. Newsom*, Case No. 22cv1162 JAM-DB (E.D. Cal.), Declaration of Anthony O'Brien, Dkt. # 35 (Attorney General's Office incurred $11,385 in attorney's fees opposing preliminary injunction in litigation regarding § 1021.11).

> Congress has declared that states and their officials who violate federal civil rights laws must reimburse the successful plaintiff for costs incurred in seeking redress. To strike down the order in this case because it conflicts with the laws of Mississippi would be no different than reversing a bare judgment for attorney's fees. In either case, we would be allowing the state, by legislative action, to recloak itself with the Eleventh Amendment immunity which Congress has chosen to remove. Such a result would be contrary to the Supremacy Clause of the United States Constitution.

*Spain*, 690 F.2d at 746 (quoting *Gates v. Collier*, 616 F.2d 1268, 1272 (5th Cir. 1978)).

### D. Permanent Injunction Factors

The Plaintiffs have satisfied all four factors needed for entitlement to a permanent injunction.[25] The Plaintiffs have been actually harmed and will continue to be irreparably harmed. Plaintiffs' claims have proven to be meritorious. Section 1021.11 thwarts Congress' intent to encourage the vindication of constitutional rights through § 1983 actions and § 1988 attorney's fee awards and at the same time, severely chills Plaintiffs' First and Second Amendment rights. The loss of a constitutional right is irreparable. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citation omitted). Moreover, monetary damages are neither quantifiable nor recoverable against the Defendant state officials. Finally, the balance of equities and the public interest weigh in plaintiff's favor and it is always in the public interest to enjoin unconstitutional laws. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098 (9th Cir. 2022) ("When, as here, the party opposing injunctive relief is a government entity, the third and fourth factors - the balance of

---

[25] "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

equities and the public interest - 'merge.'"). Therefore, the Plaintiffs are entitled to a permanent negative injunction.

## IV. CONCLUSION

"The provisions of the Constitution are not time-worn adages or hollow shibboleths." *Trop v. Dulles*, 356 U.S. 86, 103–04 (1958). Section 1021.11 is set to go into effect on January 1, 2023. The Court declares California Civil Code § 1021.11 to be unconstitutional and permanently enjoins the Defendants from bringing any action or motion under § 1021.11 to obtain an award of attorney's fees and costs.

THEREFORE IT IS HEREBY ORDERED that:

Defendant Attorney General Rob Bonta and Intervenor-Defendant Governor Gavin Newsom, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, and those who gain knowledge of this injunction order or know of the existence of this injunction order, are enjoined from implementing or enforcing California Code of Civil Procedure § 1021.11, as enacted by S.B. 1327.

IT IS SO ORDERED.

Date: December 19, 2022

_____
HON. ROGER T. BENITEZ
United States District Judge